**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JACQUELINE B. N'JAI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 07-1506 |
| | ) | Judge Nora Barry Fischer |
| MR. HOMER C. FLOYD, et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

### I.    Introduction

This matter comes before the Court on the Court's Order to Show Cause (Docket No. 52) directing *pro se* Plaintiff Jacqueline B. N'Jai ("Plaintiff")[1] to show good cause why her case should not be dismissed for failure to prosecute due to her failure to comply with this Court's Orders dated March 3 and 5, 2008 (Docket Nos. 43, 44, 45), which ordered Plaintiff to file an amended complaint on or before April 3, 2008, and Defendants' responses to same (Docket Nos. 58, 59, 60). Plaintiff brought this action asserting numerous federal, state, and common law causes of action against Defendants, Mr. Homer C. Floyd, Stephen A. Glassman, Raquel Oterode Yiengst, Robert Flipping, Michael Hardiman, Manuel A. Zuniga, Jr., the Pennsylvania Human Relations Commission ("PHRC"), Human Relations Commission (the "Commonwealth Defendants"), Wilkinsburg School District ("Wilkinsburg"), the Pittsburgh Board of Public Education[2] ("Pittsburgh Board" or the

---

[1]

Plaintiff has an extensive history as a *pro se* claimant, filing at least fifteen (15) civil actions, nine of them in this Court. *See* discussion, *infra*, at pgs. 3-13.

[2]

Plaintiff incorrectly identified this Defendant in the case caption as the "Pittsburgh Board of Public Education." This Defendant has identified itself as the Board of Public Education of the School District of Pittsburgh. (Docket No.

"Board"), the Equal Opportunity Commission,[3] Sue Goodwin,[4] the law firm of Andrews & Price and attorney Anthony Sanchez, Esquire.[5]

## II.    Background of the Plaintiff, Jacqueline B. N'Jai

Given the nature of the present dispute and its relation to prior lawsuits filed by Plaintiff against the Pittsburgh Board,[6] the Court first writes to describe *pro se* Plaintiff Jacqueline B. N'Jai and the various lawsuits she has brought to date.  Plaintiff is a 52 year-old African-American woman and a resident of the borough of Wilkinsburg, Pennsylvania.  (Docket No. 3 at ¶ 6).  Plaintiff avers that she holds a Bachelor of Science degree from the University of Pittsburgh, and a Masters Degree in Elementary and Early Childhood Education from Long Island State University.  (Docket Nos. 62-6 - 62-9).  She further claims to have completed additional course work at New York University and

---

59 at 2).

[3]

The Court construes Plaintiff's filings in this matter to mean that the named Defendant Equal Opportunity Commission is the Equal Employment Opportunity Commission ("EEOC"), as Plaintiff refers to this Defendant in her filings as the EEOC.

[4]

A review of the docket in this matter reveals that Defendants Equal Employment Opportunity Commission and Sue Goodwin were never served with the original complaint by Plaintiff, nor has Plaintiff sought to correct said lack of service, show good cause for failure to effect service, file proof that service was made to the Court, or seek an extension of the 120 day limit within which to effectuate service in accordance with the plain language of Federal Rule of Civil Procedure 4. Moreover, while Plaintiff is *pro se*, as discussed below, she has instituted numerous civil actions in this Court "and has, or should have, gained experience and familiarity with the requisites of maintaining a civil action in federal court." *N'Jai v. Pa. Dep't of Educ., et al.*, CA 02-268 (W.D. Pa. 2003; Docket No. 39 at 7). To that end, she has been warned by previous District Judges of this Court of the necessity of proper service and the manner in which service is to be effectuated, therefore, in instituting this action, Plaintiff had ample warning of the need for proper service and the consequences of failure to effect service. *( See id.* at 8).

[5]

Defendants Andrews & Price and Anthony Sanchez, Esquire were dismissed from this action with prejudice on March 3, 2009. No motion for reconsideration or appeal was brought from this Order. *See* discussion, *infra*, at Section V, pg. 15.

[6]

See discussion, *infra*, pgs. 3-13.

the University of Pittsburgh. (*Id.*). Plaintiff was allegedly working towards her Doctorate in Administration and Policy Studies at the University of Pittsburgh, but has not yet completed the program. (Docket No. 72 at 23:1-5). Plaintiff further avers that she is certified to teach in Pennsylvania. (Docket No. 62-5). As discussed herein, Plaintiff is a skilled legal brief writer. Moreover, she has handled some of her cases, which will be discussed below, before a jury, both in state court and federal court.

Plaintiff has previously filed as many as fifteen (15) lawsuits against the Pittsburgh Board and attorney Anthony Sanchez. (Docket No. 3 at ¶10; Docket No. 72 at 24:12-20). The Court is aware of the following actions filed in the Western District of Pennsylvania:

> (1) *N'Jai v. Mary Ellen McBride*, Civil Action No. 94-72 (defendant's motion to dismiss granted);
>
> (2) *N'Jai v. Pittsburgh Board of Public Education, et al.*, Civil Action No. 94-2096 (jury verdict for the defendants);
>
> (3) *N'Jai v. Pittsburgh Board of Public Education, et al.*, Civil Action Nos. 98-640 and 98-1883 (consolidated) (jury verdict for the defendants);
>
> (4) *N'Jai v. Pittsburgh Board of Public Education, et al.*, Civil Action No. 99-645 (defendants' motions for summary judgment granted);
>
> (5) *N'Jai v. Pittsburgh Board of Public Education, et al.*, Civil Action No. 99-1290 (defendants' motions for summary judgment granted); and
>
> (6) *N'Jai v. Pennsylvania Department of Education, et al.*, Civil Action No. 02-0268 (defendants' motions to dismiss granted).[7]

---

[7]

As most, if not all, of these suits involved claims under federal and state employment discrimination laws related to injuries Plaintiff claimed were related to her discharge, many of them were preceded by claims brought by Plaintiff before the EEOC.

Additionally, the Court is aware of the following actions filed in state court:

> (1) *N'Jai v. Pittsburgh Board of Public Education, et al.*, GD 99-12829 in the Allegheny County Court of Common Pleas (defendants' preliminary objections sustained);

> (2) *N'Jai v. Pittsburgh Board of Public Education, et al.*, AR 00-775 in the Allegheny County Court of Common Pleas (jury verdict for the defendants);

> (3) *N'Jai v. Pittsburgh Board of Public Education, et al.*, AR 00-3167 in the Allegheny County Court of Common Pleas (defendant's motions for summary judgment granted);

> (4) *N'Jai v. Pittsburgh Board of Public Education, et al.*, SA 01-952 in the Allegheny County Court of Common Pleas (defendant's preliminary objections sustained); and

> (5) *N'Jai v. Anthony Sanchez, et al.*, 533 M.D. 2001 in the Commonwealth Court of Pennsylvania and GD 01-023695 in the Allegheny County Court of Common Pleas (Commonwealth Court transferred case to Court of Common Pleas for lack of jurisdiction; preliminary objections by defendants were sustained).

Further, Plaintiff has significant experience at the both the federal and state appellate court

level. To this Court's present knowledge, Plaintiff has appeared in the following matters on appeal:

> (1) *N'Jai v. McBride*, 52 F.3d 316 (3d Cir. 1995)(affirming Judge Diamond's dismissal of Civ. A. No. 94-72);

> (2) *N'Jai v. Pittsburgh Board of Public Education*, 537 U.S. 1199 (2003)(petition for writ of certiorari denied in appeal from jury verdict at AR 00-775);

> (3) *In re N'Jai*, 537 U.S. 811 (2003)(petition for writ of mandamus denied);

> (4) *N'Jai v. EEOC*, 80 Fed. Appx. 287 (3d Cir. 2003)(summary judgment for the EEOC at Civ. A. No. 99-1290 affirmed);

> (5) *N'Jai v. Pittsburgh Board of Public Education*, 55 Fed. Appx. 105 (3d Cir. 2003)(jury verdict for defendants at Civ. A. No. 98-640

affirmed);

(6) *In re N'Jai*, 210 F.3d 358 (3d Cir. 2003)(Plaintiff's petition for writ of mandamus to remove the Honorable William L. Standish from several of her civil actions denied);

(7) *N'Jai v. Pittsburgh Board of Public Education*, 32 Fed. Appx. 31 (3d Cir. 2002)(jury verdict for defendants at Civ. A. No. 94-2096 affirmed);

(8) *N'Jai v. Pittsburgh Board of Public Education*, 151 F.3d 1026 (3d Cir. 2003)(Civ. A. No. 94-2096 affirmed in part, reversed for clarification of court order);

(9) *N'Jai v. Pittsburgh Board of Public Education*, 799 A.2d 995 (Pa. Commw. 2002)(summary judgment at AR-00-3167 affirmed, petition for allowance of appeal denied at 809 A.2d 906; 570 Pa. 702 (Pa. 2002)); and

(10) *N'Jai v. Sanchez*, 845 A.2d 269 (Pa. Commw. 2004)(dismissal at GD 01-023695 affirmed).

Plaintiff's various employment discrimination, conspiracy, and constitutional claims against the Defendants as well as their defenses will be more fully detailed below. Initially, the Court takes judicial notice of Plaintiff's previous lawsuits filed in both the Western District of Pennsylvania and the state court actions.

## III.    **Standard for Judicial Notice**

The United States Court of Appeals for the Third Circuit has held that in evaluating a motion to dismiss a plaintiff's claims, a court may take judicial notice of prior judicial proceedings because the opinions filed therein constitute public records. *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)(citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). Another court's opinion, which is not subject to reasonable dispute over its authenticity, may be referenced by a court not for the truth of

the fact recited therein, but for its existence. *Southern Cross*, 181 F.3d at 426 (citations omitted); *Sands*, 502 F.3d at 268. In light of Plaintiff's averments that she has had favorable outcomes in prior cases against the Board (Docket No. 72 at 30:21 - 31:19) and that those cases are connected to her instant claims of conspiracy and retaliation (Docket No. 3 at ¶ 65), and the fact the Court is presently tasked with evaluating the merits of her claims, *see Poulis*, 747 F.2d at 869-70, the Court takes judicial notice of the existence of the opinions from some of the previous lawsuits Plaintiff has filed against the Board and Anthony Sanchez. *Southern Cross*, 181 F.3d at 427 (legal opinions upon which a plaintiff relies may be examined to determine if their contents "contradict[] the complaint's legal conclusions or factual claims"); *see also Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004)(considering a document outside the pleadings that a plaintiff has relied on is not unfair because the plaintiff is on notice that such document may be considered).

## IV.    Plaintiff's Previous Lawsuits

### A.    Federal Court

In *N'Jai v. Pittsburgh Board of Public Education, et al.*, Civil Action No. 94-2096 (W.D. Pa. 2002), Plaintiff sued the Board, the Pittsburgh Federation of Teachers ("PFT"), and various individual employees of the Board.[8] Similar to Plaintiff's subsequent lawsuits described herein, Plaintiff had difficulties securing service on all of the defendants and was ordered to amend her complaint to clarify her claims. (Civ. A. No. 94-2096, Docket No. 16). Her amended complaint included various claims for civil rights violations, racial retaliation, violations of Pennsylvania law

---

[8] These individual employees included Mary Ellen McBride (principal), Robert Diederich (a school nurse), Lois Peckich (payroll secretary), Joanne Lubert (development advisor), Susan Musical (librarian, accountant), Dr. Stephen Radcowski (representative from PFT), and Robert J. Stefanko (former Board Solicitor).

and Title VII, and claims related to Plaintiff's employment contract with the school district.[9] (*Id.*; Docket No. 17). The Honorable Gustave Diamond, upon motions to dismiss by the defendants, dismissed Plaintiff's Amended Complaint in its entirety for failure to state a claim. (*Id.*; Docket Nos. 35, 36, and 47).[10] The United States Court of Appeals for the Third Circuit reversed that order, in part, and remanded the case for further proceedings on Plaintiff's claim of retaliation based on her filing of previous discrimination suits against the defendants. (*Id.*; Docket Nos. 53 and 54); *N'Jai v. Pittsburgh Board of Public Educ., et al.*, 151 F.3d 1026 (3d Cir. 1998).[11]

After discovery was completed on the retaliation claim, following the denial of summary judgment motions by both sides, the matter proceeded to trial.[12] (*Id.*; Docket No. 112). At the close of trial, Judge Diamond granted the individual defendants' motions for judgment as a matter of law while the jury found for the school district and the PFT. (*Id.*; Docket Nos. 138, 140). On appeal by

---

9

  Specifically, Plaintiff alleged that she was retaliated against because she brought a previous lawsuit against the same defendants (Civ. A. No. 94-72) and that she was denied certain contractual and constitutional rights because of her race. (Civ. A. No. 94-2096; Docket No. 35 at 2-5). She further claimed that she was forced to take a medical leave of absence due to her contracting a contagious disease, which she claims she contracted because another school employee failed to report the disease, and that defendant McBride, a school principal, sent her threatening and harassing letters. (*Id.*).

10

  In his opinion, Judge Diamond noted that Civ. A. No. 94-2096 was related to allegations Plaintiff made in a prior lawsuit, Civ. A. No. 94-72. That action was filed against Mary Ellen McBride solely, a principal in the Pittsburgh public schools, represented by Ira Weiss, Esquire, and was dismissed by Judge Diamond for failure to state claim. (Civ. A. No. 94-72; Docket No. 13). The United States Court of Appeals for the Third Circuit affirmed that decision. (*Id.*; Docket No. 17); *N'Jai v. McBride*, 52 F.3d 316 (3d Cir. 1995).

11

  The Court notes that this case, as well as those described *infra*, predate the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and the United States Court of Appeals' interpretation of the same in *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

12

  Plaintiff was initially represented by counsel, Herbert Terrell, Esquire and Joseph H. Chivers, Esquire, but before trial, the court granted said counsel's motions to withdraw their appearances. (*Id.*; *see* Docket Nos. 112 and 115). Plaintiff then proceeded to trial *pro se*.

Plaintiff, the Court of Appeals affirmed the judgment of the district court. (*Id.*; Docket No. 165). *In Re: N'Jai*, 210 F.3d 358 (3d Cir. 2000).

In *N'Jai v. Pittsburgh Board of Public Education, et al.*, Civil Action No. 98-1883 (W.D. Pa. 1999), Plaintiff initiated the suit using a complaint nearly identical to her amended complaint filed at Civil Action No. 98-640, detailed below, but noticeably crossed out references to an attorney that once represented her in the other case. (*Id.*; Docket No. 17 at n.1). In said complaint, Plaintiff set out violations of the ADA, Title VII, and 42 U.S.C. §§ 1983, 1985, and 1986 against the Board, employees of the Board, and the PFT. (*Id.* at 1). The Honorable Judge William Standish partially granted defendants' motions to dismiss and then consolidated the remaining claims with Civil Action No. 98-640. (*Id.*; Docket Nos. 17 and 20).

At Civil Action No. 98-640, Plaintiff filed suit against the Board, represented by Anthony Sanchez, the PFT, and several individual employees of the school district and the PFT. (Civ. A. No. 98-640; Docket No. 1). Her claims included wrongful discharge, violations of the Railway Labor Act, 45 U.S.C. § 151, and First Amendment, harassment, constructive discharge, violations of the False Claims Act, 31 U.S.C. § 3729, *et seq.*, the Pennsylvania Whistleblower Act, "labor management report/disclosing act," the Pennsylvania Public School Code, and the "public employee relations act."[13] (*Id.*). Upon the PFT defendants' motions to dismiss, Judge Standish dismissed Plaintiff's complaint and ordered her to amend. (*Id.*; Docket Nos. 5, 24). Thereafter, upon the PFT

---

[13]
      Plaintiff's claims are related to her allegations that she was sexually harassed by school employees, that she learned of illegal drug sales on school grounds of which she complained to Union officials, she was denied teaching assignments, threatened with unsatisfactory evaluations, transferred between schools in retaliation for her previous complaints, and denied medical leave. (Civ. A. No. 98-640; Docket Nos. 48 and 49). She also filed complaints about some of these incidents to the United States Department of Education and also filed a grievance with the Pennsylvania Labor Relations Board. (*Id.*).

defendants' motions to dismiss Plaintiff's amended complaint, the court dismissed with prejudice several of the school district employees and dismissed part of Plaintiff's claims under Title VII and ADA because they were time-barred and her claims under Title IX for failure to state a claim. (*Id.*; Docket No. 48 at 8-11,13). Additionally, the court dismissed various of the individual Board employees while also dismissing Plaintiff's Title IX claim against the PFT. (*Id.*; Docket No. 49). Some of Plaintiff's other discrimination claims against the PFT were also dismissed as time-barred. (*Id.*). Judge Standish's orders were appealed by Plaintiff, but the appeal was dismissed by the Court of Appeals for lack of jurisdiction. (*Id.*; Docket Nos. 62 and 77).

The case then proceeded through discovery, which was fraught with discovery motions including motions for sanctions brought by Plaintiff, after which a jury trial commenced. During the trial, Judge Standish granted various motions for judgment as a matter of law filed by some of the defendants as to some of Plaintiff's claims.[14] (*Id.*; Docket Nos. 114 and 115). The jury returned a verdict in favor of the remaining defendants. (*Id.*; Docket No. 121). Thereafter, the court denied Plaintiff's Motion "as a Matter of Law." (*Id.*; Docket Nos. 122 and 127). Plaintiff appealed this decision denying her Motion "as a Matter of Law" to the Court of Appeals for the Third Circuit which affirmed the judgment of the district court. (*Id.*; Docket Nos. 128 and 145). *N'Jai v. Pittsburgh Board of Public Educ., et al.*, 55 Fed. Appx. 105 (3d Cir. 2003).

Thereafter, Plaintiff again sued the Board, the PFT, and individual employees of the school district in *N'Jai v. Pittsburgh Board of Public Education, et al.*, Civil Action No. 99-645 (W.D. Pa.

---

14

As with Civil Action No. 94-2096, Plaintiff was initially represented by counsel, Herbert Terrell, Esquire and Joseph H. Chivers, Esquire, but before trial, the court granted said counsel's motions to withdraw their appearances. (Civ. A. No. 98-640). Plaintiff then proceeded to trial *pro se.*

2003). Plaintiff's complaint repeated many of the claims made in her previous law suits against the various defendants such as discrimination, violation of her civil and constitutional rights, violation of Title VII, violation of the ADA, breach of contract, and violation of the Pennsylvania Public School Code. Her claims surrounded her request for a sabbatical leave from her position as an elementary school teacher that was denied because she had not yet worked the statutory minimum amount of years. (Civ. A. No. 99-645, Docket No. 78 at 1-3). Judge Standish granted the defendants' motions for summary judgment because Plaintiff failed to set forth any evidence of her claims. (*Id.* at 3).[15] In his opinion he did not consider as evidence materials[16] from Plaintiff's many other cases. (*Id.* at 7 n.3). In declining to consider those materials, the court noted that it did examine "each and every page of the, to say the least, confusing" documents filed by Plaintiff in the case before him and said examination made it apparent to him that most of her "evidence" consisted of documents she wrote to various school and union officials. (*Id.*). At the same time, the court failed to see the relevance of many other documents she submitted. (*Id.*).

In *N'Jai v. Pittsburgh Board of Public Education, et al.*, Civil Action No. 99-1290 (W.D. Pa. 2003), Plaintiff asserted claims against the Board, the PFT, the Pittsburgh Teachers Credit Union,

---

15

In that case, Plaintiff had amended her complaint twice, (Civ. A. No. 99-645, Docket No. 78 at n.3), and Judge Standish noted that Plaintiff seemed to "[confuse] her many other cases, particularly Civ. Action No. 99-1290,with this case, which is not surprising, as keeping track of plaintiff's claims is becoming a challenge even for the court." *Id*.

16

These materials consisted mostly of documents Plaintiff wrote herself to various school and union officials, newspaper articles, school bulletins, and student and parent testimonials. (Civ. A. No. 99-1290; Docket No. 118 at 28). The court further noted that many of the documents Plaintiff submitted as evidence pre- and post-dated the time period involved in that case, while the court failed to see the relevance of many others. (Civ. A. No. 99-645, Docket No. 78 at 7, 22).

the Bacharach & Klein law firm[17] and John A. Bacharach, Esquire alleging various discrimination claims[18] and claims under 42 U.S.C. §§ 1981-1986 and 1988 and the Pennsylvania Whistleblower's Act.[19] (Civ. A. No. 99-1290, Docket No. 118 at 1-2). The court dismissed all of Plaintiff's claims on motions to dismiss or motions for summary judgment. (*Id*; Docket Nos. 41 and 118). In its memorandum opinion granting some of the defendants' motions to dismiss, the court stated that "plaintiff's amended complaint borders on the unintelligible and fatally deficient[]"and he "appreciat[ed] the seemingly herculean task that confront[ed] defendants as they under[took] to answer plaintiff's amended complaint." (Civ. A. No. 99-1290, Docket No. 41 at n.6). Also, in its memorandum opinion granting defendants' motions for summary judgment, the district court noted Plaintiff's "confusing, disjointed, rambling and often duplicative" filings and stated that the "newspaper articles, school bulletins and student or parent testimonials" and "documents written by plaintiff herself to various school and union officials" did not collectively satisfy Plaintiff's burden of proof at the summary judgment stage as either movant or nonmovant. (*Id*; Docket No. 118 at 28).

Upon Plaintiff's appeal of the dismissal of her case, the Court of Appeals affirmed the judgment.

---

[17]

This law firm, along with Answers & Price, Anthony Sanchez, Esquire, and Ira Weiss, Esquire, represented the school defendants in the various lawsuits initiated by Plaintiff; none of which succeeded.

[18]

Specifically, Plaintiff claimed violations of the ADA and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, retaliation in violation of the ADA, the Rehabilitation Act, and Title VII, and "the Deliberate Infliction of Emotional Harm." (Civil A. No. 99-1290, Docket No. 118 at 1-2).

[19]

She also claimed that the defendants conspired to commit fraud, defamation, as well as violations of her constitutional rights. (Civ. A. No. 99-1290, Docket No. 118 at 1-2). In support of her claims, Plaintiff alleged that she was discriminated against in class, workload, and room assignments, her pay was improperly docked, the credit union mishandled and misappropriated her funds, students assaulted her with a chair and frisbee yet officials failed to take appropriate action, and her disability (depression) was not properly accommodated. (Civ. A. No. 99-1290; Docket No. 121 at 3).

*N'Jai v. EEOC, et al.*, 80 Fed. Appx. 287 (3d Cir. 2003).

In *N'Jai v. Pa. Dept. of Education, et al.*, Civil Action No. 02-268 (W.D. Pa. 2003), Plaintiff asserted claims against the Pennsylvania Department of Education ("DOE"), the Board, the PFT, Anthony Sanchez and Andrews & Price, and other individuals associated with those organizations, including two additional law firms and several attorneys. (Civ. A. No. 02-268, Docket No. 39 at 1-2). Plaintiff claimed that she was wrongfully terminated from her position as a teacher. When she attempted to appeal her termination to the DOE, it was dismissed as untimely. (*Id.* at 3-4). Judge Standish granted defendants' motions to dismiss for lack of jurisdiction over Plaintiff's claims as the court found that 42 Pa. C.S.A. § 763(a)(1) granted exclusive jurisdiction over appeals from final orders of Commonwealth agencies to the Commonwealth Court of Pennsylvania. (*Id.* at 11). The court further opined that because Plaintiff failed to effectively serve several defendants with process,[20] those defendants were accordingly dismissed from the action. (*Id.* at 6-10). The court also noted that Plaintiff had filed numerous lawsuits in federal court before this case and should have gained experience and familiarity with the proper procedures, particularly in light of the "lengthy opinions instructing plaintiff on the necessity of proper service[.]" (*Id.* at 7-8).

## B.    State Court

In 2001, in the Commonwealth Court of Pennsylvania, Plaintiff initiated *N'Jai v. Anthony Sanchez, et al.*, No. 522 C.D. 2003 (Pa. Commw. Ct. 2004), by filing a criminal complaint against

---

[20]

Plaintiff attempted to serve several defendants by serving John Bacharach "For: Self, Bacharach & Klein, Al Fondy, Mary Van Horne, Pittsburgh Fed. of Teachers." (Civ. A. No. 02-268, Docket No. 39 at 9). She also attempted to serve the Pennsylvania Department of Education by sending it a copy of her amended complaint by certified mail contrary to Fed. R. Civ. P. 4(j) and Pa. R. Civ. P. 422, which detail how service upon a state agency should be made. (*Id.* at 10). In finding that Plaintiff failed to show good cause why she failed to make proper service, Judge Standish noted that Plaintiff should have been fully aware of the necessity of proper service and the manner in which to effectuate same due to her experience with improper service in her numerous other suits. (*Id.* at 8).

the Board, Anthony Sanchez, the PFT, and several other defendants associated with either the Pittsburgh schools, the PFT, or law firms that had previously represented the Board, some of which were named defendants in Plaintiff's previous lawsuits. (No. 522 C.D. 2003, Memorandum Opinion at 1-2). Her claims included malicious prosecution, malicious abuse of legal process, "persistent negligence" and "persistent violations of school laws" including the Whistleblowers Act, and "persistent cruelty." (*Id.* at 3)

In its per curiam opinion, the Commonwealth Court noted that Plaintiff's complaint "repeated many of the allegations made in her numerous other law suits, such as discrimination, harassment, denial of benefits, exposure to disease, and theft of paychecks." (*Id.*) The court treated Plaintiff's criminal complaint as a civil action for damages and transferred the case to the Allegheny County Court of Common Pleas for lack of jurisdiction in the Commonwealth Court. (*Id.* at 2). The Allegheny County Court of Common Pleas dismissed Plaintiff's complaint because she failed to exhaust her administrative remedies and failed to state a cause of action. (*Id.* at 1). Plaintiff appealed to the Commonwealth Court where the dismissal was affirmed. (*Id.* at 7). In affirming, the court noted that any inconveniences to Plaintiff were of "her own making" due to her "failure to comply with the rules of the court" and to that end, the court highlighted several procedural missteps by Plaintiff including lack of proper service on the defendants and failure to comply with the Pennsylvania Rules of Appellate Procedure. (*Id.* at n.12). The court further reflected that many of the questions Plaintiff posed for review were "so vague to defy meaningful appellate review." (*Id.*).

V.      **Factual Background of the Instant Action**

The Court gleans the following relevant factual background from Plaintiff's Complaint

(Docket No. 3),[21] Plaintiff's response to this Court's Order to Show Cause (Docket No. 54 and 55), the transcript from the hearing on this Court's Order to Show Cause held on January 30, 2009, including Plaintiff's sworn testimony (Docket No. 72), and Plaintiff's Brief in Response to the Oral Argument on January 30, 2009. (Docket No. 69).

The Pittsburgh Board is the School District of Pittsburgh, a previous employer of Plaintiff. (*Id.* at ¶ 10). The Commonwealth Defendants are the PHRC and its individual employees. The PRHC is a state agency acting under the Pennsylvania Human Relations Act, 43 P.S. §§ 951-953. (*Id.* at ¶ 7). Wilkinsburg is a school district located in Wilkinsburg, Pennsylvania. (*Id.* at ¶ 8). The gravamen of Plaintiff's claims are that these Defendants acted together in order to deprive Plaintiff "of her right to recover for deliberate and long-term discrimination from 1994-2006, thereby violating both federal and state law." (*Id.* at ¶¶ 12-14). Specifically, she claims she has been discriminated against by Defendants on the basis of various protected traits, including race, age, and perceived disability.

In response to Plaintiff's Complaint, each of the following Defendants filed a motion to dismiss: Andrews & Price and attorney Anthony Sanchez (Docket No. 22); the Board (Docket No. 27); Wilkinsburg (Docket No. 31); and the Commonwealth Defendants (Docket No. 35). As noted above, the Court dismissed Plaintiff's claims against Andrews & Price and Mr. Sanchez with

---

21

  In her complaint filed on November 8, 2007, she set forth the following claims: (1) violations of her civil rights under 42 U.S.C. §§ 1983, 1985, 1986, and 1988 (Docket No. 3 at ¶¶ 37-67); (2) violations of Title VII, 42 U.S.C. § 2000e, *et seq*. ("Title VII")(*Id.* at ¶¶ 68-78); (3) violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA")(*Id.*); (4) violations of the Pennsylvania Whistleblower Act, 43 P.A. § 1421, *et seq*. ("Whistleblower Act") (*Id.*); (5) violations of the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA")(*Id.* at ¶¶ 78-88); (6) violations of the Right to Know Act, 65 P.S. § 66.1, *et seq*. ("Right to Know Act") (*Id.*); and (7) violations of the Individuals with Disabilities in Education Act, 20 U.S.C. § 1415 ("IDEA")(*Id.* at ¶¶ 65, 74). She requested damages in an excess of $75,000 per violation against Defendants both in their personal and professional capacities, plus punitive and compensatory damages; as well as "whatever damages are available to her." (Docket No. 3 at ¶ 90).

prejudice. (Docket No. 42). Hence, they are no longer parties to the present action.[22]  As to the

Pittsburgh Board, the Court granted its motion to dismiss (Docket No. 27) without prejudice,

allowing Plaintiff to file an amended complaint in order to comply with Rules 8 and 10 of the

Federal Rules of Civil Procedure and current federal pleading standards. (*See* Docket No. 43 at 3).

As to the Commonwealth Defendants, the Court dismissed with prejudice all of Plaintiff's

claims against these Defendants in their official capacities, specifically those claims brought under

sections 1983, 1984, 1985, 1986, 1987, and1988. (Docket No. 45 at 4).  Additionally, the Court

dismissed with prejudice Plaintiff's claims against these Defendants for alleged violations of the

Freedom of Information Act and the Fifth and Sixth Amendments. (*Id.* at 5-6).  The Court permitted

Plaintiff leave to amend her claim against the Commonwealth Defendants under the Right to Know

Act. (*Id.* at 7). As discussed herein, Plaintiff failed to amend her claim under the Right to Know Act

against the Commonwealth Defendants.

With regard to Wilkinsburg, the Court dismissed the following claims with prejudice: (1) any

---

[22]

    The Court further notes that the order dismissing with prejudice Plaintiff's claim against these Defendants was not appealed by Plaintiff.  *See supra*, at note 5. However, Plaintiff continues to make allegations in all of her filings against these Defendants, particularly Anthony Sanchez, and has requested that the Court reconsider its ruling to dismiss these parties. However, Plaintiff did not timely file a motion for reconsideration of the Court's March 3, 2008 order dismissing these Defendants.  Rule 59(e) requires a motion for reconsideration to "be served not later than 10 days after entry of judgment." FED. R. CIV. P. 59(e).  Rule 6(a) provides that in computing any time period under the Rules of Civil Procedure, the day of the event from which the designated period of time begins to run shall not be included, nor shall intermediate Saturdays, Sundays, or legal holidays, if the period is less than eleven days. Fed. R. Civ. P. 6(a).  Rule 6(b) provides that the time limit of Rule 59(e) may not be judicially extended as it is "jurisdictional, and cannot be extended in the discretion of the district court." *Adams*, 29 F.3d at 870 (quoting *Welch v. Folson*, 925 F.2d 666, 669 (3d Cir. 1991)).  Therefore, Plaintiff was required to bring her Rule 59(e) motion for reconsideration by March 16, 2008, which she failed to do.

    In response to her claim that she attempted to file a motion for reconsideration of this order on April 1, 2008 (Docket No. 54 at 9), the Court would not have considered said motion as it would have been untimely.  Accordingly, to the extent that Plaintiff continues to make allegations against the law firm of Andrews & Price and attorney Anthony Sanchez, the Court declines to consider the same as they are no longer parties to this action.

and all claims under sections 1983 and 1985 arising on or before November 6, 2005; (2) any and all claims under section 1986 arising before November 6, 2006; (3) Plaintiff's claim under section 1988; and (4) Plaintiff's claim under the Freedom of Information Act. (Docket No. 44). The Court granted Plaintiff leave to amend her claims against Wilkinsburg under section 1983, conspiracy under sections 1983 and 1985, section 1986, Title VII and ADA, the Whistleblower Act, and the Right to Know Act. (*Id.*). Plaintiff failed to amend.

In sum, Plaintiff's failure to amend her claims against any of the Defendants was the reason this Court dismissed this case for failure to prosecute. (*See* Docket No. 46). The Court will now address Plaintiff's remaining claims against the Pittsburgh Board, the Commonwealth Defendants and Wilkinsburg.[23]

### A.     Plaintiff's Remaining Claims Against the Pittsburgh Board

Plaintiff claims that when she applied for various positions within the Wilkinsburg School District, she listed the Board as a reference for her teaching experience. (Docket No. 3 at ¶ 23; Docket No. 72 at 30:14-20). Plaintiff had been previously employed by the Pittsburgh Board as a substitute teacher. (Docket No. 59 at 3; Docket No. 62 at 4). She alleges that the Board gave her "bad references" which resulted in her not being hired for any of the positions she applied for with Wilkinsburg. (*Id.*) These claims were clarified at the January 30, 2009 Show Cause hearing as follows:

> THE PLAINTIFF:     My claim against the City of Pittsburgh is that
>
> when I filed for promotions and for jobs in the

---

[23]
      To the extent that Plaintiff continues to make identical claims that were dismissed with prejudice against the Defendants (*see* Docket No. 69 at 11-13, 28), the Court will not consider the same.

|                    | Wilkinsburg School District, I had to use them |
|--------------------|--------------|
|                    | as a reference for my -- |
| THE COURT:         | You had to use -- |
| THE PLAINTIFF:     | The Pittsburgh Public Schools for a reference |
|                    | for my experience. They gave them bad |
|                    | references. |

(Docket No. 72 at 30:14-20). Plaintiff again ties these claims to the alleged actions of Anthony Sanchez, acting on behalf of both Wilkinsburg and the Board, in alleged retaliation against Plaintiff for previous lawsuits filed against him personally and the Board. (Docket No. 3 at ¶¶ 42-46; Docket No. 62, *passim*).

Specifically, Plaintiff alleges that the Pittsburgh Board retaliated against her for filing the lawsuits described previously in this opinion, and has been retaliating against her continually since 1994. (Docket No. 72 at 32:3-9, 34:12-14, 36:5-11). Plaintiff describes the actions of the Board giving the Wilkinsburg School District bad references as part of a "pattern of behavior from 1994 all the way up until now of the board and Anthony Sanchez and the district and some of the other parties in this case[]" to retaliate against her for the various lawsuits she has filed against them and other protected activities. (Docket No. 72 at 36:16-19).

**B. Plaintiff's Remaining Claims Against the Commonwealth Defendants**

Plaintiff filed a complaint against Wilkinsburg with the PHRC in 2004. (Docket No. 72 at 49:10-25 and 50:1-4 and Docket Nos. 39-2 and 39-3). She claims that Anthony Sanchez was acting as "District Administrative Solicitor" during the administrative proceedings before the PHRC. (Docket No. 3 at ¶ 66). In July of 2006, Plaintiff alleges that Defendant Flipping of the PHRC told

her that the PHRC was going to issue a finding of probable cause against Wilkinsburg in her case and that "they would settle and she'd be given a job to make her whole." (Docket No. 72 at. 49:19-22; Docket No. 62 at 2; Docket No. 69 at 3). After two months had passed, in September of 2006, Plaintiff wrote and called the Harrisburg office of the PHRC regarding her claim. (Docket No. 62 at 2). She claims that "all of a sudden, after two years, the PHRC found no probable cause and dismissed her case, giving her the right to bring the instant action in federal court." (*Id*. at 49-50; Docket No. 62 at 2).

Plaintiff alleges that after Defendant Flipping's misrepresentation to her regarding the outcome of her case, it was Defendant Zuniga who "got into the case and decided that he wasn't going to settle with me and . . . determined that there wasn't any probable cause." (Docket No. 72 at 62:17-20). Plaintiff further alleges that PHRC allowed Anthony Sanchez to interfere with settlement negotiations during the case and "undermine what she was told by three black HRC representatives as [sic] her having probable cause and winning the case." (Docket No. 3 at ¶ 24-26; Docket No. 69 at 3-4). Plaintiff's exhibits contain letters (*see* Docket Nos. 40-17, 40-19, and 40-21) that she wrote to PHRC asking that Mr. Flipping be removed from her case because it was taking too long to resolve. (Docket No. 39; Docket No. 62 at 2). "Each time Plaintiff goes to PAHRC [sic]/EEOC they failed to render her effective exhaustion of administrative remedies and the defendants use what these agencies do as a defense for court dismissal." (Docket No. 54 at 16).

Plaintiff claims that the PHRC determination that her claims were without probable cause was due to "retaliatory animus and conspiracy under color of law." (Docket No. 62 at 24). She alleges that each time she files a claim with the PHRC the Commission and others intentionally interfere with her right to do so. (*Id.* at 25). She further alleges that the PHRC denied her jobs, due

process, equal protection of the law and her rights to administrative remedies. (*Id.* at 29).

### C.    Plaintiff's Remaining Claims against Wilkinsburg School District

According to the Amended Complaint, Plaintiff worked as a home-bound teacher for a disabled child and as a substitute teacher for the Wilkinsburg School District from 2003 to 2005. (Docket No. 72 at 35:14-16; Docket No. 54 at 25; Docket No. 62 at 3). Plaintiff alleges that during this same period she was denied open positions and/or promotions by Wilkinsburg over twenty times in favor of less qualified, younger Caucasian applicants based upon her race, age, and perceived disability. (Docket No. 3 at ¶ 15; Docket No. 54 at 25). Plaintiff claims that when she was a substitute teacher she was told that she was next in line for a permanent teaching position because Wilkinsburg could not find many qualified teachers who were certified. (Docket No. 72 at 48:8-11). However, in the fall of 2004, she avers that she was not promoted to a permanent position because of the School District's alleged animus against African-Americans and because she had previously sued Anthony Sanchez while he was employed by Wilkinsburg. (Docket No. 54 at 25-26). Plaintiff broadly asserts that African-American applicants with more education and experience scored less on a "hidden point system" that was used by Wilkinsburg during the hiring process. (Docket No. 3 at ¶ 19). She alleges that she discovered this point system when she filed a claim with the PHRC in 2004 and further alleges that, based on the point system, she would have scored the maximum. (*Id.*)

Plaintiff further claims that Wilkinsburg refused to grant her home-bound student any IEP meetings between 2004 and 2005 because Plaintiff was the student's teacher. (Docket No. 3 at ¶ 6; Docket No. 62 at 3). At either an IDEA hearing or IEP meeting for the student in August or

September of 2005, Plaintiff alleges that Anthony Sanchez,[24] purportedly acting as the Wilkinsburg School District solicitor, refused to allow Plaintiff access to the conference room where the meeting was to be held and, further, allegedly told the meeting participants that Plaintiff was "crazy[] and mentally ill." (Docket No. 3 at ¶¶ 44-47; Docket No. 54 at 26-27; Docket No. 72 at 32:13-22; Docket No. 62 at 2-3, 25). Plaintiff claims that Mr. Sanchez was retaliating against her for filing previous lawsuits pursuant to Title VII, the ADA, and other anti-discrimination laws against the Pittsburgh Board of Public Education, which was represented by Mr. Sanchez during the pendency of some of her lawsuits.[25] *Id.* In September of 2005, Plaintiff claims she was no longer paid for homebound services and was not provided a prior hearing or notice before the same. (Docket No. 62 at 3). She claims she was not promoted to a full time position because she complained about prior racial discrimination. (*Id.*).

After she was not offered a full time position in September of 2004, Plaintiff asserts that she dual-filed with the PHRC and the EEOC in September of 2004; thus, she allegedly timely exhausted her administrative remedies. (Docket No. 54 at 5, 24; Docket No. 62 at 5). She received a right to sue letter from the PHRC in December of 2006, however, Plaintiff does not state if or when she received a right to sue letter from the EEOC. (*Id.* at 6). Despite same, Plaintiff baldly contends that

---

24

The Court notes again that the claims against Anthony Sanchez, personally, and the law firm Andrews & Price were dismissed with prejudice on March 3, 2008. (Docket No. 42) At the time of the occurrences outlined in Plaintiff's Complaint, Anthony Sanchez and Andrews and Price were litigation counsel to Wilkinsburg and the Pittsburgh Board of Public Education and, as such, are not state actors. *See Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L. Ed. 2d 509 (1981). Thus, any and all of Plaintiff's constitutional claims against them were dismissed. Also to the extent they were acting as counsel in judicial proceedings they are immune. *N'Jai v. Pittsburgh Board of Public Education, et al.*, Civ. A. No. 99-645 (Docket No. 78 at 26, 27).

25

*See* discussion, *supra*, pgs. 3-15.

she had from March of 2007 through March of 2009 within which to file a lawsuit in this Court. (*Id.*). As discussed herein, Plaintiff has not stated nor provided documentation that she exhausted her administrative remedies with regards to her claim for termination in 2005.

## VI. Procedural Background

Plaintiff commenced this action on November 6, 2007 when she filed a Motion for Leave to Proceed in forma pauperis. (Docket No. 1). The Court granted said motion on November 8, 2007 (Docket No 2), and later that day Plaintiff filed her Complaint (Docket No. 3). On November 19, 2007, Plaintiff filed a certificate of service stating that a notice of lawsuit and request for waiver of service were sent by certified mail to the Human Relations Commission, Equal Employment Opportunity Commission, Wilkinsburg, the Board, and Anthony Sanchez and Andrews & Price. (Docket Nos. 6 and 7). The Board, Anthony Sanchez and Andrews & Price, the Commonwealth Defendants and Wilkinsburg responded and provided Plaintiff with their signed waiver of service. (Docket Nos. 8 - 18).

Defendants Anthony Sanchez and Andrew & Price filed a Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) on January 10, 2008. (Docket No. 22). On January 11, 2008, the Pittsburgh Board filed a Motion for More Definite Statement and a Motion to Dismiss. (Docket No. No. 26). Wilkinsburg filed a Motion to Dismiss on January 14, 2008. (Docket No. 31) On January 27, 2008, the Commonwealth Defendants also filed a Motion to Dismiss on January 27, 2008. (Docket No. 35). Plaintiff filed her Responses to each of these respective motions on January 30 and 31, 2008, and February 11, 2008. (Docket Nos. 37, 38, 39, 40). In her brief in response to the Defendants' motions, titled "Brief in Support of Striking the Defendants' Motions to Dismiss," Plaintiff included a "Counter Motion for Sanctions" against the

Defendants for alleged violations of the Federal Rules of Civil Procedure and the Code of Professional Conduct (Docket No. 39). Plaintiff sent this brief and counter motions directly to the Court. Upon receipt of same, the Court ordered these documents to be forwarded to the Clerk of Court for proper filing. (*See* Text Entry Order, February 11, 2008). The Court further advised Plaintiff that all further documents submitted for filing shall be filed through the Office of the Clerk of the Court. (*Id.*). Additionally, the Court advised Plaintiff that her failure to comply with this Order and any other of the Court's Orders, Policies, and Procedures could result in dismissal of this matter. (*Id.*).

On March 3, 2008, the Court denied Plaintiff's Counter Motion for Sanctions because there was no such basis for sanctions against any of the Defendants. (Docket No. 41). Also, on March 3, 2008, the Court issued a Memorandum Order granting the Motion to Dismiss by Defendants Anthony Sanchez and Andrews & Price with prejudice and striking their names from the caption. (Docket No. 42). In a separate Order, the Court granted the Pittsburgh Board's Motion to Dismiss without prejudice and ordered Plaintiff to file an amended complaint by April 3, 2008, if she chose to pursue her claims. (Docket Nos. 43). In another Memorandum Order, the Court granted, in part and denied in part, Wilkinsburg's Motion to Dismiss, and again ordered Plaintiff to file an Amended Complaint by April 3, 2008. (Docket No. 44). In a third Memorandum Order, the Court granted, in part and denied in part, the Commonwealth Defendants' Motion to Dismiss because it found that Plaintiff's Complaint lacked clarity and sufficient detail. (Docket No. 45). In sum, the Court disposed of several of the Motions to Dismiss without prejudice, granting Plaintiff leave to amend her complaint by April 3, 2008 in accordance with the Supreme Court's decision in *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) and the United States Court of Appeals for the

Third Circuit's interpretation of that case in *Phillips v. County of Allegheny*, 515 F.3d 224, 230-35 (3d Cir. 2008). Specifically, the Court ordered that Plaintiff's amended complaint should abide by Federal Rules of Civil Procedure 8 and 10 and informed Plaintiff again that "[f]ailure to comply with this Court's Orders, Policies, and Procedures can result in dismissal for failure to prosecute." (Docket Nos. 43, 44, 45). The Plaintiff failed to respond and the Court heard <u>nothing</u> further from Plaintiff in the next 30 days.[26]

On April 4, 2008, after a review of the docket in this matter, it appeared that Plaintiff had failed to comply with the Court's Orders dated March 3 and 5, 2008 (Docket No. 43, 44, 45) which ordered Plaintiff to file her amended complaint by April 3, 2008; therefore, the Court dismissed the action for failure to prosecute as Plaintiff had not contacted the Court, filed an amended complaint pursuant to the Court's orders, nor filed any motions for extension of time. (Docket No. 46). Twenty-six days later, on April 30, 2008, Plaintiff filed a Motion for Leave to Proceed in forma pauperis to Appeal the Dismissal to the United States Court of Appeals for the Third Circuit. (Docket No. 47). She filed her Notice of Appeal as to this Court's April 4, 2008 Order (Docket No. 46) that same day. (Docket No. 48). On June 2, 2008, the Court of Appeals for the Third Circuit granted Plaintiff's motion to proceed in forma pauperis. (Docket No. 50).

On October 16, 2008, the Court of Appeals for the Third Circuit vacated and remanded this Court's April 4, 2008 Order dismissing Plaintiff's case. (Docket No. 51). The Court of Appeals directed this Court to consider the factors for punitive dismissal as set forth in *Poulis v. State Farm*

---

[26]

    *See* the affidavits of John Galovich, this Court's Courtroom Deputy Clerk; Rebecca Magyar, Esquire, former law clerk to this Court; Tim Tarby, Data Qaulity Analysis; Mark Marinch, Unix/Linux Systems Administrator; and Daniel Wilt, webmaster, trainer. (Docket Nos. 57-2 - 57-6); *see also* discussion, *infra*, at pgs. 31-33.

& *Fire Cas. Co.*, 747 F.2d 863, 866 (3d Cir. 1984). (Docket No. 53). Accordingly, on November 10, 2008, the Court issued an Order to Show Cause directing Plaintiff to show good cause why her case should not be dismissed for failure to prosecute because of her failure to comply with Court Orders dated March 3, 2008 and March 5, 2008. (Docket No. 52). Plaintiff was also ordered to file any evidence or supporting brief in accordance therewith by December 1, 2008. (*Id.*). Additionally, the Board, the Commonwealth Defendants, and Wilkinsburg were ordered to submit responsive briefs addressing Plaintiff's arguments by December 30, 2008. (*Id.*). The Court further ordered the parties to set forth their respective positions regarding the factors set forth in *Poulis*, 747 F.2d 863, and *United States v. Currency*, 330 F.3d 141 (3d Cir. 2003). (*Id.*). The Court then set this matter down for a hearing and argument on January 30, 2009. (*Id.*).

On December 1, 2008, Plaintiff filed two responses to the Order to Show Cause (Docket No. 52), titled "Motion to Show Cause why the complaint dismissed on 4/4/08 should not be dismissed or also this Rule is to show why the Defts [sic] should be liable to the Pltf [sic] for filing Bad Faith Answers to her Complaint and False Information to the Courts," and "Motion for Order to Show Cause why the District Court Judge Flora [sic] Barry should reconsider the harsh and abusive sanction to dismiss any claims and/or complaint based upon Federal rule 12(B)(6) or an [sic] based upon failure to prosecute." (Docket Nos 54 and 55). Upon consideration of these filings, the Court ordered the Clerk of Court, Robert Barth, to direct the appropriate Court employees to file affidavits detailing the CM/ECF filing process in the Western District of Pennsylvania and Plaintiff's attempts to contact the Court regarding same by December 12, 2008. (Docket No. 56). On December 11, 2008, the Court's Exhibits 1-5 in Reply to Plaintiff's Rule to Show Cause and Motions Showing Cause (Docket Nos. 54 and 55) were filed on the docket. (Docket No. 57). They consist of affidavits

of the following individuals: (1) John Galovich, this Court's Courtroom Deputy Clerk; (2) this Court's former law clerk, Rebecca Magyar, Esq.; (3) CM/ECF Data Quality Analyst, Tim Tarby; (4) Unix/Linux Systems Administrator, Mark Marinch; and (5) Daniel Wilt, webmaster/trainer. (Docket Nos. 57-2 - 57-6).

The Commonwealth Defendants filed their Response to Plaintiff's briefs on December 17, 2008. (Docket No. 58). On December 23, 2008, the Pittsburgh Board filed its Responsive Brief (Docket No. 59), and on December 30, 2008, Wilkinsburg filed its Response. (Docket No. 60). That same day, Plaintiff filed a Counter Response to the Commonwealth Defendants' Response. (Docket No. 61). Thereafter, on January 15, 2009, Plaintiff filed a second Counter Response to the Board's Response (Docket No. 62), and on January 30 2009, she filed a Reply brief to the Wilkinsburg's Response.[27] (Docket No. 65).

On January 30, 2009, the Court held a hearing wherein the Court heard argument and received evidence as to Plaintiff's claims against each of these Defendants.[28] (Docket No. 66). The Court ordered that if any party wished to submit additional briefing, they shall do so by February 17, 2009. (Docket No. 67). Subsequently, the Pittsburgh Board and Wilkinsburg both filed a Supplement on February 16 and 17, 2009, respectively. (Docket Nos. 68 and 70). Also, on February 17, 2009, Plaintiff filed a "Brief in Opposition to Show Cause Hearing," in which she set forth a

---

[27] In this response, Plaintiff cites her previous Motion to Compel Wilkinsburg to serve a copy of its response submitted on December 30, 2008 and to allow Plaintiff time to respond. (Docket No. 65 at 2). She claims that Wilkinsburg violated Rule 5 by not serving her with its response on December 30, 2008. (*Id.*). She further alleges that the Court ignored this "negligence" while it still considers dismissal of Plaintiff's entire case. (*Id.*). Wilkinsburg responded to Plaintiff's Motion to Compel by mailing her, first class, its response. (Docket No. 64 at 1). Accordingly, the Court denied as moot Plaintiff's Motion to Compel. (*See* Text Entry Order, January 15, 2009).

[28] The transcript of this proceeding, the cost of which was paid for by the Defendants as Plaintiff is proceeding *pro se* and in forma pauperis, was filed on the docket in this matter on February 23, 2009. (*See* Docket No. 72).

proposed amended complaint. (Docket No. 69). Upon consideration of this brief, the Court ordered

the Defendants to file a response to same (Docket No. 69) by March 16, 2009. (Docket No. 71). In

response to this order, on March 11, 2009, the Board filed its Response (Docket No. 73), and on

March 16, 2009, Wilkinsburg filed its Reply Brief. (Docket No. 74). Upon good cause shown,[29] the

Court granted the Commonwealth Defendants' request for an extension of time (Docket No. 77) and

the Commonwealth Defendants' Response to Plaintiff's Brief in Opposition to the Show Cause

Hearing was accepted as filed on March 17, 2009. (Docket No. 76). Thereafter, on April 7, 2009,

Plaintiff filed a second Brief in Response to the Oral Argument held on January 30, 2009. (Docket

No. 78). As is readily apparent, this matter has been fully briefed. Hence, the Court now turns to

the parties' positions as to the application of the *Poulis* factors to the issue of whether Plaintiff's

claims should be dismissed in whole or in part for her failure to prosecute.

## VII.    Legal Standard

In this circuit, district courts are to determine the propriety of a punitive dismissal pursuant

to Rule 41(b)[30] in light of the factors outlined in *Poulis v. State Farm Fire and Casualty*, 747 F.2d

---

[29]

On March 17, 2007, counsel for the Commonwealth Defendants sought an extension of time of one day past March 16, 2009 within which to respond to Plaintiff's Brief at Docket Number 69, and in the alternative, stated that these Defendants were content to rely on their previous submission if the Court denied their request for additional time. (Docket No. 75). Specifically, counsel for the Commonwealth Defendants provided good cause in that a family medical emergency took place with regard to undersigned counsel on March 15, 2009 which caused the Commonwealth Defendants to miss the March 15, 2009 deadline. (Docket No. 75 at 2).

[30]

Rule 41(b) specifically provides:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule – except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 – operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b). Failure to prosecute can take may forms, e.g., failure to comply with court orders or a failure to

863 (3d Cir. 1984).  However, in *Poulis*, the United States Court of Appeals for the Third Circuit

did not provide a magic formula whereby the decision to dismiss or not to dismiss a plaintiff's

complaint becomes a mechanical exercise.  That is, not all of the enumerated factors need to be

satisfied in order to dismiss a complaint.  *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992);

*Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988);  *see also Curtis T. Bedwell & Sons, Inc. v. Int'l.*

*Fidelity Ins. Co.*, 843 F.2d 683, 696 (3d Cir. 1988).  Rather, the decision must be based upon the

specific facts of the case and the court's contact with the plaintiff. *Mindek*, 964 F.2d at 1373.

Ultimately, the decision to dismiss a complaint is within the district court's discretion, as it is the

most well-equipped to make such a decision based upon its direct contact with the litigants, and it

is its own orders, calendar, docket and authority that have been violated.  *Id.*

The factors that this Court must consider with regards to the case at hand include the

following:

> (1) the extent of the party's personal responsibility;
> (2) the prejudice to the adversary;
> (3) history of dilatoriness;
> (4) whether the conduct of the party was willful or in bad faith;
> (5) the effectiveness of alternative sanctions; and
> (6) whether the claim or defense has merit.

*Poulis*, 747 F.2d at 868. (*See also* Docket No. 53-2 at 3). "[D]ismissal is a drastic sanction and

should be reserved for those cases where there is a clear record of delay or contumacious conduct

by the plaintiff."  *Donnelly v. John-Manvillle Sales Corp.*, 677 F.2d 339, 342 (3d Cir. 1982).

Dismissal is a harsh remedy "and should be resorted to only in extreme cases" because it deprives

---

act. *Taliaferro v. Darby Twp. Zoning Bd.*, Civ. A. No. 03-3554, 2008 U.S. Dist. LEXIS 55695, *3 (E.D. Pa. July 23, 2008).  The rule does not explicitly provide for *sua sponte* dismissals by the court, but it has been held to be broad enough to authorize such dismissals on the same basis as it authorizes dismissals upon motion of the defendant. *Donnelly v. Johns-Mansville Sales Corp.*, 677 F.2d 339, 341 (3d Cir. 1982).

a party of its day in court. *Mindek*, 964 F.2d at 1373 (citing *Marshall v. Sielaff*, 492 F.2d 917 (3d Cir. 1974)); *Adams v. Trustees of the N.J. Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 870 (3d Cir. 1994). To that end, the Court of Appeals for the Third Circuit has held that "the District Court should provide the plaintiff with an opportunity to explain [her] reasons for failing to prosecute the case or comply with its orders prior to dismissing a case sua sponte." *Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008)(citing *Emerson v. Thiel College*, 296 F.3d 184, 191 (3d Cir. 2002)).

## VIII.   Discussion

In this case, the Court finds that Plaintiff's own action, or, more precisely, her inaction by failing to timely respond to this Court's Orders dated March 3 and 5, 2008 (Docket Nos. 43, 44, 45) does not make adjudication impossible.  Furthermore, as Plaintiff has opposed the dismissal of her case, this Court must evaluate the *Poulis* factors with regards to the history and facts of the present matter. The Court will now address the same.

### A.   Extent of Plaintiff's Personal Responsibility

In determining whether dismissal is appropriate under the first factor, a court must look to whether the party bears personal responsibility for the action or inaction. *Adams*, 29 F.3d at 873. *Pro se* litigants have a "personal responsibility for the conduct of the litigation" because they represent themselves. *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 920 (3d Cir. 1992).  To that end, one is not excused from compliance with the Federal Rules of Civil Procedure because she is a *pro se* litigant. *Sykes v. Blockbuster Video*, 205 Fed. Appx. 961, 963-64 (3d Cir. 2006); *see also Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir. 1998)(*pro se* plaintiff's ignorance of rules does not constitute good cause).

28

Defendants argue that because Plaintiff is a *pro se* litigant, she is solely responsible for prosecuting her claims and is accountable for her failure to timely file an amended complaint. (Docket No. 58 at 8-9; Docket No. 59 at 6-7; Docket No. 60 at 7). Plaintiff argues that she should not be held responsible because she was "ill...and/or facing serious shelter issues based on C/O poisoning" between January of 2008 and the end of March of 2008. (Docket No. 55 at 2).[31] She further contends that she tried to comply with this Court's Order as she thought the "appropriate thing to do...was file for reconsideration and move for an expansion of time." (Docket No. 54 at 9). In response to these assertions, Wilkinsburg argues that her inability to timely file an amended complaint due to illness and shelter issues is belied by her ability to file the documents at Docket Numbers 37, 38, 39, and 40 between January 30, 2008 and February 11, 2008. (Docket No. 60 at 7). Furthermore, had Plaintiff filed the documents she claims to have attempted to file, she still would not have complied with the Court's orders. (*Id.*).

First, the Court notes that the principles concerning a party's personal responsibility are particularly relevant here given Plaintiff's litigious history against the Board.[32] Plaintiff is allegedly very educated and an experienced *pro se* litigant who is familiar with the Federal Rules of Civil Procedure and the consequences of being non-compliant with court orders. (*See* Text Entry Order, February 3, 2008).[33] Second, in response to Plaintiff's contention that she attempted to

---

[31]

Plaintiff never attempted to contact the Court by letter, email, or a telephone call to notify the Court as to her illness or housing issues which she claims inhibited her ability to prosecute this case in accordance with this Court's Orders, the Federal Rules of Civil Procedure as well as this Court's Local Rules. (*See* Docket No. 57-2 - 57-6, *passim*).

[32]

See discussion, *supra*, pgs. 3-15.

[33]

See discussion, *supra*, pgs. 5-15.

electronically file a motion for an extension of time to file her amended complaint before the April 3, 2008 deadline through the Court's CM/ECF system (Docket No. 54 at 9), such an attempt, if made, failed as there is no record of such a request on the docket for this case.[34] Nor did Plaintiff attempt to contact this Court's chambers to request an enlargement of time. (*See* Docket Nos. 57-2 at ¶ 3 and 57-3 at ¶ 4).

According to Tim Tarby, Data Qaulity Analyst for this Court, Plaintiff became a registered user with PACER and CM/ECF on December 18, 2007, and as such, was required to file all documents pertaining to her case electronically. (Docket No. 57-3 at ¶¶ 4, 8). In fact, the Court's CM/ECF Policies and Procedures, publicly available on the Court's website, state that "[o]nce registration is complete, a Filing User may not withdraw from participation in the Electronic Filing System except by leave of court." *See* http://www.pawd.uscourts.gov/Documents/Forms/FinalECF PolProc.pdf, pg. 3. At the Show Cause Hearing, Plaintiff was cross-examined by opposing counsel as to her experience with ECF. Under oath, Plaintiff admitted that she logged into ECF successfully more than once with her ID number. (Docket No. 62 at 20; Docket No. 72 at 17-18). However, throughout the course of this case, Plaintiff has filed all of her documents via hand delivery or by mail.[35] (Docket No. 57-3 at ¶¶ 4, 11).

Mark Marinch, the Court's Unix/Linux Systems Administrator, confirms that Plaintiff made a request to become a registered user with CM/ECF on December 18, 2007 and that this request was processed by Tim Tarby. (Docket No. 57-4 at ¶¶ 2, 3). If a CM/ECF user has forgotten his or her

---

[34]

The Court also notes that all litigants have a duty of candor to the Court before which they are litigating. *See United States v. Wecht*, 484 F.3d 194, 236 (3d Cir. 2007).

[35]

Further, Plaintiff has also attempted to file documents by inappropriately mailing them directly to the Court. *See* discussion *infra*, at pgs. 32-33.

ID or password, he or she can seek assistance from the Court's CM/ECF help desk or the Court's website. (Docket No. 57-3 at ¶¶ 5-7). Daniel Wilt, a webmaster/trainer for the Court, declared that if a user is having problems filing a document, the user can contact the help desk for technical support. (Docket No. 57-6 at ¶ 10). At no time did Plaintiff avail herself of these outlets with which to cure her difficulties in electronically filing. (*Id.*; Docket No. 57-2 - 57-5)

Plaintiff also claims that she attempted to electronically file her motions six times on April 1, 2008 through PACER with the Court but that her attempts were ignored. (Docket No. 54 at 7; Docket No. 55 at 2). She claims that PACER and the Court "in bad faith intercepted" her filings "causing it to appear that she failed to prosecute." (*Id.*; Docket No. 61 at 5). She argues that she met her responsibilities and the fault lies on PACER, the District Court and the "viscous [sic] misconduct in filing a frivolous motion to dismiss without consideration of the law of the Defendants." (Docket No. 54 at 10). Plaintiff further claims that PACER interfered with her filing without reason "and committed virtually internet mail fraud." (Docket No. 55 at 4; Docket No. 69 at 10).

The record reflects that after Plaintiff was unable to file the motions electronically, on April 1, 2008, she emailed them to pacermail@psc.uscourt.gov, requesting that the PACER help desk forward her filings to this Court. (Docket No. 54 at 8-10; Docket No. 61 at 6). However, the record also shows that Plaintiff received a reply from the PACER help desk on the same day stating that they were not able to forward her request to a court or a judge. (*See* Docket No. 54-3 at 9). Plaintiff's assertion that she made efforts to request the extension directly of this Court (Docket No. 55, *passim*) is also controverted by the record evidence. (*See* Docket No. 57-2 - 57-6). Specifically, there is no confirming evidence that Plaintiff's alleged communication was received and accepted

by the Court. (*Id.*)  The Court further points out that the CM/ECF system is the valid method by which to file documents and Plaintiff's knowledge of this system and ability to access the same is evidenced by her successful access of her CM/ECF account on April 21, 2008. (Docket No. 57-4 at ¶ 10; Docket No. 57-5 at ¶ 5).  Additionally, Plaintiff admitted under oath that she knew there was a problem when she tried to file on April 1, 2008 and that she needed to attend a CM/ECF training session. (Docket No. 62 at 20; Docket No. 72 at 6:22-25). Yet, she maintains that it was PACER's fault that her motions were not timely because PACER received the motions but refused to forward them. (Docket No. 65 at 3).

Once Plaintiff made the request to file electronically with the Court, it was Plaintiff's duty to learn how to successfully file.  If Plaintiff was having problems with the Court's electronic filing system, she merely had to contact this Court's chambers,[36] the Court's IT Department, or the CM/ECF help desk and follow their directives.  However, that was not done here. Furthermore, the Court's IT Department offers a class which instructs registered users how to use CM/ECF.[37]  While Plaintiff believes she may have attempted to request an extension of time to file her amended complaint, she made her attempts outside of the valid filing methods and was unsuccessful. As Plaintiff requested to file electronically via CM/ECF on December 18, 2007 (Docket No. 57-5), she should have been thereafter filing all her documents with this Court electronically. Even as a pro se litigant, she must follow the Court's practices and procedures. *Sykes v. Blockbuster Video*, 205

---

[36]

This Court's contact information is publicly available on its website. *See* http://www.pawd.uscourts.gov/Pages/chamber02.htm.

[37]

The Court's website provides information on CM/ECF training and available classes. *See* http://www.pawd.uscourts.gov/Pages/cmecf_training.htm.

Fed. Appx. 961, 963-64 (3d Cir. 2006); *see also Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir. 1998).

The Court also notes that once she discovered problems with her electronic filing on April 1, 2008, she still had until April 3, 2008 to attempt to mail her papers to the Court, as she had done in the past.[38] Yet, she failed to do so. Furthermore, if Plaintiff was unable to meet the April 3, 2008 deadline, she could have called the Court requesting an enlargement of time or mailed a motion to the Court requesting same. The Court never received a telephone call requesting an enlargement, never received her alleged motions via the mail, and never received a motion for reconsideration of any of its orders. (*See* Docket Nos. 57-2 and 57-3). Additionally, there is a lack of record evidence as to whether Defendants' counsel were served with Plaintiff's motion, as Plaintiff has not provided this Court with the certificates of service related to said motions.

Accordingly, because she is proceeding *pro se*, the Court finds that Plaintiff is fully responsible for her failure to comply with this Court's Orders. *Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002); *Briscoe*, 538 F.3d at 259. In response to Plaintiff's statement that "the judge is responsible for notifying unrepresented litigants concerning some of the obscurer [sic] pitfalls of legal procedure" (Docket No. 54 at 11), throughout the course of the litigation, the Court has strived to keep Plaintiff abreast of all proceedings, including sending copies of its orders and other notices to Plaintiff's P.O. Box. Defendants also served Plaintiff with their filings at her P.O. Box. Thus, Plaintiff was aware or should have been aware of the ongoing proceedings in this case, and is responsible for her inaction. While the Court is sympathetic to Plaintiff's alleged difficulties

---

[38]

The record is clear that Plaintiff timely mailed all her responses to the Defendants' motions to dismiss to the Court. (*See* Docket No. 37, 38, 39).

due to her illness and the condition of her residence,[39] her ability under the circumstances to contact the Court was entirely within her control. She is fully responsible for her non-compliance with this Court's Orders under the circumstances. Thus, the Court finds that the first *Poulis* factor weighs in favor of dismissal.

### B. Prejudice to the Adversary

Evidence of prejudice to an adversary "bear[s] substantial weight in support of a dismissal or default judgment." *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984); *Briscoe* 538 F.3d at 259 (citing *Ware*, 322 F.3d at 222). Evidence of prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Id.* Prejudice need not be "irremediable harm that [can] not be alleviated" by court action. *Adams*, 29 F.3d at 874 (quoting *Bedwell*, 843 F.2d at 693). A plaintiff's conduct will be considered prejudicial to a defendant when the latter is required to assume the cost of continued pre-trial and trial preparation. *Poulis*, 747 F.2d at 868. Additionally, a plaintiff's inaction will constitute prejudice as a defendant cannot properly defend an action a plaintiff does not prosecute. *Taliaferro v. Darby Twp. Zoning Bd.*, 2008 U.S. Dist. LEXIS 55695, *7 (E.D. Pa. 2008). When considering this factor, courts should consider the degree of prejudice suffered when conducting the overall balancing of this *Poulis* factor. *Briscoe*, 538 F.2d at 260 n.3.

The Commonwealth Defendants argue that they have been prejudiced by the additional delay in clarifying the claims in this case inasmuch as they have been prevented from pursing an effective

---

[39] The Court notes, however, that Plaintiff has not provided any support for these claims beyond her own statements.

discovery and/or trial strategy. (Docket No. 58 at 8). The Pittsburgh Board, which is self-insured, argues that it has been prejudiced by having to incur substantial additional cost, time and inconvenience as a result of Plaintiff's failure to prosecute. (Docket No. 59 at 11). It has further been prejudiced by being unable to prepare a defense strategy through determination of the allegations against which it must defend. (*Id.*). Finally, Wilkinsburg contends it has been prejudiced by the delay in clarifying which, if any, claims remain so as to effectively prepare a discovery or trial strategy. (Docket No. 60 at 8).

Plaintiff contends that she has been prejudiced by the Court's dismissal of some of her past claims and what she asserts to be heightened pleading requirements. (Docket No. 54 at 12). Plaintiff further contends that the Defendants did not suffer any prejudice because they were not required to respond and because there has been no trial or discovery. (Docket No. 54 at 12). She further requests strict proof that Defendant suffered any prejudice "and asks for receipts, and other proof of costs."[40] (Docket No. 62 at 16).

The second *Poulis* factor is directed at determining the prejudice caused to the adversary of the non-compliant party, and is unrelated to any possible prejudice suffered by the non-compliant party as a result of a court's actions. *Poulis*, 747 F.2d at 868. In considering the second *Poulis* factor, the Court must evaluate the history of this case and Plaintiff's conduct to determine whether any of the Defendants have been inherently prejudiced. In this Court's estimation, the Defendants have suffered prejudice from the delay in this case in the form of additional costs and lost information as they have been unable to respond to Plaintiff's claims and prepare a defense strategy.

---

[40]

In response to this argument, the Court notes that strict proof, as Plaintiff argues, is not required under the *Poulis* analysis. *See, generally Poulis*, 747 F.2d 863.

*Bedwell*, 843 F.2d at 693-94. This litigation has been unable to proceed to discovery due to Plaintiff's failure to timely amend her claims. Therefore, the Court finds that when combined together, the financial costs incurred by responding to Plaintiff's delinquent conduct and the inability to prepare an adequate defense to the instant action have significantly prejudiced the Board, Wilkinsburg, and the Commonwealth Defendants. *Ware*, 322 F.3d at 222-24; *Scarborough*, 747 F.2d at 877. Based on the foregoing, the Court finds that the second factor of the *Poulis* test weighs in favor of dismissing Plaintiff's claims.

### C. History of Dilatoriness

A history of dilatoriness will be found where there has been extensive or repeated delay or delinquency caused by a plaintiff, such as consistent non-response to discovery requests or consistent tardiness in complying with court orders. *Poulis*, 747 F.2d at 868; *Adams*, 29 F.3d at 874. On the other hand, sloppiness or inexcusable lateness of a few days in meeting a court deadline is not a "default comparable to *Poulis*" where the plaintiff was non-responsive and tardy. *Scarborough*, 747 F.2d at 875. A party's problematic conduct must be viewed in light of its behavior over the life of the case. *Adams*, 29 F.3d at 875.

The Commonwealth Defendants concede that there does not appear to be a history of dilatoriness in this case. (Docket No. 58 at 8). Wilkinsburg joins in this concession, but points out that Plaintiff's history prior to April 4, 2008 of twenty (20) on-time, error free filings evidences that Plaintiff was not only aware of, but comfortable with, the appropriate means to timely file her amended complaint or a motion for extension of time. (Docket No. 60 at 8). Thus, as Plaintiff failed to file an amended complaint on or before April 3, 2008, it was reasonable to assume that she no

longer wished to pursue her claims.[41] (*Id.*). The Pittsburgh Board argues, however, that Plaintiff

lacks a reasonable explanation for her failure to abide by the April 3, 2008 deadline. (Docket No.

59 at 13). Nothing prevented Plaintiff from requesting an extension at the outset of the filing period,

but instead, Plaintiff waited until two days before April 3, 2008 to attempt to request an extension.

(*Id.*). Thus, the Board contends there is evidence of dilatoriness as Plaintiff failed to abide by this

Court's orders and because this case has now been pending for over a year without progression,

attributed to Plaintiff's repeated and unexcused delays. (*Id.*). In the alternative, the Board argues

that the other five factors of *Poulis* weigh in favor of dismissal, even absent inclusion of the

dilatoriness factor. (*Id.*).

In response, Plaintiff argues that "there has been a mix up" and that the Defendants have

been dilatory.[42] (Docket No. 54 at 13). She further argues that she timely sought an extension and

a motion for "reconsider [sic]" two or more days "before the amended complaint was expected."

(*Id.*). Thus, there is no history of dilatoriness on her part. Plaintiff further cites her timely filing of

her complaint, her timely responses to Defendants' motions to dismiss, her timely appeal, and her

timely responses to the Court's Order to Show Cause. (*Id.*). Therefore, she "is not guilty of

dilatoriness whatsoever, but instead this shows substantial prejudice on the part of the Court and/or

Defendants for filing a frivolous motion to dismiss with prejudice." (Docket No. 54 at 13-14).

---

[41]

An assumption this Court and her Deputy likewise made given her prior level of activity in this Court.

[42]

In Plaintiff's response (Docket No. 62) to the Board's Responsive Brief to the Court's Order to Show Cause (Docket No. 59), Plaintiff titled that brief "A clear history of Dilatoriness on the Part of the Board Defendants." (*See* Docket No. 62, *passim*). The Court again notes that the *Poulis* analysis is directed at Plaintiff's conduct, not the Defendants. *Poulis*, 747 F.2d at 868. Therefore, to the extent that Plaintiff argues that this Court should not dismiss her case based upon Defendants' alleged dilatoriness or bad faith, the Court declines to address said arguments as *Poulis* and its progeny do not speak to the dilatoriness of a defendant when a plaintiff has failed to prosecute his or her case.

Plaintiff requests that Defendants "lose by default" for willful obstruction of court records and facts, and pay her compensatory, equitable, and punitive damages. (Docket No. 54 at 14). She further states that the Court should order a monetary settlement; correction of any false records or facts and strict proof of monetary prejudice caused by her.[43] (*Id.*; Docket No. 62 at 14).

The Court agrees with the Commonwealth Defendants and Wilkinsburg that there is no history of dilatoriness in this case warranting dismissal under Rule 41(b).[44] There is also no dispute that except for the deadline for the filing of her amended complaint, Plaintiff has met all other deadlines and court dates during the course of this litigation. Therefore, as the procedural history of this case does not reflect continual dilatoriness, the Court finds that the third *Poulis* factor does not weigh in favor of dismissal. *Briscoe*, 538 F.3d at 261.

### D.     Willfulness or Bad Faith

In *Poulis*, the United States Court of Appeals for the Third Circuit opined that "dismissal is a drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct." *Poulis*, 747 F.2d at 866 (quoting *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 342 (3d Cir. 1982)). Accordingly, in order to determine whether dismissal of an action is warranted based on willfulness or bad faith, a court must consider whether a party's

---

[43]

In response to Plaintiff's requests concerning a monetary settlement and the correction of purportedly false records, there has been no evidence in this case that the Defendants willfully obstructed any court record or fact. Nor has Plaintiff provided any support for this allegation. Furthermore, the Court does not have the authority to order the Defendants to pay Plaintiff damages at this stage of the litigation or "order a monetary settlement." (Docket No. 54 at 14). Accordingly, the Court will not grant these requests by Plaintiff.

[44]

The Court notes that "failure to prosecute" under Rule 41(b) does not mean that the plaintiff must have taken any positive steps to delay trial or prevent it from being reached. It is sufficient if the plaintiff does nothing, knowing that until something is done there will be no trial. *Bendix Aviation v. Glass*, 32 F.R.D. 375, 377 (E.D. Pa. 1962), *aff'd* 314 F.2d 944 (3d Cir.)(per curiam), *cert. denied*, 375 U.S. 817 (1963).

conduct can be characterized as "flagrant bad faith." *Adams*, 29 F.3d at 875 (quoting *Scarborough*, 747 F.2d at 875); *see also Poulis*, 747 F.2d at 866. "Willfulness involves intentional or self-serving behavior." *Adams*, 29 F.3d at 875. Thus, tardiness, which is not excused by inability, is not necessarily willful. *Id.*; *see also Scarborough*, 747 F.2d at 875 (where an attorney filed all the required papers, albeit some tardily, behavior was not willful or contumacious); *but see Bedwell*, 843 F.2d at 695 (where plaintiff and attorney did not comply with court orders and discovery requests without plausible excuses and delay appeared to be calculated, district court properly found conduct willful, not merely negligent).

The *Donnelly* court, in considering the *Poulis* factors, found that counsel's conduct, while dilatory, did not rise to the level of contumacious as he did proceed to locate local counsel, as ordered to do so, within the necessary time. *Donnelly*, 677 F.2d at 343. The court stated that "the nature of the noncompliance [with the court's order] was not a refusal to proceed with discovery or follow an order of the court dealing with discovery on the merits, but arose because plaintiff's case was involuntarily transferred from the district in which plaintiff had chosen; that there was no allegation of any cognizable prejudice to any of the defendants; and that the motion to reinstate the complaint was filed promptly." *Donnelly*, 677 F.2d at 343. In comparison, the *Poulis* court concluded that counsel's illness and his wife's late pregnancy which purportedly caused delay in the case did not amount to contumacious conduct. *Poulis*, 747 F.2d at 869.

The Defendants contend that a significant indicator of Plaintiff's willful conduct and bad faith is her lack of timely excuse for not complying with the Court's orders. (Docket No. 60 at 9; Docket No. 59 at 14-15; Docket No. 58 at 8; Docket No. 68 at 5). Specifically, the Board points to numerous statements made by Plaintiff at the January 30, 2009 hearing which, it contends, clearly

demonstrates her lack of excuse. (Docket No. 72 at 6:8-13; 6:21-25; 7:6-11; 23:1-12) The Court will now review those statements made under oath.

During her testimony, Plaintiff admitted she that is a registered CM/ECF user, but that she never attempted to read the instructions or obtain training. (Docket No. 72 at 23:1-9). She also admitted that she was given permission to file in person and not use the online filing system. (Docket No. 15-17). Plaintiff did not even consider a training session until April 10, 2008, more than a week after the filing due date for her amended complaint. (Docket No. 72 at 6:21-25).

> THE COURT: Have you been through the training?
>
> THE PLAINTIFF: No, I haven't. I don't know what training. No ma'am. I notice they did send me something about training, but that was after they reversed it from the Third Circuit and I was going to attempt to take that training on April 10th.

(Docket No. 72 at 6:21-25). Rather, she assumed that she knew what she was doing and it was not until her case was dismissed that Plaintiff realized something was wrong. (*Id.* at 6: 8-13; 23:6-12). Plaintiff made this assumption even though she had never filed anything via CM/ECF before. (*Id.* at 23:1-6). She did not read the instructions before attempting to file but instead "redid it over and over until" she thought it went through. (*Id.* at 7: 6-11). Even after PACER informed Plaintiff it could not forward her documents, she still did not read the instructions. (*Id.* 23: 9-12).

> MR. SMITH: You weren't concerned maybe you would make a mistake in filing before you never read the instructions?
>
> THE PLAINTIFF: Well, I did get a concern when PACER told me they weren't going to, then it raised my level of concern.

MR. SMITH:        Did you then read the instructions?

THE PLAINTIFF:    No, I didn't.

Plaintiff also did not seek the help of another person or attorney nor did she call the Court to see whether her filing was received. (*Id.* at 7: 3-11). Rather, she just "redid it over and over until it went through, what [she] thought it went through." (*Id.* at 7:6-11).

Plaintiff has argued she was unable to comply with the Court's orders because she was ill, her house was freezing and there was a "CO" scare. (Docket No. 54 at 14; Docket No. 72 at 21: 18-24). Thus, she claims that her actions were not dilatory or contumacious, nor were they willful or in bad faith. (Docket No. 54 at 14). Instead, she argues that the "contrimacious [sic] conduct lies on the Defendant[s], Court, and PACER." (Docket No. 54 at 32). Plaintiff states that "[i]t is a fact that PACER/CM/ECF have problems and many have lost documents and other electronic mail."[45] (Docket No. 62 at 15).

The record is clear that despite being forewarned regarding the failure to comply with this Court's Orders and of the requirement that Plaintiff file all documents through the Clerk of Court or the CM/ECF system (*see* Text Entry Order, Feb. 11, 2008), Plaintiff sought to email her motions to PACER and this Court on April 1, 2008. (Docket No. 54-3 at 8, 11). Plaintiff's attempts to send an e-mail copy of her pleading directly to this Court's email address (*see* Docket No. 55 at 2) was in clear derision of this Court's Practices and Procedures, which state "Counsel are not to send correspondence to Judge Fischer, except where she specifically requests or approves the same." *See* http://www.pawd.uscourts.gov/Documents/Public/Reference/j_fischer.pdf. In this Court's

---

[45] For evidence in support of this contention, Plaintiff cites to the CM/ECF "common problems experienced by user" website that provides solutions to some of the common problems users have experienced.

estimation, Plaintiff's attempts at filing were inadequate, willful and in violation of this Court's Orders, policies, and procedures.

Moreover, a *pro se* litigant is not excused from compliance with the Federal Rules of Civil Procedure or this Court's Local Rules. *Sykes*, 205 Fed. Appx. at 963-64. In this Court's estimation, that is particularly true here as Plaintiff has litigated over fifteen (15) lawsuits between 1994 and 2008, nine of them in federal court.[46] Plaintiff's filings illustrate that she is skilled in legal research and brief writing. Further, she has appeared on her own behalf in a number of legal proceedings. Her testimony and courtroom demeanor further demonstrate that she is supremely confident in her legal abilities, to the point where she was not even concerned that she would make a mistake in attempting to electronically file her pleadings through the Court's CM/ECF system. Although she had done so before, Plaintiff did not contact the Court or the Office of the Clerk to ensure that her filings were successful, despite her receipt of an email from PACER informing her that her filings were not successful. Therefore, this Court finds that the record of this case shows a history of contumacious conduct by Plaintiff as she has ignored Court orders and has completely disregarded the polices and procedures of this Court. *Gay v. Cuyler*, Civ. A. No. 82-1978, 1988 U.S. Dist. LEXIS 12255, at *9 (E.D. Pa. Nov. 2, 1988)(citing *Donnelly*, 677 F.2d at 342).

The Court also does not find credible Plaintiff's assertion that her medical and living conditions prevented her from abiding by this Court's Order.[47] She testified that despite being incapacitated between January of 2008 and April of 2008, she was still able to continue to prepare

---

[46]

*See* discussion, *supra*, at Sections II and III.

[47]

A judge, only when sitting as a fact finder, may make determinations of credibility. *United States v. Harris*, 507 F.2d 197, 198 (3d Cir. 1975). Otherwise, such determinations are left to the province of a jury. *Id.*

legal documents. (Docket No. 72 at 22:1-11). This is also reflected by her filing of responses to the Defendants' motions to dismiss during this period, by mailing them to this Court's chambers. (Docket Nos. 37, 38, 39, 40). In response to Plaintiff's assertion that it is a fact that CM/ECF has problems and loses documents, Plaintiff has not provided any credible proof for this contention. Her reference to the Court's troubleshooting guide to CM/ECF filing problems (*see* Docket No. 62-16) does not evince that the CM/ECF system has problems. Rather, this document instructs a user what to do if they are having problems using their CM/ECF account. Despite being aware of them, Plaintiff did not follow these instructions.

Viewing Plaintiff's conduct throughout the life of this case as a whole and given her education as well as background with this Court, Plaintiff did not make a good faith effort to comply with this Court's instructions and orders. As Plaintiff's familiarity with the judicial process is well documented, it may be considered by this Court in determining the existence of bad faith. *Clarke v. Richardson*, 153 Fed Appx. 69, 73 (3d Cir. 2005)(citing *Ware*, 322 F.3d at 222-24). Moreover, the *Poulis* court held that a plaintiff's failure to properly respond to specific court orders may constitute willful disregard of that court's authority. *Poulis*, 747 F.2d at 868-69. Thus, the Court finds that Plaintiff's callous disregard of this Court's Orders, Policies and Procedures demonstrates bad faith for purposes of the *Poulis* test. *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 75 (3d Cir. 1987) (citing *National Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). Thus, the Court finds that the fourth factor of *Poulis* weighs heavily in favor of dismissal.

E.       **Alternative Sanctions**

The Defendants argue that nothing short of dismissal would prove a sufficient sanction. (Docket No. 60 at 10; Docket No. 59 at 16; Docket No. 58 at 9). Defendants further contend that

43

inasmuch as Plaintiff is proceeding in forma pauperis and *pro se*, monetary sanctions are inappropriate. (*Id.*).

Before dismissing this case with prejudice, this Court must contemplate various alternative sanctions that it could impose on Plaintiff as the United States Court of Appeals for the Third Circuit has directed the district courts to be reluctant to deprive a plaintiff of the right to have a claim adjudicated on the merits. *Titus v. Mercedes Benz*, 695 F.2d 746, 749 (3d Cir. 1982). As Plaintiff is proceeding *pro se* and in forma pauperis, and because she is not an attorney, the Court cannot impose disciplinary action against her. *Williams v. Potter*, Civ. No. 04-1200, 2006 U.S. Dist. LEXIS 7555, at *4 (W.D.Pa. Feb. 28, 2006). In addition, given Plaintiff's *pro se* status, any sanction imposing costs or fees upon Plaintiff would be ineffective as a sanction. *Id.*; *Bedwell*, 843 F.2d at 696; *Nixon v. Aramark Corp.*, Civ. A. No. 07-1174, 2008 U.S. Dist. LEXIS 32071, *2 (M.D. Pa. April 17, 2008); *Briscoe*, 538 F.3d at 263.

Plaintiff states that "other expeditious ways to rule on the case at this point is to rule on the motion to reconsider, an expansion of time to amend...as well as the evidence and facts and/or parties dismissed that were overlooked by the court previously." (Docket No. 54 at 18). She further argues that another alternative is to allow the case to proceed to discovery or trial. (*Id.*). She again requests that the Court order settlement and to impose sanctions on the Defendants. (*Id.*). Plaintiff then goes on to list how she has been purportedly harmed for the past eighteen years by the Defendants. (*Id.* at 20).

Upon consideration of Plaintiff's argument with regards to this factor, it is clear to the Court that Plaintiff has offered no alternative sanction to dismissal to which she could be subjected. Instead, she continues to argue that she timely filed her motions and that the Defendants should be

sanctioned. (*Id.* at 18). In this Court's estimation, due to the inadequacy of alternative sanctions in this matter, the fifth factor of *Poulis* weighs in favor of dismissal with prejudice. *See Williams v. Kort*, Civ. A. No. 02-2320, 2007 U.S. Dist. LEXIS 52314, at *8 (M.D. Pa. July 19, 2007)(if there is no effective alternative sanction to dismissal, balance weighs against the plaintiff).

### F. Meritoriousness of Plaintiff's Claims

The standard of meritoriousness when determining whether to dismiss a case is whether a claim or defense has merit when the allegations, if established at trial, would support recovery by a plaintiff or would constitute a complete defense. *Poulis*, 747 F.2d at 869-70; *Emerson*, 296 F.3d at 191; and *Bedwell*, 843 F.2d at 696. The meritoriousness of a claim "must be evaluated on the basis of the facial validity of the pleadings, and not on summary judgment standards." *Scarborough*, 747 F.2d at 875. Where a plaintiff makes out a prima facie case but the defendant raises a stronger prima facie defense, this factor may not weigh in favor of the plaintiff. *Adams*, 29 F.3d at 876-77; *Poulis*, 747 F.2d at 870.

In this Court's orders dated March 3, 2008, Plaintiff was given leave to amend her complaint and clarify her claims against the Defendants. (Docket No. 43, 44, 45). As stated in those Orders, Plaintiff is obligated to provide grounds for her entitlement to relief beyond "labels and conclusions[] and a formulaic recitation of the elements of a cause of action." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)(citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006)(laying out the requirements to establish a prima facie case under Title VII). In reference to the Show Cause Order and the hearing held on January 30, 2009, Plaintiff filed what the Court construes as a purported amended complaint against all Defendants. (*See* Docket No. 69). For the reasons discussed below,

however, pursuant to Rule 12(b)(6), the Court dismisses all of Plaintiff's claims against the Pittsburgh Board, the Commonwealth Defendants, and her claims against Wilkinsburg under 42 U.S.C. §§ 1983 and 1985 because she has failed to articulate reasons why her claims are sufficient to withstand dismissal. *Taylor*, 633 F.Supp. at 641; *see also Mazur v. Pa. Dep't of Transp*, 507 F.Supp. 3, 4 (E.D. Pa. 1980), *aff'd*, 649 F.2d 860 (3d Cir. 1981).

As discussed in more detail in the factual background of this opinion, Plaintiff maintains that all Defendants continue to conspire to deny her a right to a state teaching position because of her race, age, perceived disability and because "she participated in Title VII , ADA, IDEAL [sic],[48] and ADEA, not to mention Whistle Blower's Act protected [a]ctivities" in prior lawsuits against Defendants. (Docket No. 54, *passim*). Specifically, Plaintiff maintains that the Commonwealth Defendants, the Board, and Wilkinsburg conspired to deprive her of her right to tenure or work as a permanent school teacher in Wilkinsburg in retaliation for her prior protected activities. (Docket No. 69 at 18, 25). In furtherance of the alleged conspiracy, the PHRC and EEOC refused to give Plaintiff "the protection she needs and as other complainants get...in an effort to deprive her of any administrative remedies in a buttressing way." (Docket No. 69 at 18-19). Defendants purported objective is to avoid liability and to cover up discrimination and retaliation "by rendering false and misinterpreted information to the court for dismissal." (Docket No. 69 at 19, 23). She further asserts

---

[48]

Plaintiff listed the "IDEA Act" in one of her counts against the Defendants. (Docket No. 69 at 12). The IDEA provides remedies for any matter relating to the identification, evaluation, or educational placement of a child, or the provision of a free appropriate public education to such child. 20 U.S.C. § 1415(b)(1)(E). Before bringing a claim under this Act, a complainant much exhaust the Act's administrative procedures. *See D.R. by M.R. v. East Brunswick Bd. of Educ.*, 838 F.Supp. 184, 188 (D.N.J. 1993). Additionally, while the Act does authorize a private right of action, a complainant must be "aggrieved" by the findings and decisions of an administrative process to bring a suit. 20 U.S.C. § 1415(I); *Mapp v. William Penn Sch. Dist.*, 2000 U.S. Dist. LEXIS 13475, at *7-8 (E.D. Pa. 2000). Here, Plaintiff has not alleged any facts in support of an IDEA claim. Rather, she simply listed the IDEA in one of her counts against the Defendants. (Docket No. 69 at 2, 12). Therefore, as Plaintiff has not shown that she was aggrieved by a finding or decision in the administrative process, her IDEA claim is dismissed.

that the conspiracy is also designed to "deprive her of her civil and constitutional property, liberty, and due process rights under the 14 Amendment [sic]." (Docket No. 69 at 27).

In the interest of clarity, the Court will address this *Poulis* factor individually as to each of Plaintiff's claims against the Pittsburgh Board, the Commonwealth Defendants, and Wilkinsburg.

### 1. The Pittsburgh Board

The Pittsburgh Board continues to maintain that it is impossible to assess the merit of Plaintiff's allegations due to the insufficiency of her pleadings, therefore, the Board cannot begin to defend against the same. (Docket No. 59 at 18; Docket No. 73 at 4-5). The Board also argues that Plaintiff's conduct suggests that she does not intend to plead her claims in compliance with the Federal Rules of Civil Procedure as her claims continue to be bald assertions and conclusions. (*Id.*; Docket No. 73 at 4). Further, the Board asserts that her extensive record of suing the Board, coupled with her lack of success, indicate that Plaintiff's motive is to harass rather than advance good faith claims. (*Id.*). Plaintiff's claims contain no specific allegations against the Board. (*Id.* at 19). Even after the ample opportunities Plaintiff has had to clarify her claims through briefing, testimony, and oral argument, the Board argues that she has failed to set forth a cognizable cause of action. (Docket No. 68 at 9-11; Docket No. 73 at 3).

It appears that the crux of Plaintiff's remaining claim against the Board is that the Board gave negative information about her to Wilkinsburg to further retaliate against her before and after she filed her PHRC charge in 2004. (Docket No. 62 at 22). Plaintiff specifically testified that her allegations against the Board consist of the following:

> THE COURT:   Back to my question about your claims against the City of
>
> Pittsburgh. No. 1, you are claiming that they, in effect, gave

bad references to Wilkinsburg.

THE PLAINTIFF:     Yes. In effect, what it did – and it was because I participated
in these various lawsuits, Title 7, an ADA lawsuit, a 1993,
and a Whistleblower Act, and various types of lawsuits
against them. Every time they filed papers with the Court
when I sued them, they have referred to the fact that the
reason why they did certain things was because I participated
in these activities.

(Docket No. 72 at 31: 25; 32:-9). Plaintiff also testified that Anthony Sanchez, acting for the Board,
made statements about her in front of others, denied her jobs for Wilkinsburg, and gave bad
references for her.[49] (Docket No. 72 at 32:13-25; 33: 9-18; Docket No. 69 at 7). She also testified
that the last time the Board gave a bad reference about her was in 2005 "or while [her PHRC charge]
was pending in the PA Human Relations Commission." (*Id.* at 35: 2-5, 21-25). She has also made
the statement that the Board gave an "exculpatory negative reference letter," written by Anthony
Sanchez to Wilkinsburg. (Docket No. 69 at 18). This Court will now assess the merits of Plaintiff's
conspiracy and retaliation claims against the Board, in turn.

i.     Conspiracy under Sections 1983 and 1985

To state a conspiracy claim in violation of § 1985, a plaintiff must allege "(1) a conspiracy;

---

[49] 
    The Court notes again that Anthony Sanchez has been dismissed with prejudice from this litigation, therefore,
any claims that Plaintiff continues to make against him will not be considered herein. Additionally, Plaintiff alleges that
Attorney Weiss, whom she claims is the Board's solicitor, and Anthony Sanchez acted together in retaliation against her
in giving bad references to Wilkinsburg. (Docket No. 72 at 34:7-14; Docket No. 69 at 7-8). She also claims that she
found out about Mr. Weiss's alleged participation in this conspiracy after this lawsuit was filed. (Docket No. 72 at 34:
6-9). However, as Plaintiff has not sought to join this individual as an additional party as required by Federal Rule of
Civil Procedure 15, the Court declines to consider her claims against him as an individual.

(2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protections of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to the person or property of the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997).  Similarly, under section 1983, "a plaintiff must prove that persons acting under color of state law conspired to deprive [her] of a federally protected right," although "a § 1983 conspiracy claim does not require that the conspiracy be motivated by invidious discrimination." *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 254 (3d Cir. 1999).  A plaintiff must allege sufficient facts to show an agreement or understanding among co-conspirators to "plot, plan, or conspire to carry out the alleged chain of events." *Pellegrino Food Prods. v. City of Warren*, 136 F. Supp. 2d 391, 409 (W.D. Pa. 2000) (quotation omitted).  There must be an agreement "to do an unlawful act by unlawful means or for an unlawful purpose." *Id.* (quotation omitted).

Here, Plaintiff has failed to support her allegations that the Board provided bad references to Wilkinsburg with any specific allegations of an agreement or understanding between the two Defendants to unlawfully discriminate against her.  Plaintiff expressly stated that she did not know of any adverse referrals or statements of the Board that were given to Wilkinsburg. (Docket No. 72 at 41:7-10). She stated that she did not know of any documents sent to Wilkinsburg by the Board related to her work for the purpose of sabotaging her opportunities to work in the Wilkinsburg School District.  (*Id.* at 41: 11-15; 42:4-8).  The basis for her conspiracy claim against the Board seems to be that when she listed the Board as a reference for her teaching experience, Wilkinsburg failed to promote her.  This suggests that the Court should infer a conspiracy based upon nothing more than conjecture. Such conclusory allegations of concerted action are insufficient to state a

conspiracy claim. *Pellegrino*, 136 F. Supp. 2d at 410. Furthermore, Plaintiff was instructed by this Court at the January 30, 2009 hearing to produce any written documents which would prove her claims against this Defendant. (Docket No. 72, *passim*). However, Plaintiff has <u>not</u> produced any document showing that the Board gave bad references to Wilkinsburg.

Plaintiff states that attorney Anthony Sanchez, previously dismissed from this case, was the root of the bad references given to Wilkinsburg. (*Id.* at 42:3, 9-24). Mr. Sanchez was retained by an insurance carrier as litigation counsel to represent the Board in certain legal proceedings and has never been an employee of the Board. (*Id.* at 30:1-6). Plaintiff alleges that it is improper for Mr. Sanchez to continually represent the Board against any complaint she files, either with the PHRC, the EEOC, or in a court of law. (Docket No. 69 at 7, 24). However, the attorney-client relationships between Mr. Sanchez and the Board cannot be used to support a conspiracy claim under sections 1983 and 1985. *See Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999)(finding the intracorporate conspiracy doctrine bans claims against attorneys based on conspiracies allegedly formed in the attorney-client context). Plaintiff seems to assert that the Board's insurance carrier should be forced to retain different counsel every time the Board is sued by Plaintiff. This is illogical, particularly considering the number of times the Board has had to defend against suits brought by Plaintiff.

Based on the foregoing, the Court finds that Plaintiff has failed to allege any facts regarding an agreement or understanding between any coconspirators and there is no reasonable expectation that evidence of such facts would be revealed through discovery. The Court of Appeals for the Third Circuit has made it clear in *Phillips* that "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must

give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Phillips*, 515 F.3d at 234 (citation omitted). Plaintiff has not provided the Court with such reason to believe that she will be able to demonstrate factual support for this claim. Accordingly, as the Court finds that this claim has no merit, the *Poulis* analysis weighs in favor of dismissing same.

ii.      Retaliation

Plaintiff also alleges that the Board violated Title VII by retaliating against her for engaging in prior protected activities, i.e her previous lawsuits against it. (Docket No. 69 at 12-13). Specifically, as described in more detail above, she claims that the Board gave her bad references to Wilkinsburg, which caused her to lose full time positions and other promotions. (*Id.* at 16-17).

In order to establish discriminatory retaliation under Title VII, a plaintiff must show that (1) she engaged in activity protected by Title VII; (2) an employer took adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201 (3d Cir. 1994), *cert. denied*, 130 L. Ed. 2d 503, 115 S.Ct. 590 (1994); *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995); *see also Moore*, 461 F.3d at 340-41. If an employee establishes a prima facie case of retaliation, the burden then shifts to the employer to advance a legitimate, non-retaliatory reason for its conduct. *Moore*, 461 F.3d at 342 (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997)); and *Hood v. Pfizer*, Civ. A. No. 08-1434, 2009 U.S. App. LEXIS 8062 (3d Cir. Apr.16, 2009).

The Board argues that Plaintiff cannot make a claim under Title VII against it because it is not her current employer. (Docket No. 73 at 7). However, the Court does not agree with this

contention. The United States Court of Appeals for the Third Circuit has held that a plaintiff has standing to bring a "retaliation action against a previous employer for retaliatory conduct occurring after the end of the employment relationship when the retaliatory act is in reprisal for a protected act within the meaning of section 704 and arises out of or is related to the employment relationship." *Nelson*, 51 F.3d at 387 (citing *Charlton*, 25 F.3d at 200). However, Plaintiff's Title VII retaliation claim fails because she has not alleged any facts establishing that the Board took adverse employment action against her. Therefore, she cannot show a causal connection between her participation in any activity protected by Title VII and an adverse employment action. To that end, as stated above, Plaintiff expressly stated that she does not know of any adverse referrals or statements made by the Board to Wilkinsburg, nor does she know of any Board employee who made such a reference about her, and further, she has never heard from anyone else that such adverse employment references were given. (Docket No. 72 at 41:7-10, 11-15; 42:4-8). Moreover, Plaintiff did obtain employment with Wilkinsburg after leaving the employ of the Board. (*See* Docket No. 54 at 5; Docket No. 62 at 3). Thus, the Court finds that Plaintiff's claim for retaliation against the Board has no merit as she has failed to set forth sufficient facts making her claim plausible and, therefore, the sixth *Poulis* factor weighs in favor of dismissal of this claim.

### iii. Other claims

Plaintiff has set forth various other counts against the named Defendants in her February 17, 2009 brief. (*See* Docket No. 69 at 2, 11-14). In addition to her claims against the Board for conspiracy and retaliation, Plaintiff has listed the Pittsburgh Board in Count V, alleging violation of the ADA and IDEA, and in Count VII, alleging violations of the Whistleblower Act. (Docket No. 69 at 12-13).

As to the Plaintiff's ADA claim, she has not set forth any facts that would tend to establish that the ADA applies to her or the Board. Even after taking into account Plaintiff's status as a *pro se* litigant, *see, e.g. Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007)(noting the rule that a *pro se* complaint must be held to less stringent standards and is to be liberally construed); *see also Taylor v. Diznoff*, 633 F.Supp. 640, 641 (W.D. Pa. 1986)("a judge may not become a surrogate attorney" for a *pro se* party), the Court finds that Plaintiff has failed to comply with the basic pleading requirements for this claim. Her complaint, proposed amended complaint, and explanation of her claims at the show cause hearing on January 30, 2009 all lack "short and plain statement[s]" of either the grounds for jurisdiction or of any "claim showing that [she] is entitled to relief." FED. R. CIV. P. 8(a).

As to her Whistleblower Act claim, Plaintiff states in footnote 4 of her February 16, 2009 brief that this claim "does not mean a suit under the [Act] per se, but a suit against retaliation for participating in a protected activity." (Docket No. 69 at 2 n.4). Based on this statement, it is clear that Plaintiff has not made a separate allegation against the Board apart from her retaliation claim, addressed above.

While courts must construe *pro se* complaints liberally, *Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004), Plaintiff's attempts to amend her allegations against the Board in an effort to comply with the Federal Rules of Civil Procedure have produced nothing more than bald assertions, unwarranted inferences, and sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ct. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). This Court has given Plaintiff ample opportunity both at the Show Cause hearing and in subsequent briefs to explain her claims against the Board. However, she has not set forth a cognizable cause of action

against this Defendant. Furthermore, Plaintiff's specific allegations are neither "simple, concise [nor] direct." FED. R. CIV. P. 8(e). To the contrary, Plaintiff's rambling pleadings and filings contain mostly unintelligible allegations against numerous Defendants. Even after examining Plaintiff's allegations in the form of an amended complaint, as contained in her brief (Docket No. 69) and her hearing testimony (Docket No. 72), this Court finds that Plaintiff has failed to sufficiently nudge her claims across the line from perceivable to plausible. *Twombley*, 550 U.S. at 570. The Court further finds that granting Plaintiff leave to file her amended complaint against the Pittsburgh Board would be futile. Accordingly, the sixth *Poulis* factor weighs heavily in favor of dismissing with prejudice any and all of Plaintiff's claims against the Board.

### 2. The Commonwealth Defendants

As previously stated, in response to Plaintiff's attempts to repeatedly reestablish certain claims, the Court dismissed all of Plaintiff's claims against the Commonwealth Defendants with prejudice[50] except those falling under Pennsylvania's Right to Know Act, 65 P.S. §§ 66.1, *et seq.*, which were dismissed without prejudice granting Plaintiff leave to amend those claims. (Docket No. 45). The Court will now address the merit of these remaining claims in relation to Plaintiff's specific allegations as outlined at the Show Cause hearing through her sworn testimony and in her briefing in response to this Court's Order to Show Cause.

Plaintiff claims that the Commonwealth Defendants violated her procedural and substantive

---

[50]

Plaintiff's sections 1983, 1985, 1986, and 1988 claims are barred by the doctrine of sovereign immunity and/or the Eleventh Amendment; her section 1984 claim was dismissed because that section does not exist; her section 1987 claim was dismissed because it only applies to "United States attorneys, marshal, and deputy marshals, and the United States magistrate judges appointed by the district and territorial courts;" her section 1988 claims were dismissed because she is not an attorney who can seek attorney's fees; her Freedom of Information Act claims were dismissed because that Act only applies to federal agencies; her Fifth Amendment claims were dismissed because said Amendment does not apply to state agencies or officials; and her Sixth Amendment claims were dismissed because this is not a criminal proceeding to which the Sixth Amendment would apply. (Docket No. 45 at 6-7).

due process rights when they refused to give her documents Wilkinsburg and the Board allegedly submitted to them "to justify discrimination against Plaintiff as a justifiable business decision." (Docket No. 61 at 12). Plaintiff claims that the Commonwealth Defendants refused to give her copies of data that proved Wilkinsburg "hired whites from other communities, with less qualifications, experience, and education than Plaintiff during 2003-2006." (Docket No. 69 at 8). Plaintiff asserts that "she has to plead with such outrageous specificities or she should get her complaint dismissed with prejudice...even with outrageous and egregious proof, she is being required to prove even the very thinking of the conspirators as if she were told by discriminators [sic]." (Docket No. 69 at 17).

The Commonwealth Defendants continue to maintain (Docket No. 72 at 53:1-8; Docket No. 36) that it is entirely unclear from Plaintiff's allegations the nature of the documents she supposedly sought from the PHRC. (Docket No. 36 at 11). They further argue that any record sought by Plaintiff detailing the investigation of her PHRC complaint would have fallen under the investigative records exception to the definition of "public record" contained in the Right to Know Act, specifically 43 P.S. § 959(a).[51] The documents allegedly sought by Plaintiff would have been part of the investigative case file as compiled as part of the PHRC's performance of its official investigative duties under the PHRA. *See* 43 P.S. § 959(b)(1)(requiring the PHRC to "make a prompt investigation" whenever a complaint is filed).[52] Therefore, the Commonwealth Defendants

---

[51]

In the Act, "public record" is defined as a record, including financial, of a Commonwealth or local agency that (1) is not exempt under section 708; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by privilege. 65 P.S. § 67.102.

[52]

The PHRC's investigative powers and duties are further enumerated in 43 P.S. §§ 957(f)-(g) and 959(a) and (b) of the PHRA and in PHRC's Special Rules of Administrative Practice and Procedure found at 16 Pa. Code §§ 42.01, *et seq.*

argue, the documents sought would fall outside the definition of a "public record." (Docket No. 36 at 11-12).

The intent of the Right to Know Act, which applies to all Pennsylvania agencies, is to allow individuals and entities access to public records to discover information about the workings of government, which tends to favor transparency and public access regarding any expenditure of public funds. 65 P.S. §§ 66.1, *et seq.*; 65 P.S. § 67.501(2008). However, the scope of a person's access to public records does not include access to documents reflecting the "internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency." 65 P.S. § 67.708(a)(10). The scope of access also does not include the record of an agency relating to a noncriminal investigation, including, *inter alia*: (1) complaints submitted to an agency; (2) investigative materials, notes, correspondence and reports; (3) a record that includes the identity of a confidential source; (4) a record that, if disclosed, would reveal the institution, progress or result of an agency investigation, deprive a person of the right to an impartial adjudication, or hinder an agency's ability to secure an administrative or civil sanction. 65 P.S. § 67.708(a)(17).

As Plaintiff seeks to obtain documents pertaining to the investigation of her complaint before the PHRC, it is clear that the scope of the Right to Know Act does not provide her with such a right to said documents. Pennsylvania law clearly states that access to public records does not include records pertaining to noncriminal investigations concerning a complaint submitted to a state agency.[53] 65 P.S. § 67.708(a)(17)(I). Plaintiff was specifically ordered by this Court to provide

---

[53]

Also, the Court notes that Plaintiff can obtain the documents she wants through the depositions of individual PHRC and/or EEOC employees and subpoenas without having the Commonwealth Defendants named as parties to this

"sufficient detail as to what documents or information trigger a violation of the Right to Know Act" and to "identify the documents she seeks so this Court may determine whether they fall within the exception argued by the Commonwealth Defendants." (Docket No. 45 at 6). However, Plaintiff has neglected to elaborate further on this claim against the Commonwealth Defendants, and as such, this claim remains insufficiently pled. The Court finds that Plaintiff's claims against the Commonwealth Defendants lack merit. Therefore, the sixth *Poulis* factor weighs in favor of dismissing with prejudice Plaintiff's claim against the Commonwealth Defendants under the Right to Know Act.

### 3. *Wilkinsburg*

During the hearing held on January 30, 2009, Plaintiff presented testimony in an effort to clarify some of her claims against Wilkinsburg. (*See* Docket No. 72 at 46-52). These claims center around her allegation that Wilkinsburg did not hire her for certain full time positions in the fall of 2004 and then terminated her employment as a homebound teacher sometime in the fall of 2005. As described in more detail above, Plaintiff claims that Wilkinsburg discriminated against her on the basis of race in violation of Title VII, on the basis of her age, in violation of the ADEA, in retaliation for her opposition to alleged discriminatory conduct, and on the basis of a disability in violation of the ADA.[54] (Docket No. 69 at 28-30). Plaintiff also claims that Wilkinsburg discriminatorily retaliated against her after she filed a charge with the PHRC in the fall of 2004 by terminating her position as a homebound teacher in 2005. (*Id.* at 39-30). Additionally, Plaintiff

---

action.

[54] Plaintiff also included in one of her counts against Wilkinsburg a claim for retaliation under the IDEA. (Docket No. 69 at 12). See note 49, pg. 48, *supra*, as to the Court's decision on same.

alleges that Wilkinsburg conspired with the Commonwealth Defendants and the Board to further retaliate against her. (*Id.* at 12-13).[55]

Wilkinsburg continues to maintain that Plaintiff's claims are without merit as they are so vague and lacking in detail that they fail to meet even the less stringent pleading standards required of *pro se* litigants. (Docket No. 60 at 11). As detailed below, Wilkinsburg further argues that certain of Plaintiff's claims are time barred and/or that she has not exhausted her administrative remedies. (Docket No. 74 at 2-7). In the interest of clarity, the Court will address each of Plaintiff's claims against Wilkinsburg as they relate to the alleged failure to promote her in 2004 and her termination in 2005.

i.     Alleged Failure to Promote in 2004

At the outset, the Court notes that Plaintiff relies solely on her 2004 PHRC charge in bringing this lawsuit. However, Plaintiff's reliance on the same in support of her timeliness arguments related to her federal claims under anti-discrimination laws is completely misplaced. Plaintiff filed a PHRC charge on November 11, 2004, which included her claim for refusal to promote based on multiple claims of class discrimination under Title VII and retaliation for opposing alleged discriminatory conduct. (Docket No. 70-2 at 2-7). In her charge, she states that she was hired on or about November of 2003 as a substitute teacher, and since December 17, 2003, she had applied for various permanent and available summer positions with Wilkinsburg. (*Id.* at 2). In

---

[55]       The Court dismissed with prejudice any and all of Plaintiff's claims under section 1983 and 1985 occurring on or before November 6, 2005 as being time barred. (Docket No. 44 at 4). Plaintiff was granted leave to amend her claims under 1983 and 1985 occurring after November 6, 2005, Title VII and ADA, Pennsylvania's Whistleblower Act, and the Right to Know Act. However, in her briefs regarding the *Poulis* factors and at the Show Cause hearing, Plaintiff appears to only be pursuing her claims under section 1983 and 1985, Title VII, ADA, ADEA and retaliation under the Pennsylvania's Whistleblower Act. Accordingly, the Court will only consider these claims.

June of 2004 and again in August of 2004, Plaintiff questioned Wilkinsburg's refusal to promote her to a full time position and asked if it was due to her race. (*Id.*). She listed her protected classes as race, age, and a record of disability, namely, stress related depression. (*Id.* at 2-3).

The PHRC notified Plaintiff on or about November 1, 2006 that her complaint was being dismissed. (Docket No. 46-2; Docket No. 70-3). Wilkinsburg argues that inasmuch as Plaintiff failed to bring her present lawsuit within ninety (90) days of her right to sue letter, her claims are time barred. (Docket No. 70 at 3).

Plaintiff has stated that she also received a right to sue letter from the EEOC. (Docket No. 62 at 9). However, there are no additional averments in any of Plaintiff's filings that the EEOC had closed its investigation or issued a right to sue letter. Nor has she has provided a full copy of her EEOC right to sue letter; rather, she has only submitted what appears to be the last page. (Docket No. 40-7). Instead, she argues that she was "given from 2006-2008 to file a lawsuit" because the PHRC letter said she had two years to file a lawsuit, and therefore, she claims she timely filed in November of 2007.[56] (Docket No. 69 at 4, 14). She further argues that "since the PAHRC[sic]/EEOC is a prerequisite to filing a charge in federal court, that the administrative

---

[56]

Plaintiff has not clearly set forth an argument that the statute of limitations for her claim of failure to promote against Wilkinsburg should be equitably tolled. She does argue that "the administrative proceeding therefore tolled the statute of limitation as in case, *Laverne Richey v. George Mason University*, 842 F.2d 1292 (4th Cir. 1988)." (Docket No. 69 at 14-15). Other than this statement, Plaintiff does not provide any legal basis that the limitation period for filing in this Court should be tolled. Furthermore, the *Richey* case does not stand for the proposition for which she has cited it.

Equitable tolling serves to stop the statute of limitations from running where the claim's accrual date has already passed. *Oshiver v. Levin*, 38 F.3d 1380, 1387 (3d Cir. 1994). It is only appropriate where a claimant has been actively mislead by a defendant as to the claim, where a claimant has been prevented from asserting her claim as a result of extraordinary circumstances, or where a claimant timely asserts a claim but in the wrong forum. *Lake v. Arnold*, 232 F.3d 360, 370 n.9 (3d Cir. 2000). Based upon the record before the Court, the Court is unable to determine whether the statute of limitations for Plaintiff's claim against Wilkinsburg for alleged failure to promote should be equitably tolled, as Plaintiff has not put before this Court any facts to meet the standard for same.

proceeding therefore tolled the statue of limitations." (Docket No. 69 at 14-15). Specifically, she

argues that under the Lilly Ledbetter Fair Pay Act of 2009,[57] because the Defendants discriminated

and retaliated against her after the filing of the PHRC charge and while it was pending up to 2006,

she has a right to file another charge of retaliation "since the EEOC/PAHRC [sic] refused to allow

her to tack it on." (Docket No. 69 at 15).

Under Title VII and the PHRA, a plaintiff must file a complaint with the EEOC within 180

days of the alleged discrimination or  within 300 days if the person initially instituted proceedings

with the PHRC.[58]  42 U.S.C. § 2000e-5(e); *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 480

(3d Cir. 1997).[59]  The EEOC or the PHRC will then serve notice of the charge on the employer and

investigate the claim. 42 U.S.C. § 2000e-5(e)(1). Once a claimant has received a right to sue letter

from the EEOC, he or she has ninety (90) days in which to file a complaint in federal court. 42

U.S.C. § 2000e-5(f)(1).  The ninety day period to file in federal court "does not begin to run unless

and until there is 'final agency action.'" *Burgh*, 251 F.3d at 470-7. The filing of an administrative

charge and receiving a right to sue letter, although not a jurisdictional prerequisite, is a statutory

prerequisite to commencing a civil action. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385,

393 (1982); *McNasby v. Crown Cork & Seal Co., Inc.*, 888 F.2d 270, 282 (3d Cir. 1989).  Under

---

[57]

     *See* Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (amending 42 U.S.C. § 2000e-5(3)), which applies to all cases pending on or after May 28, 2007.

[58]

     Both the ADEA and the ADA have adopted the enforcement scheme and remedies found in Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq. See* 29 US.C. § 626(d); and 42 U.S.C. § 12117(a). Therefore, the Court will address these substantive claims together as to the issue of whether Plaintiff has exhausted her administrative remedies.

[59]

     Under the PHRA, a plaintiff must file with the PHRC within 180 days of the discriminatory conduct. 43 Pa. C.S.A. § 959(h).

the PHRA, a claimant has two (2) years after receipt of a right to sue letter from the PHRC and notification that the PHRC has closed the case to file a complaint in the Courts of Common Pleas of the Commonwealth. 43 P.S. § 962(c)(1). The onset of these periods is generally considered to be the date on which the letter is received by the complainant. *Burgh v. Borough Council of the Borough of Montrose*, 251 F.3d 464, 470 (3d Cir. 2001)(citation omitted).

Right to sue letters issued by the PHRC do not constitute final agency action by the EEOC as they include no mention of making claims under federal law or filing in federal court, and say nothing about the ninety day period in which to file suit in federal court. *Albright v. City of Philadelphia*, 399 F.Supp.2d 575, 583 n. 13 (E.D.Pa. 2005)(citing *Gokay v. Pennridge Sch. Dist.*, Civ. A. No. 02-8482, 2003 U.S. Dist. LEXIS 3201 (E.D. Pa. 2003)("We are aware of no case in this circuit holding that the closure of a state law administrative case by a state agency triggers the federal Title VII limitations period."). Other circuit and district courts have held that only a right to sue letter or its equivalent from the EEOC can trigger the ninety day federal filing period. *Vielma v. Eureka*, 218 F.3d 458, 466-68 (5th Cir. 2000)(collecting cases). Furthermore, 42 U.S.C. § 2000e-5(f)(1) clearly states that the ninety day period is triggered by a "right to sue letter" from the EEOC, and such letter "appears to be the exclusive mechanism for commencing the federal filing period." *Vielma*, 218 F.3d at 466. Therefore, a PHRC letter does not institute the running of the ninety day federal filing period.

Here, it is not clear if Plaintiff received a right to sue letter from the EEOC or when she received it. Because the receipt of an EEOC letter may only start the running of the ninety day period within which to file in federal court, Plaintiff's PHRC letter had no effect on the same.

Although Plaintiff is correct that her PHRC letter states that she has 2 years to file a lawsuit,[60] Plaintiff appears to have misread said letter, as it also clearly states that she has the right, upon dismissal of her case in the PHRC, "to file a complaint in the *courts of common pleas of the Commonwealth*...If you wish to file a complaint in the *court of common pleas*, the complaint must be filed within two **(2)** years after the date of the notice from the commission closing the complaint." (Docket No. 70-3 at 2; Docket No. 46-2 at 1)(emphasis added, bold in original).

Furthermore, Plaintiff also appears to misunderstand the application of the Lily Ledbetter Fair Pay Act of 2006. This Act reversed the effect of the United States Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618 (2007), which disallowed each paycheck to constitute a new discriminatory violation. The effective date of the Act was January 29, 2009. It is retroactive to cases pending on or after May 28, 2007. Here, Plaintiff does not benefit from the Act as Wilkinsburg allegedly stopped paying her in 2005. (Docket No. 72 at 39: 14-15).

Accordingly, because the record is unclear, the Court will permit Plaintiff leave to amend her claims for failure to promote in 2004 under Title VII, the ADA, the ADEA, and for retaliation. If Plaintiff wishes to pursue said claims, she shall provide the Court with her entire EEOC charge and her EEOC right to sue letter as attachments to her Amended Complaint. Additionally, she shall set forth more fully and in detail specific facts as to Wilkinsburg's alleged violations of these anti-discrimination laws in compliance with the federal pleading standards spelled out in *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) and the Third Circuit's interpretation of that case in *Phillips v. County of Allegheny*, 515 F.3d 224, 230-35 (3d Cir. 2008); *see also Moore v. City of*

---

[60] In her original Complaint, Plaintiff avers that she dual filed in the Court of Common Pleas of Allegheny County and this Court. (Docket No. 3 at 4, ¶13). However, a review of the docket in the Court of Common Pleas of Allegheny County reveals that no such action was filed there.

*Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006)(laying out the requirements to establish a prima facie case under Title VII).

ii.      Plaintiff's Termination in 2005

Plaintiff also alleges that Wilkinsburg retaliated against her based on her filing of a PHRC complaint in 2004 by firing her from her homebound position in 2005. As discussed above, before filing a Title VII suit, an employee must file a complaint with the EEOC to attempt to resolve the dispute before bringing litigation. *See Atkinson v. LaFayatte* College, 460 F.3d 447, 453 (3d Cir. 2006); and *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984). A retaliation charge will be considered to be "fairly within the scope of a prior EEOC charge" if the conduct is related and continues. *Waiters*, 729 F.2d at 237. The test of whether a plaintiff is required to exhaust her administrative remedies is "whether the acts alleged in [a] subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Id.*; *see also Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996). A court must carefully examine the prior charge and the unexhausted claim before determining that a second charge need not be filed. *Robinson v. Dalton*, 107 F.3d 1018, 1024 (3d Cir. 1997).

Wilkinsburg argues that Plaintiff's retaliation claims relating to her discharge in 2005 are time barred because she has not exhausted her administrative remedies. (Docket No. 70 at 3). Specifically, her 2004 PHRC charge did not include a claim based on retaliation and her allegations relating to her discharge in 2005 are far beyond those raised with the PHRC in 2004. (*Id.* at 5).

Plaintiff has not alleged nor has she provided any documentary evidence that she exhausted her administrative remedies with respect to her unlawful discharge claim. Nor has she alleged that her firing in 2005 is part of related and continued retaliation on the part of Wilkinsburg. The scope

of her 2004 PHRC charge appears to only pertain to the treatment she allegedly received in 2004, as opposed to the treatment she allegedly received a year later in 2005. Based on the record, the Court is unable to determine whether Plaintiff is claiming a continuing violation related to her 2004 PHRC charge. Additionally, it cannot be said with certainty that amendment would be inequitable or futile. *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)(providing that in the event that a complaint fails to state a claim, a district court should allow amendment unless to do so would be futile). Therefore, the Court will grant Plaintiff leave to amend her complaint to set forth whether she has exhausted her administrative remedies as to her claim for alleged discriminatory termination in the fall of 2005 or whether this claim is fairly within the scope of her first administrative charge.[61] Once again, the Court urges Plaintiff to produce any documentation supporting her position as attachments to her Amended Complaint. Additionally, Plaintiff shall re-plead this claim with the requisite specificity required by current federal pleading standards.

iii.      Plaintiff's Claim under the Whistleblower Law

As discussed above, Plaintiff stated in her February 17, 2009 brief that she is not bringing a suit under the Whistleblower Act per se, but a suit for retaliation for participating in that protected activity. (Docket No. 69 at 2 n.4). Wilkinsburg continues to argue that Plaintiff has failed to plead a prima facie case. (Docket No. 74 at 2-3). For the reasons discussed below, the Court agrees.

Pennsylvania's Whistleblower Law, 43 P.S. § 1423(a), provides:

> An employee alleging a violation of this act must show by a preponderance of the evidence that, prior to the alleged reprisal, the

---

[61]

To the extent that Wilkinsburg argues that it had a legitimate non-discriminatory reason for no longer employing Plaintiff in the homebound instruction position (Docket No. 70 at 6), it may raise this defense again by way of Motion or Answer after Plaintiff has amended her Complaint.

employee or a person acting on behalf of the employee had reported
or was about to report in good faith, verbally or in writing, an instance
of wrongdoing or waste to the employer or an appropriate authority.

43 P.S. § 1423(a). The plain intent of this law is to encourage employees to report genuine

instances of waste and wrongdoing by their State government employers,[62] free from the fear of

retaliation. *Rodgers v. Pennsylvania Dep't. of Corr.*, 659 A.2d 63 (Pa. Cmwlth. 1995). A plaintiff

must prove a causal connection between the report of wrongdoing and the retaliatory act.

*Golaschevsky v. Comm.*, 683 A.2d 1299, 1304 (Pa. Cmwlth. 1996). To that end, a plaintiff must

set forth specific facts of a causal connection. *Id.* A court cannot simply infer such a connection

based on the passage of time. *Id.* If it were allowed to do so, such a minimal pleading requirement

would cause virtually any government employee who files a report, founded or not, "[to]

automatically make out a prima facie case," based on a termination, even without evidence that the

events were related. *Id.*

As to this claim, Plaintiff's sole averment is that Wilkinsburg terminated her employment

because of her "prior protected activities." (Docket No. 69, *passim*). Specifically, she claims that

based on her writings[63] to Wilkinsburg in the fall of 2004, which questioned Wilkinsburg about its

hiring decisions, specifically if they were based on race, age or disability, Wilkinsburg did not hire

her to a full time position in 2004 and then fired her in 2005. (Docket No. 70-2 at 2). Based on this

statement, the Court finds that Plaintiff has not sufficiently pled a causal connection between her

---

[62]

The law provides that employers include a county, city, township, regional governing body, council, school
district, special district or municipal corporation. 43 P.S. § 1422. Thus, Wilkinsburg School District is an entity that is
within the purview of this law.

[63]

In all of her filings, Plaintiff has failed to identify any individual employee to whom she wrote or about what
specifically she wrote.

alleged reports and her termination. She has not alleged that any individual employee of Wilkinsburg threatened to fire her or impose other adverse consequences because of her reports, nor has she established any other concrete fact to connect the alleged reports with her dismissal. Therefore, the Court finds that Plaintiff has failed to plead sufficient facts to establish a prima facie case of retaliation on the basis of the Whistleblower Act. However, as she is a *pro se* litigant, the Court will grant Plaintiff leave to amend her complaint as to this claim. If Plaintiff wishes to continue to pursue this claim, she shall plead with specificity to whom she wrote, about what she wrote, and the causal connection between the alleged reports and her dismissal. Further, to the extent that Plaintiff has retained copies of any such correspondence, she shall make same attachments to her Amended Complaint.

iv.     Plaintiff's Conspiracy Claim under Sections 1983 and 1985

As Plaintiff has included Wilkinsburg in all of her claims against the Defendants for a purported conspiracy under 42 U.S.C. §§ 1983 and 1985, the Court now turns to the merits of the same in relation to Wilkinsburg.

Section 1985 is directed to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" and does cover certain conspiracies by private parties. *See Griffin v. Breckenridge*, 403 U.S. 88, 102, 104-05 (1971). However, for the same reasons which pertain to the Commonwealth Defendants and the Board,[64] the Court does not find that Plaintiff has sufficiently plead a claim for a conspiracy among the Defendants.[65]

---

[64]

See discussion *supra*, at pgs. 47-57.

[65]

A claim under section 1986 cannot be maintained unless a cause of action has been established under section 1985, *see Rogin v. Bensalem Twp.*, 616 F.2d 680 (3d Cir. 1980), *cert. denied*, 450 U.S. 1029 (1981). Therefore, any

66

## IX.    Conclusion

In balancing the *Poulis* factors, the Court remains mindful that "not all of these factors need be met for [it] to find dismissal is warranted." *United States v. $8,221,877,16 in United States Currency*, 330 F.3d 141, 162 (3d Cir. 2003)(quoting *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988)).  While "no single *Poulis* factor is dispositive," *Ware*, 322 F.3d at 222, the Court of Appeals for the Third Circuit has made it clear that "not all of the *Poulis* factors need be satisfied." *Mindek*, 964 F.2d at 1373.

Here, the only *Poulis* factor clearly weighing in favor of Plaintiff is that she has not been dilatory throughout the history of this case.  With that in mind, the Court finds that the *Poulis* factors for punitive dismissal based upon a failure to prosecute weigh heavily in favor of dismissing Plaintiff's claims against the Commonwealth Defendants and the Board.  Hence, the Board and the Commonwealth Defendants are dismissed, with prejudice. As to Wilkinsburg, because the record is not entirely clear regarding the timeliness and merit of certain of Plaintiff's claims against this Defendant, the Court will grant Plaintiff leave to amend her claims against Wilkinsburg, as delineated above.  However, the Court finds that the *Poulis* factors weigh in favor of dismissing any and all of Plaintiff's claims against Wilkinsburg under 42 U.S.C. §§ 1983 and 1985.

Accordingly, if Plaintiff wishes to pursue her claims under Title VII, the ADA, the ADEA and for retaliation against the remaining Defendant, Wilkinsburg for its alleged failure to promote her to a full time position in 2004, Plaintiff shall amend her complaint to set forth more fully whether said claim was timely filed in this Court. Specifically, Plaintiff shall file an Amended

---

allegations Plaintiff makes that could be construed as a claim under section 1986 also fail.

Complaint detailing her EEOC charge and attach thereto a full and complete copy of the EEOC right to sue letter. As to Plaintiff's claim for unlawful discharge in 2005 against Wilkinsburg, she shall amend her complaint to set forth whether she has exhausted her administrative remedies. Additionally, Plaintiff shall re-plead these claims, along with her claim for retaliation for participating in activities protected by Pennsylvania's Whistleblower law, with the requisite specificity required by *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) and the United States Court of Appeals for the Third Circuit's interpretation of that case in *Phillips v. County of Allegheny*, 515 F.3d 224, 230-35 (3d Cir. 2008). An appropriate order follows.

s/Nora Barry Fischer
Nora Barry Fischer
United States District Judge

Dated:       May 29, 2009
cc/ecf:      Counsel of Record
             Jacqueline B. N'Jai
             P.O. Box 10133
             Pittsburgh, PA 15232