## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACQUELINE B. N'JAI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 07-1506 |
| | ) | Judge Nora Barry Fischer |
| MR. HOMER C. FLOYD, et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM OPINION

**I.    Introduction**

This matter comes before the Court on a Motion to Dismiss (Docket No. 94) *pro se* Plaintiff Jacqueline B. N'Jai's Amended Complaint (Docket No. 86) pursuant to Rule 12(b)(6) by Defendants Wilkinsburg School District ("Wilkinsburg"), Joseph Tindal, Sue Goodwin, Lynn Black, Robert Schneider, Shawn Davis, Randy Davis, Laura Mannella, Cynthia Fligger, and Denise Warhola ("Individual Defendants," collectively with Wilkinsburg, "Defendants").  Plaintiff seeks recovery from Wilkinsburg and the Individual Defendants for various employment discrimination claims based on Wilkinsburg's alleged wrongful failure to promote her in 2004 and for her termination in 2005.  The Individual Defendants have moved for dismissal of Plaintiffs' claims on the basis that they have not been served, and alternatively, her claims fail as a matter of law. Wilkinsburg moves for dismissal on the basis that Plaintiff has not complied with the statutory requirements for her discrimination claims. The Court finds that these arguments are meritorious and also finds that Plaintiff's section 1981 and federal constitutional claims are time-barred. Therefore, Defendants' Motion to Dismiss is GRANTED.

**II.    Background**

The factual background and procedural history of the instant matter are discussed in greater

detail in the Court's prior Memorandum Opinion filed on May 29, 2009 addressing Plaintiff's case

in light of the factors as set forth in *Poulis v. State Farm Fire & Cas.*, 747 F.2d 863 (3d Cir. 1984).

(Docket No. 79); *see also N'Jai v. Floyd*, Civ. A. No. 07-1506, 2009 U.S. Dist. LEXIS 45130 (W.D.

Pa. May 29, 2009). By the Court's Order filed simultaneously with said Memorandum Opinion,

Plaintiff's claims against all named Defendants and her 42 U.S.C. §§ 1983 and 1985 claims against

Wilkinsburg were dismissed with prejudice. (Docket No. 80). Plaintiff was ordered by the Court to

re-plead her claims against Wilkinsburg under Title VII, the ADA, the ADEA and for retaliation by

June 19, 2009. (*Id.*). Plaintiff was also specifically directed to do the following: to set forth more

fully whether her 2004 failure to promote claim was timely filed within 90 days of receipt of her

EEOC right to sue letter; to file a full and complete copy of said letter; and to set forth whether she

exhausted her administrative remedies for her 2005 unlawful discharge claim.[1] (*Id.*). She was further

ordered to re-state her claim under Pennsylvania's Whistleblower Law, 43 P.S. §§ 1421, *et seq.* (*Id.*).

Plaintiff filed her Amended Complaint on June 30, 2009, attaching an appendix of exhibits

totaling 147 pages.[2] (Docket No. 86, 86-1, 87-1 - 87-4). In addition to restating her claims against

---

[1]

As discussed in more detail *infra*, in contravention of this Order, Plaintiff did not file her EEOC letter with her Amended Complaint, did not plead when she received it, nor did she provide a copy of the PHRC's findings in her case. In fact, Plaintiff has a history of failing to comply with this Court's Orders, despite being repeatedly advised of the consequences of Federal Rule of Civil Procedure 41. (*See* Docket No. 79 at 23, 38-43). Specifically, she has violated the following Orders: (1) to timely file an amended pleading by April 3, 2008 (Docket No. 46); (2) to file pleadings directly through the Clerk of Courts, only (Docket No. 79 at 22, 30); (3) to properly serve all Defendants with each of her pleadings (Docket No. 79 at 33; Docket Nos. 67 and 85); and (4) to comply with this Court's policies and procedures and the Local Rules by failing to file her documents through the Clerk's office, attempting to email her filings directly to the Court, and failing to submit proposed orders with her motions. (Docket No. 79 at 22, 30-32,41-43; Docket No. 82).

[2]

Plaintiff filed a "Motion for Extension of Time" on June 10, 2009 (Docket No. 81), which also included a "Motion for a Right to Appeals the Court's Piecemeal Decision to Dismiss Some Defendants and Some Claims Upon the Filing of Plaintiff's Amended Complaint and if the Court Dismisses the Amended Complaint." Both motions were denied on June 11, 2009 for Plaintiff's failure to included proposed orders pursuant to W.D. Pa. L.R. 7.1(B). (Docket No. 82). Plaintiff was directed to re-file her motions with the appropriate proposed orders as exhibits, which she did on June 15, 2009. (*Id.*; Docket No. 83). On June 16, 2009, the Court granted Plaintiff's motion for an extension of time, making her Amended Complaint due by June 30, 2009, and ordered Defendants to respond to Plaintiff's "Motion for a Right to Reserve Defendants and Issues Dismissed With Prejudice for Appeal" (Docket No. 83) on or before July 15,

Wilkinsburg,[3] Plaintiff names the following individuals as Defendants for the first time: Joseph Tindal, Lynn Black, Robert Schneider, Shawn Davis, Randy Davis, Laura Mannella, Cynthia Fligger, and Denise Warhola.[4] (Docket No. 80 at 1).

The Amended Complaint contains the following eight claims: (1) racial discrimination under Title VII (Count I); (2) retaliation in violation of Title VII (Count II); (3) racial discrimination in violation of 42 U.S.C. § 1981[5] (Count III); (4) discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA")(Count IV); (5) discrimination in violation of the Age Discrimination in Employment Act ("ADEA")(Count V); (6) retaliation in violation of the ADEA (Count VI); (7) retaliation for participating in activities protected under Pennsylvania's Whistleblower Law, 43 P.S. §§ 1421, *et seq.*(Count VII); and (8) violations of Plaintiff's First and Fourteenth Amendment due process and equal protection rights[6] "and/or Amend to Add Federal

---

2009. (Docket No. 84). Upon consideration of Defendants' responses filed on July 13 and 15, 2009 (Docket Nos. 88, 89, and 90), the Court denied Plaintiff's motion regarding an appeal on July 15, 2009. (Docket No. 91).

[3]

To that extent that Plaintiff continues to make allegations against Anthony Sanchez, Esquire and the law firm of Andrews & Price in her Amended Complaint, the Court will not consider the same as these parties were dismissed with prejudice on March 3, 2008. (Docket No. 42).

[4]

Between 2003 and 2005, these individuals were all at one time employees of the Wilkinsburg School District. Plaintiff also names Sue Goodwin, who was the only Individual Defendant initially sued. (Docket No. 3). However, as previously noted by the Court (Docket No. 79 at 2, n.4), Sue Goodwin was never served with Plaintiff's original Complaint.

[5]

For the reasons stated *infra* at Section V(C), this claim will be dismissed as time-barred.

[6]

Plaintiff's First, Fifth, and Fourteenth Amendment claims brought under section 1983 against Wilkinsburg in her initial Complaint (Docket No. 3 at 8-9) were dismissed with prejudice by the Court on March 5, 2008 for untimeliness. (Docket No. 44 at 3). No motion for reconsideration or appeal from this Order was brought. For the reasons discussed *infra* at Section V(A) and (D), to the extent Plaintiff now raises these claims against the Individual Defendants and re-states them against Wilkinsburg, the Court finds that they are time-barred.

3

Tort Claims Act Pursuant to 28 U.S.C. §§ 2677 E.E.O.C" (Count IX).(Docket Nos. 86 and 86-1).[7]

For all of her claims, Plaintiff requests compensatory, punitive, and injunctive relief, as well as back

pay and front pay. (Docket No. 86). In addition, at Count IX, Plaintiff requests declaratory relief

against Wilkinsburg. (Docket No. 86-2 at 10).

In support of her claims, Plaintiff alleges that Wilkinsburg wrongfully refused to hire her for

certain full time teaching positions in the fall of 2004, when she was working as a homebound

teacher, and then terminated her employment sometime in the fall of 2005. (Docket No. 86 at 8-9).

Plaintiff also avers that Wilkinsburg and various of its employees discriminated against her on the

basis of her race (African-American), her age,[8] her perceived disability[9] and in retaliation for her

opposition to prior discriminatory conduct.  (Docket No. 86, *passim*).  In furtherance of her 2005

unlawful discharge claim, Plaintiff contends that Wilkinsburg retaliated against her after she filed

---

[7]

    While not listed in a separate count in her Amended Complaint, Plaintiff continues to make averments that she was retaliated against by Wilkinsburg for participating in "IDEA activities" on behalf a disabled student. (Docket No. 86 at 7, 28, 29). She claims that she "could not get an IEP meeting because" Wilkinsburg did not want to meet with her "5/26/04-8/25/05," thereby denying her "IDEA accommodations." (*Id.* at 30, 47).  While Plaintiff may have standing to sue for IDEA violations on behalf of the disabled student, *see Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 812 (9th Cir. 2009), and *New Directions Treatment Servs. v. Doe*, 490 F.3d 293 (3d Cir. 2007), her IDEA claims were dismissed by this Court on May 29, 2009 because she failed to exhaust the IDEA's administrative procedures, she did not allege any facts in support of an IDEA claim, nor did she demonstrate that she was aggrieved by a finding in the administrative process. (Docket No. 79 at 46, n.48); *D.R. by M.R. v. East Brunswick Bd. of Educ.*, 838 F.Supp. 184, 188 (D.N.J. 1993).  To the extent Plaintiff continues to claim that she suffered retaliation for allegedly asserting her student's IDEA rights, her claim fails because she has not alleged or shown that she satisfied the IDEA's exhaustion requirements. *Rose v. Yeaw*, 214 F.3d 206 (1st Cir. 2000).

[8]

    Plaintiff states that she "was 49-50 years of age at the time [sic] the discrimination charge was filed with the EEOC/PAHRC [sic]." (Docket No. 86 at 36). She claims that Sean Davis, "in his twenties or early thirties," and Joseph Vrbanic, "in his late thirties or early forties," as well as other younger individuals, were hired for teaching positions over Plaintiff. (Docket No. 86 at 37-39).

[9]

    In support of her ADA claim, Plaintiff asserts that Defendants "[p]ublicly call[ed] [her] 'CRAZY' for her participation in Title VII, ADA, and other anti-discrimination protected activities." (Docket No. 86 at 27). Additionally, she contends that Anthony Sanchez called her "crazy" in front of Wilkinsburg employees and a parent at an IEP meeting held in August 2004. (*Id.* at 28). These statements, she avers, caused her to lose teaching positions and caused damage to her professional reputation. (*Id.* at 28-29).

a charge with the PHRC in the fall of 2004.  (Docket No. 86 at 9).

With regard to the Individual Defendants, Plaintiff alleges that she was discriminated against after she complained of discriminatory conduct to Sue Goodwin, Human Relations Director, and Joseph Tindal, Superintendent, whom she avers "was not certified or qualified to be a superintendent."(Docket No. 86 at 4, 14).  Specifically, she states that she reported to them the "racist actions of the Wilkinsburg School District's hiring and promotion practices of mostly younger whites in permanent positions, and substitutes, and when fellow teachers were stating slurs, and acting racist." (Docket No. 86 at 4, 14).  Further, Plaintiff contends that Sue Goodwin and Joseph Tindal "along with" Anthony Sanchez[10] "committ[ed] outright discrimination." (Docket No. 86 at 15).  Robert Schneider, a special education teacher "who was acting principal, without any elementary principal certification" (Docket No. 86 at 4), purportedly made racist comments to Plaintiff after she pointed out instances of his discriminatory conduct. (Docket No. 86 at 18-19). Randy Davis "was also acting like the union representative for whites. He was openly racist and expressed his dissatisfaction for Dr. Turner (black) and Tindal being over him." (*Id.* at 4).

Plaintiff avers that Sean Davis is a "non certified substitute who told Plaintiff, Schneider, and Dr. Turner at a meeting that he could not pass the required test for certification." (Docket No. 86 at 4). Plaintiff complains that he, as well as another individual named Joseph Vrbanic who is not named as a party, were hired over her despite their lack of teaching certifications because they are white and younger. (*Id.* at 18, 19, 23, 31). Through August 31, 2004, she reported these same complaints to Joseph Tindal and Sue Goodwin by email and also informed them of her filing with the PHRC.

---

[10]

See note 3, *supra.*

(Docket No. 86 at 20-21, 24).[11]  Plaintiff avers that Laura Mannella, Cynthia Fligger, and Denise Warhola "were classroom teachers in regular and special education classrooms" and that "they participated in the racist hostile environment against Plaintiff, other black staff and black children." (Docket No. 86 at 5).[12]

## III.    Procedural History

On July 20, 2009, Wilkinsburg and the Individual Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint and a Brief in Support. (Docket Nos. 94 and 95). Plaintiff filed her Response to the Motion on August 4, 2009. (Docket No. 96).  Upon review of Plaintiff's filings, which violated the Court's earlier directive to include a full and complete copy of her EEOC Notice of Right to Sue letter, the Court, mindful of Plaintiff's *pro se* status, entered another Order on August 5, 2009 directing Plaintiff to file a full and complete copy of her EEOC letter by August 17, 2009. (Docket No. 97). The Court also set a hearing and argument on Defendants' Motion to Dismiss for August 21, 2009 at 3:30 p.m. (*Id.*).

Plaintiff filed a Response to this Order on August 17, 2009, in which she states that she

---

11

      Plaintiff included a copy of this email in her appendix. (Docket No. 87-2 at 39). It states:
          On several occasions, without any reason I (along with other blacks), have been discriminated against due to my race for any teaching or position whatsoever. I have watched you people act blatantly racist towards blacks. I live and pay taxes here in this district, and I am more qualified that a lot of you. Therefore, after 1 year of bigotry, I am now putting you on notice, along with the District of a lawsuit for race and 'perceived disability' discrimination with the Pa Human Relations Department in 10 days. Have a Good Day Bigots! Jacquelyn B. N'Jai.
(Docket No. 87-2 at 39). Plaintiff claims that Lynn Black, a central office employee, "who  goes with Tindal," had the same email address as Tindal. (Docket No. 86 at 20-21, 24)

12

      Plaintiff further recounts that "[o]thers who were associate [sic] racist with the above parties, were Deena Su, and Mary Cattani." (Docket No. 86 at 5).  These two individuals were not named as parties.

requested a right to sue letter from the EEOC, specifically from Mr. Thomas Hardiman,[13] via a "certified request" on June 6, 2009. (Docket No. 98). She further states that Mr. Hardiman, in turn, sent her a letter "claiming he will forward the request to a main headquarters and get back with [her]." (Docket No. 98 at 1). Plaintiff did not provide the Court with a copy of this letter from Mr. Hardiman in her Appendix. Plaintiff claims that she received no response before she filed her Amended Complaint on June 30, 2009.  (*Id.*).  On August 13, 2009, Plaintiff sent a fax to the EEOC's Philadelphia District Office requesting a right to sue letter for the charge at number "17F-2005-6-17FA560458,"[14] a copy of which was attached to her Response filed on August 17, 2009. (Docket No. 98-2).  She did not receive a response from the EEOC by August 17, 2009. Instead, she claims that she "was told by Washington EEOC to contact Hardiman, in the Pittsburgh Office, for he is the one to give it to me." (Docket No. 98 at 1).  Plaintiff alleges that she contacted Mr. Hardiman, but that he was on the phone "and would get back to her," which, she claims, he did not do prior to August 17, 2009. (*Id.* at 1-2).  Plaintiff also handwrote on her response that Mr. Hardiman "said EEOC will issue the Right to Sue letter, call @ 412 395-5902 (Regional Dir.)." (Docket No. 98 at 2).

Upon the Court's granting of Defendants' request for leave to file a supplement to their Motion to Dismiss (Docket Nos. 99 and 101), Defendants filed their supplement on August 18, 2009,

---

[13]

Thomas Hardiman, referred to by Plaintiff throughout her filings, is averred to be the regional director of the Pittsburgh EEOC office. (Docket No. 98 at 2).

[14]

The Court notes that this charge number provided by Plaintiff does not match the charge number of 17F-2005-60458 listed on the EEOC's notice of rights letter issued to Plaintiff. (*See* Docket No. 102-2; Docket No. 103-3 at 2).

attaching to it a copy of Plaintiff's right to sue letter dated July 15, 2008,[15] which was mailed to her

by Marie M. Tomasso, District Director of the EEOC Philadelphia District Office.[16] (Docket No.

102-2). In their supplement, Defendants' counsel avers that in preparation for the hearing, they

discovered in their files what appeared to be Plaintiff's EEOC letter for charge number 17F-2005-

60458, which they believe to be the document the Court had requested. (Docket No 102 at 2).

A hearing on Defendants' motion was held on August 21, 2009, during which the Court

heard oral argument and received evidence on the motion. (Docket No. 103).  During the hearing,

Plaintiff offered as an exhibit a copy of her EEOC Notice of Right to Sue letter, dated July 15, 2008,

signed by Marie M. Tomasso.  (Docket No. 103-3). Plaintiff also provided the envelope in which

she claims she received the letter; it is postmarked August 17, 2009. (Docket No. 103-3). At the

request and expense of Plaintiff, a transcript of the proceedings was produced and filed of record on

September 8, 2009. (Docket No. 104).

Thereafter on September 10, 2009, Defendants requested leave to again supplement their

motion. They requested 45 days within which to file a further supplement with information

subpoenaed and produced by the PHRC and the EEOC from Plaintiff's claim files. (Docket No.

105). In support thereof, Defendants stated that they believe they were never provided a copy of the

PHRC's findings issued for Plaintiff's 2004 charge.[17] (*Id.*).  The Court granted the motion giving

---

[15]

Allowing three days after the EEOC mailed the letter for delivery, Plaintiff is presumed to have received her right to sue letter on July 18, 2008. *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999).

[16]

As discussed *infra*, in evaluating a rule 12 motion, a court may look beyond the complaint to matters referenced in the complaint or essential to a plaintiff's claim. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[17]

In her appendix to the Amended Complaint, Plaintiff submitted  a cover letter from the PHRC indicating that the PHRC provided a copy of its findings to her on or about *October 10, 2006*. (Docket No. 87-4 at 8).  However, these

Defendants until October 26, 2009 to file their supplement. (Docket No. 106).[18]

On October 22, 2009, Defendants filed their second Supplement to their Motion to Dismiss, attaching to it Plaintiff's EEOC right to sue letter dated July 15, 2008 and the PHRC's Findings of the Investigation for PHRC Case No. 200401907 and EEOC No. 17FA560458. (Docket Nos. 114, 114-3, 114-4). The EEOC right to sue letter states that the EEOC has adopted the findings of the state agency that investigated Plaintiff's charge, i.e. the PHRC, which had concluded that Plaintiff's allegations have no probable cause because the investigation did not establish a prima facie case. (Docket No. 114-4).

As the parties' briefing has concluded, Defendants' Motion to Dismiss is now ripe for disposition.

## IV.    Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2008)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); and FED. R. CIV. P. 8(a)(2)(a valid complaint requires

---

findings were not filed with the Court despite Plaintiff's requirement to do so and despite various Orders until Defendants filed their supplement referenced herein on October 22, 2009. (Docket No. 114).

[18]

    In the interim, Defendants filed a motion seeking court-ordered mediation on September 16, 2009, offering to underwrite the entire cost of the first four hours of a mediation session before the Honorable Cynthia Baldwin (Docket No. 107), upon which the Court ordered a response from Plaintiff by September 28, 2009. (Docket No. 108). Plaintiff filed her response and brief in support on September 28, 2009 (Docket Nos. 111 and 112), in which she states that she would not "accept...being forced into Mediation," and declined "any Mediation whatsoever with defendants who are allowed to dictate to this court what they want." (Docket No. 111 at 2-3). Based on these statements, the Court denied Defendants' request for court ordered mediation, finding that an attempt to mediate at that juncture of the case would be an exercise in futility. (Docket No. 113). However, because this matter has been pending since November 2007 and Plaintiff is proceeding in forma pauperis, the Court was and is of the opinion that mediation of this matter would have been in the best interests of all the parties to attempt to reach a timely and economical resolution of this matter. (Docket No. 113 at 1, n.1). Moreover, this Court employs ADR as part of its case management process. *See* http://coldfusion.pawd.uscourts.gov/adr/Documents/lrl62.pdf.

only "a short and plain statement of the claim" showing entitlement to relief."). The Supreme Court in *Iqbal* clarified that the decision in *Twombly* "expounded the pleading standard for 'all civil actions.'" *Iqbal*, 129 S.Ct. at 1953; *Fowler*, 578 F.3d at 210-11. The court further explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Iqbal*, 129 S.Ct. at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555); *see also Fowler*, 578 F.3d at 210; and *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). The determination of whether a complainant has sufficiently pled a claim "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556); *see also Fowler*, 578 F.3d at 210-11 (holding that in light of *Iqbal*, a district court should first separate the factual and legal elements of a claim and then, accepting the "well-pleaded facts as true," "determine whether the facts" pled are sufficient to show a "'plausible claim for relief.'"). Ultimately, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

A court must liberally construe a *pro se* complainant's allegations, while *pro se* plaintiffs must be held to less stringent standards. *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007); *Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004); *see also Taylor v. Diznoff*, 633 F.Supp. 640, 641 (W.D. Pa. 1986)("a judge may not become a surrogate attorney" for a *pro se* party).

Pursuant to the so-called "Third Circuit Rule," a statute of limitations defense may be raised

10

by a motion to dismiss under Rule 12(b)(6), but only if "the time alleged in the statement of the claim[s] shows that the cause of action has not been brought within the statute of limitations." *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975); *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). If the limitations bar is apparent on the face of the complaint, then it may be the basis for dismissal of the complaint under Rule 12(b)(6). *Robinson*, 313 F.3d at 135 (citing *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

In evaluating a Rule 12(b)(6) motion, a court "may look beyond the complaint to matters of public record, including court files and records ... and documents referenced in the complaint or essential to a plaintiff's claim which are attached to either the [c]omplaint or the defendant's motion." *Spence v. Brownsville Area Sch. Dist.*, Civ. A. No. 08-0626, 2008 U.S. Dist. LEXIS 55026, at *7 (W.D. Pa. July 15, 2008)(citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp.*, 998 F.2d at 1196 (citations omitted). Otherwise, a plaintiff with a legally insufficient claim could survive a motion to dismiss "simply by failing to attach a dispositive document on which it relied." *Id.*

## V.    Discussion

Defendants have moved for dismissal of Plaintiff's Amended Complaint, in its entirety, on various grounds. The Individual Defendants move for dismissal first on the basis that Plaintiff has failed to effectuate service of her Amended Complaint.  Alternatively, they contend that Plaintiff has not timely brought her claims against them and that they cannot be held individually liable. Wilkinsburg moves for dismissal on the grounds that Plaintiff has not fully complied with the

statutory requirements for her discrimination claims to proceed in this Court and that her Whistleblower claim is time-barred. The Court will first address the motion as it relates to the Individual Defendants.

### A.      Plaintiff's Claims Against the Individual Defendants

#### 1.      Service of Process

The Individual Defendants first contend that they have not been properly served because Plaintiff has failed to make proper service of her Amended Complaint on each of them. (Docket No. 95 at 4). They argue that throughout the litigation of this action, Plaintiff has had ample warning of the need for proper service and the consequences of failing to effect service. (*Id.*). Defendants also point out that Plaintiff has been repeatedly instructed by the Court regarding the means of effectuating proper service of process. (Docket No. 104 at 2-3). To bring this defense before the Court, Wilkinsburg authorized its attorneys to represent the nine individual parties for purposes of this motion because at the time of the cited incidents, those nine people were employees of the Wilkinsburg School District. (Docket No. 104 at 3: 23-25; 8: 7-11). As a result, Wilkinsburg's counsel have entered their appearances on behalf of the Individual Defendants as a "courtesy defense" and out of respect for the Court in order to enable the Court to address the claims against them. (Docket No. 95 at 5; Docket No. 104 at 3: 19-22).[19]

Plaintiff asserts that because counsel for the Individual Defendants is the same as Defendant Wilkinsburg's counsel, and because the latter received a copy of the Amended Complaint at their law firm's offices, the nine Individual Defendants were properly served. (Docket No. 110 at 2;

---

[19]

       Wilkinsburg's attorneys filed their appearances on July 20, 2009 on behalf of the Individual Defendants *after* Plaintiff mailed her Amended Complaint to their office. (Docket Nos. 92 and 93).

Docket No. 112 at 5; Docket No. 104 at 4: 22-23, 36: 7-17).[20] Plaintiff is incorrect in this assertion.

Proper service is an essential step in establishing a district court's personal jurisdiction over a defendant. *Chiang v. United States SBA*, Civ. A. No. 07-2686, 2009 U.S. App. LEXIS 9668, at *4 (3d Cir. May 4, 2009). A plaintiff is responsible for having the summons and complaint served within the time allowed by Federal Rule of Civil Procedure 4(m). FED. R. CIV. P. 4(c)(1). Federal Rule of Civil Procedure 4(m) provides that if service of process of the summons and complaint is not made within 120 days after the filing of the complaint, the court "shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specific time." FED. R. CIV. P. 4(m). If a plaintiff shows "good cause" for the failure to timely serve a defendant, the court shall extend the time for service for an appropriate period. *Id.* This requires a party to demonstrate good faith for seeking an extension based on a reasonable basis for noncompliance with Rule 4. *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995). The "good cause" inquiry is focused on the plaintiff's reasons for not complying with the time limit in the first place. *Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997).

Plaintiff filed her Amended Complaint on June 30, 2009. (Docket No. 86). Therefore, she had until October 30, 2009 to properly serve each of the nine Individual Defendants with her amended pleading. In fact, at the August 21, 2009 hearing, the Court advised Plaintiff that the docket reflected that she had made no effort "whatsoever to serve these individuals." (Docket No. 104 at 33:13-17). This Court instructed Plaintiff that she needed to make service on each of the Individual Defendants within 120 days of the filing of her amended pleading, i.e. by October 30, 2009, even

---

[20]

       Plaintiff further claims that Defendants' attorneys "continuously lie about service to win lawsuits or to get the court [to] dismiss her cases." (Docket No. 112 at 6).

though she had mailed her pleading and other court filings to Wilkinsburg's counsel. (Docket No. 104 at 3: 19-21; 4:2-4; 33: 2-22; 38: 7-19). The Court specifically directed Plaintiff to the Court's website which provides a "Pro Se Package" with detailed instructions in plain language on what one has to do in terms of service of process.[21] (Docket No. 104 at 38: 7-13).

While Plaintiff did properly serve Defendant Wilkinsburg, Plaintiff has still failed to make service on the Individual Defendants and the Court has not been presented with any evidence to excuse Plaintiff's lack of diligence. *See Boley*, 123 F.3d at 758. She has not offered any explanation or shown good cause as to why the Individual Defendants have not been served; nor did she request an extension of time to make service prior to October 30, 2009.  Instead, she argues that service on counsel is sufficient. In response, the Court notes that all litigants must comply with the Federal Rules of Civil Procedure whenever they file a lawsuit in federal court, regardless of whether they are represented by counsel.  Plaintiff is required to comply with the rules of procedure. As noted, while Plaintiff is *pro se*, she has instituted numerous civil actions in this Court "and has, or should have, gained experience and familiarity with the requisites of maintaining a civil action in federal court." *N'Jai v. Pa. Dep't of Educ., et al.*, CA 02-268 (W.D. Pa. 2003; Docket No. 39 at 7). Plaintiff has been previously warned by this Court and by other Judges in this district of the necessity of proper service and the manner in which service is to be effectuated. (*Id.*). To this end, Plaintiff has been reminded by this Court at the above-described hearing and in three previous orders of the need for compliance with Rule 4. (*See* Docket Nos. 67, 80, and 85). Thus, in instituting this action and in

---

[21]

      The "Pro Se Package: A Simple Guide to Filing a Civil Action" may be found publicly at http://www.pawd.uscourts.gov/Documents/Forms/PROSE_manual_2009.pdf; last visited November 12, 2009. On pages 3-6, it instructs a complainant to serve "each of the defendants that he or she" is suing and that this must be done within 120 days from the date the complaint was filed or the case will be subject to dismissal. *See* FED. R. CIV. P. 4(m).

continuing to prosecute it, Plaintiff had ample warning of the need for proper service and the consequences of her failure to effect service. (W.D. Pa. 2003; Docket No. 39 at 8).

Given Plaintiff's history in this Court,[22] her continued failure to comply with Rule 4(i), and her lack of explanation for the same, the Individual Defendants are dismissed from this action pursuant to Rule 4(m) for Plaintiff's failure to make proper service of her Amended Complaint. *See* Fed. R. Civ. P. 4(m)(a district court may dismiss "on motion or on its own after notice to the plaintiff.").

Ordinarily, having ruled that the Individual Defendants are dismissed under Rule 4(m), the Court would not address the remaining issues as to these parties. However, in the interest of completeness, the Court will address the alternative arguments raised on behalf of the Individual Defendants.

## 2.      Statute of Limitations

An employment discrimination claim may be brought under section 1983, Title VII or both statutes. *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1079 (3d Cir. 1990). To the extent that Plaintiff's claims arise under 1983,[23] the Individual Defendant argue that these claims are time-barred because Plaintiff did not bring them within the two-year statute of limitations. (Docket No. 95 at 6-7). The Court agrees.  Additionally, as discussed in detail *infra* at Section C, to the extent Plaintiff raises a section 1981 claim against the Individual Defendants, this claim is also time-barred

---

[22]

See the Court's May 29, 2009 Memorandum Opinion, at pages 6-12 (Docket No. 79).

[23]

As noted, Plaintiff has stated a section 1983 claim in her Amended Complaint against all Defendants for violations of her First, Fifth and Fourteenth Amendment due process and equal protection rights (Count IX). (Docket No. 86 at 55-56). These claims against Wilkinsburg were previously dismissed as time-barred. (Docket No. 44; *see* note 6, *supra*). To the extent that Plaintiff is re-alleging these claims, they are dismissed, with prejudice as untimely. *See* discussion *infra*, at Section V(D).

because Plaintiff failed to raise it within two years of its accrual. *McGovern v. City of Phildelphia*, 554 F.3d 114, 120 (3d Cir. 2009)(citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989); *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998)(Pennsylvania's two year statute of limitations for 1983 claims applies to 1981 claims).

For civil rights claims brought under section 1983 in Pennsylvania, the applicable statue of limitations is two years. *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003)(citations omitted); *see also Smith v. City of Pittsburgh*, 764 F.2d 188, 194 (3d Cir. 1985), *cert. denied*, 474 U.S. 950 (1985). A section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which the action is based. *Cassell v. City of Phila*, Civ. A. No. 09-2537, 2009 U.S. App. LEXIS 22472, at * 3-4 (3d Cir. Oct. 1, 2009)(citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). It is a plaintiff's burden to demonstrate that the claim is not barred by the passage of time and that his or her failure to timely file the claim is excusable. *Osei-Afriyie v. Medical College*, 937 F.2d 876, 884 (3d. Cir. 1991)(citation omitted).

Plaintiff filed her Amended Complaint on June 30, 2009. Therefore, the limitations period for her section 1983 claims against Individual Defendants began June 30, 2007. Any alleged wrongdoing Plaintiff claims to have occurred prior to June 30, 2007 is time-barred. A liberal reading of Plaintiff's averments reveals that she has not cited any intrusion on her constitutional rights within the applicable time period. While she generally pleads that alleged incidents of discrimination took place between December 2003 and August 2004 (*see* Docket No. 86 at 13, 18, 19, 23, 39, 44, 46, 49-51), the most recent date on which she bases any of her claims is September 2005, when she was discharged. (Docket No. 86 at 50). Plaintiff has therefore raised no allegation that would allow the limitations period to begin within two years of the date on which she filed suit against the Individual

16

Defendants.

Assuming *arguendo* that her claims against the Individual Defendants relate back to the filing of her first Complaint under Rule 15(c), i.e. to November 6, 2007, these claims are <u>still</u> time-barred as she has not alleged any illegal conduct between November 6, 2005 and November 6, 2007. Inasmuch as Plaintiff has failed to allege any wrongful conduct by the Individual Defendants within any potential applicable limitations period, her 1981 and 1983 claims against all Individual Defendants are untimely.[24] *Osei-Afriyie*, 937 F.2d at 884.

Accordingly, any claims under sections 1981 and 1983 against the Individual Defendants are dismissed, with prejudice.

### 3. Individual Liability

The Individual Defendants next argue that any claims against them under Title VII, the ADA, or the ADEA fail because individuals cannot be held liable under these statutes. (Docket No. 95 at 11-12). Additionally, because these individuals were not named at the administrative level, Plaintiff's claims against them must be dismissed. (*Id.* at 12-13).

Plaintiff acknowledged at the August 21, 2009 hearing that the Individual Defendants "were individuals and they weren't liable, the district is."[25] (Docket No. 104 at 7: 6-11). She contends that she included these nine individuals in her PHRC complaint filed in the fall of 2004, and she referenced an exhibit to her Amended Complaint allegedly evincing the same. (Docket No. 104 at

---

[24]

*See also* note 6, *supra*.

[25]

Plaintiff went on to state her reasons for adding them as new parties: "so then [the Court] dismissed all of – everybody in the other case. So my only amended complaint could be to go back to the original parties, and that's exactly what I did." (Docket No. 104 at 7: 6-11).

4: 13-13; Docket No. 87-2 at 1-22).  By contrast, the Individual Defendants point out that the document Plaintiff referenced (Docket No. 87-2 at 1-22) is dated September 3, 2004 and that these Defendants have "no idea if [they] received it or not." (Docket No. 104 at 5: 110-13). The Individual Defendants also note that this document is not the formal complaint issued by the PHRC and is not the complaint to which Wilkinsburg responded at the administrative level. (*Id* at 5: 14-18). The official complaint at charge number 200401907 issued by the PHRC, which is included in Plaintiff's appendix to her Amended Complaint, only names the Wilkinsburg School District. (*Id.*; *see also* Docket No. 87-3 at 19-24).

In *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061 (3d Cir. 1996), the United States Court of Appeals for the Third Circuit, in an en banc decision, joined the majority of other circuits in concluding "that Congress did not intend to hold individual employees liable under Title VII." 100 F.3d at 1077; *see also Dici v. Comm. of Pa.*, 91 F.3d 542, 552 (3d Cir. 1996); and *Rowen v. City of Bayonne*, Civ. A. No. 44310, 2009 U.S. Dist. LEXIS 44310 (D.N.J. May 26, 2009)(dismissing Title VII individual liability claim with permission for leave to amend). Similarly, there is no individual liability under the ADEA. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 246 n.29 (3d Cir. 2006)(citing *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 184 (3d Cir. 1997)).

Although not directly addressed by the Supreme Court or the United States Court of Appeals for the Third Circuit, the overwhelming authority on the issue has concluded that there is also no individual liability under the ADA. *See Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002)("[T]here appears to be no individual liability for damages under Title I of the ADA."); *see also McQuaid v. ACTS Retirement Communities Southhamptom Estates*, Civ. A. No. 04-3620, 2005 U.S. Dist. LEXIS 18565, at *2 (E.D. Pa. Aug. 8, 2005); *Thomas v. Penn United Tech.*, Civ. A. No.

18

09-179, 2009 U.S. Dist. LEXIS 28030, at * 6 (W.D. Pa. Apr. 3, 2009)(citing *Emerson v. Thiel Coll*, 296 F.3d 184, 189 (3d Cir. 2002)(liability does not exist under Titles I and II of the ADA for individual employees, as the ADA prohibits discrimination by employers and public entities)).

In light of the Plaintiff's failure to make service as well the above authority, Plaintiff's claims under Title VII, the ADA, and the ADEA against the Individual Defendants are dismissed, with prejudice.  Given this ruling, the Court need not address whether the Individual Defendants were named in the administrative complaint.

### B.    Plaintiff's Claims Against Wilkinsburg

As previously discussed, Defendant Wilkinsburg has moved to dismiss Plaintiff's claims under Title VII, the ADA, the ADEA and for retaliation[26] on the following grounds: (1) she failed to file her EEOC right to sue letter in a timely manner; and (2) she has failed to exhaust her administrative remedies with respect to her 2005 unlawful discharge claim.[27] (Docket No. 95 at 13-17). Wilkinsburg also argues for dismissal of Plaintiff's claim under Pennsylvania's Whistleblower law on the ground that it is time-barred. (Docket No. 95 at 18-19).  The Court now turns to these arguments.

### 1.    Alleged Failure to Promote in 2004

#### a.    Procedural Background

---

[26]

Both the ADEA and the ADA have adopted the enforcement scheme and remedies found in Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. *See* 29 US.C. § 626(d); and 42 U.S.C. § 12117(a). Therefore, the Court will address these substantive claims together as to the issue of whether Plaintiff has timely filed her suit in this Court and whether she has exhausted her administrative remedies.

[27]

Wilkinsburg also argues for dismissal on the basis that Plaintiff has not provided the Court with a full and complete copy of her administrative charge. (Docket No. 95 at 13-14). Because the Court concludes that Plaintiff has not complied with the statutory requirements for bringing her discrimination claims in this Court, the Court need not address this argument.  However, the Court would note that Plaintiff has continually violated this Court's orders regarding the obligation to submit the appropriate filings in support of her case.  *See* note 1, *supra*.

Sometime between August 30, 2004 and the end of September 2004, Plaintiff initiated the administrative process by filing a PHRC charge which was assigned Charge No. 200401907, and dual filed with the EEOC at Charge No. 17FA560458.[28]  (Docket No. 104 at 6: 20-22; Docket No. 87-3; Docket No. 70-2). The PHRC issued an administrative complaint for this charge on November 10, 2004, which has been filed in this Court by both Plaintiff and Wilkinsburg. (*See* Docket No. 87-3; Docket No. 70-2).  Thereafter, on or about November 1, 2006, the PHRC notified Plaintiff that her complaint was being dismissed "because the facts of the case do not establish that probable cause exists to credit the allegations of unlawful discrimination." (Docket No. 46-2; Docket No. 70-3; Docket No. 112 at 2; Docket No. 87-4 at 21).[29]

After this case was initiated by Plaintiff in November 2007, on March 5, 2008, the Court granted Wilkinsburg's motion to dismiss Plaintiff's initial Complaint because she failed to allege the existence of her EEOC right to sue letter. (Docket No. 44).  In that order, the Court specifically directed Plaintiff to plead the events surrounding the receipt of her EEOC right to sue letter by April

---

[28]

It is unclear to the Court on what date Plaintiff initiated the PHRC's administrative process. In fact, she has stated that she does not recall the exact date. (Docket No. 104 at 6: 22-23). She has filed an exhibit which appears to be created by her, titled "In the Pennsylvania Human Relations Commission" setting out her discrimination claims. (Docket No. 87-2 at 1-22). This document is dated August 23, 2004, but that date is hand-crossed out with the date of July 3, 2004 written above it. (Docket No. 87-2 at 22). Plaintiff claims to have submitted this document to the PHRC (Docket No. 104 at 4: 5-12), however, there is no evidence of this. Wilkinsburg has denied ever receiving this document and has stated that this was not the complaint to which it responded in the PHRC. (*Id.* at 5: 10-18). Plaintiff also filed an exhibit titled "Intake Walk-in Screening Form," which, from its terms, appears to be a PHRC intake questionnaire. (Docket No. 87-3 at 15). However, the date on this document is indecipherable.

[29]

Thereafter, Plaintiff requested a preliminary hearing and/or an appeal before the PHRC. (Docket No. 87-2 at 53). On December 20, 2006, the PHRC informed Plaintiff that it had completed a review of her request for a preliminary hearing and/or appeal and voted on December 18, 2006 to deny the same because she presented "no facts or evidence not considered at the time of the original finding or no facts or evidence that would alter the original finding." (Docket No. 87-2 at 46). Her PHRC case was then closed. (*Id.*). As a result, Plaintiff had no further appeal rights before the PHRC; however, she sent a letter to the PHRC's Assistant Chief Counsel Sharon Lane requesting that she reconsider Plaintiff's case. (*Id.*). In a letter dated March 23, 2007, the PHRC advised Plaintiff that it would not engage in a further reconsideration of her case and that she had the right to file a complaint in the appropriate court of common pleas in Pennsylvania within two years of the dismissal of her PHRC charge. (Docket No. 87-2 at 44).

3, 2008. (Docket No. 44). When she failed to timely file her amended complaint, on April 4, 2008, the Court dismissed the action. (Docket No. 46).  Plaintiff appealed this order to the United States Court of Appeals for the Third Circuit, which remanded the case on October 16, 2008 (Docket No. 51). The Court of Appeals directed this Court to consider Plaintiff's case in light of the factors in *Poulis, supra*, one of which is the merits of Plaintiff's claims. (*Id.*).  On November 10, 2008, this Court issued an order to show good cause directing that Plaintiff "shall file any documentary evidence and/or supporting brief" in support of her claims, as well as ordering all parties to brief this case in light of *Poulis*. (Docket No. 52).

In the Court's opinion addressing the *Poulis* factors, on May 29, 2009, the Court once again instructed Plaintiff to provide the Court with a full and complete copy of her EEOC charge and right to sue letter.[30] (Docket No. 79).  She was specifically ordered by this Court to provide a full and complete copy of her letter with her Amended Complaint by June 30, 2009. (Docket No. 80). As discussed in the Memorandum Opinion, on February 11, 2008 Plaintiff filed what appears to be the last page of an EEOC notice in response to a motion to dismiss. (Docket No. 40-7).  This document specifically reads:

> Since your charge was filed under Title VII of the Civil Rights Act, Americans with Disabilities Act (ADA) or the Age Discrimination in Employment Act (ADEA), which is enforced by the US Equal Employment Opportunity Commission (EEOC), you have the right to request the EEOC to review this action. To secure a review, you must request the review in writing within fifteen (15) days of your receipt of this letter."

---

[30]

In the Order filed therewith, the Court also reminded Plaintiff that her "[f]ailure to comply with this Court's Orders, Policies, and Procedures can result in dismissal for failure to prosecute pursuant to Federal Rule of Civil Procedure 41." (Docket No. 80 at 2).

(Docket No. 40-7). Indeed, Plaintiff admitted that she had filed a portion of an EEOC notice of her rights.  (Docket No. 104 at 14-15). Further, Plaintiff  represented to this Court on January 15, 2009, that she had received "right to sue letters from both the Pa Human Relations Commission, and the EEOC 1994-2008." (Docket No. 62 at 9).

In her Amended Complaint filed on June 30, 2009, Plaintiff avers that she received a right to sue letter from the PHRC (Docket No. 86 at 10-11), but does not set forth the date on which she received her EEOC right to sue letter nor did she attach it. Thus, the Court entered yet another order on August 5, 2009 directing her to file her right to sue letter by August 17, 2009 given her *pro se* status.[31]  (Docket No. 97).  Plaintiff filed a response to that order claiming that she had requested a copy of her right to sue letter from the EEOC on or about June 19, 2009 and again by fax on August 13, 2009, but had yet to receive it. (Docket No. 98; Docket No. 98-2).

On August 18, 2009, Wilkinsburg filed a supplement to its motion with a copy of Plaintiff's EEOC right to sue letter at charge number 17FA560458. (Docket No. 102-2).  This letter indicates that it was mailed to Plaintiff by Marie M. Tomasso of the EEOC on July 15, 2008. (*Id.*; Docket No. 103-3). Wilkinsburg asserts that it was delayed in its production of this document because it had been misfiled by its counsel. (Docket No. 102). Allowing three days for delivery by July 18, 2008, Wilkinsburg maintains that Plaintiff's 2004 claim must be dismissed because she did not provide the Court with her right to sue letter within 90 days of receipt, i.e. by October 20, 2008 (October 18, 2008 was a Saturday). (Docket No. 104 at 9: 14-19).

Plaintiff argued at the August 21, 2009 hearing that the first time she ever received this letter

---

[31]

Again, Plaintiff was reminded in this Order of the consequences of Rule 41 for failing to comply with the Court's Orders. (Docket No. 97 at 1).

was August 17, 2009. (Docket No. 104 at 10-11). She further claims that she has never seen this document before, even though she has been requesting it "for years."[32] (*Id.* at 11:1-2). She also stated she has not lived at the address listed on the right to sue letter in years and she did not know "why the EEOC didn't fulfill their responsibility to give [her] something [she] requested over and over and over. They waited five years." (*Id.* at 11: 4-5; 16: 18-20).

In response, Wilkinsburg contends that even if Plaintiff first received the letter on August 17, 2009, she had an obligation to seek this letter long before that date. (Docket No. 104 at 13-14). Specifically, Wilkinsburg posits that Plaintiff was on notice of the need to file her right to sue letter as early as January 14, 2008, when it moved to dismiss Plaintiff's initial Complaint. (Docket No. 104 at 17: 13-21). Because Plaintiff failed to timely comply with the Court's orders regarding her EEOC letter and charge, Wilkinsburg argues that her 2004 claims should be dismissed. (Docket No. 95 at 13-14).

      b.     Applicable Law[33]

The filing of an administrative charge and receiving a right to sue letter, although not jurisdictional prerequisites, are statutory prerequisites to commencing a civil action under Title VII.

---

[32]

      This assertion directly contradicts Plaintiff's earlier representations to the Court that she had received a right to sue letter from the EEOC. (*See* Docket No. 62 at 9).

[33]

      As set forth above, Plaintiff's section 1983 claims previously brought against Wilkinsburg were dismissed with prejudice on March 5, 2008 for untimeliness. (Docket No. 44; see note 6, *supra*). Hence, the Court need only consider herein Plaintiff's Title VII, ADA, ADEA and section 1981 claims against Wilkinsburg. As laid out *infra* at Section C, Plaintiff's 1981 claim against all Defendants, which was not raised in her initial Complaint, will be dismissed as barred by the applicable two-year statute of limitations. *McGovern v. City of Phildelphia*, 554 F.3d 114, 120 (3d Cir. 2009)(citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989))(the express cause of action for damages created by section 1983 constitutes the exclusive federal remedy for violations of a person's section 1981 rights); *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998)(Pennsylvania's two year statute of limitations for 1983 claims applies to 1981 claims). In the interest of completeness and given Plaintiff's *pro se* status, the Court will address the merit of Plaintiff's constitutional claims in Count IX of her Amended Complaint. *See* discussion *infra*, at Section V(D).

*See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *McNasby v. Crown Cork & Seal Co., Inc.*, 888 F.2d 270, 282 (3d Cir. 1989), *cert. denied*, 494 U.S. 1066 (1990). A plaintiff has an obligation to produce a right to sue letter as a prerequisite to maintaining a Title VII claim in federal court. *Albright v. City of Philadelphia*, 399 F.Supp.2d 575, 585 (E.D. Pa. 2005). If a plaintiff has not received a right to sue letter and files suit in federal court nonetheless, it is incumbent upon her to plead the failure of the EEOC to issue a letter and that such a failure was raised with the EEOC prior to the commencement of her federal lawsuit. *Dollinger v. State Ins. Fund*. 44 F.Supp.2d 467, 474 (N.D.N.Y. 1999)(citations omitted).

If a claimant receives a right to sue letter from the EEOC, she has 90 days after receipt to file a complaint in federal court. 42 U.S.C. § 2000e-5(f)(1). If a claimant has already filed her complaint, she has an obligation to produce the right to sue letter within 90 days of receipt. *Albright*, 399 F.Supp. at 585; *Dollinger*, 44 F.Supp.2d at 474. Ordinarily, the 90 day period "does not begin to run unless and until there is 'final agency action.'" *Burgh v. Borough Council*, 251 F.3d 465, 470 (3d Cir. 2001). This limitations period is to be "strictly construed" and "in the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed." *Burgh*, 251 F.3d at 471. The 90 days starts running once delivery is attempted at the last address provided or the date on which a complainant receives actual notice. *Reschny v. Elk Grove Plating Co.*, 414 F.3d 821, 823 (7th Cir. 2005); *Burgh*, 251 F.3d at 470. However, the actual notice rule does not apply "when the claimant does not receive the notice in a timely fashion due to her own fault." *Bobbitt v. Freeman Co.*, 268 F.3d 535, 538 (7th Cir. 2001)(citation omitted).

Under Rule 41(b), if a plaintiff fails to comply with the Federal Rules of Civil Procedure or a court order, a defendant may move to dismiss the action and the granting of such a dismissal

operates as an adjudication on the merits. FED. R. CIV. P. 41(b); *Donnelly v. Johns-Mansville Sales Corp.*, 677 F.2d 339, 341 (3d Cir. 1982). Prior to dismissal, the trial court should provide the plaintiff with an opportunity to explain why she has failed to comply with its orders. *Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008)(citing *Emerson v. Thiel College*, 296 F.3d 184, 191 (3d Cir. 2002)). This Court has provided Plaintiff with repeated opportunity.

           c.     Analysis

                i.     Statutory Time Limitations

Plaintiff pleads in her Amended Complaint that she exhausted her administrative remedies in both the PHRC and the EEOC, and that the PHRC issued a right to sue letter. (Docket No. 86 at 2-3, 10-11). However, she does not aver that an EEOC right to sue letter was issued or when it was received. *Albright v. City of Phila.*, 399 F.Supp.2d at 583 n. 13 (the closure by a state agency of an administrative case does not trigger the federal statutory limitations period ). As a result, Plaintiff has not pled exhaustion through the EEOC. *See Balis v. Realtyline*, Civ. A. No. 08-3456, 2009 U.S. Dist. LEXIS 23867, at *9-11 (D.N.J. Mar. 25, 2009); *Carlton v. City of Phildelphia*, Civ. A. No. 03-1620, 2004 U.S. Dist. LEXIS 5569, at *5-6 (E.D. Pa. Mar. 30, 2004)(citing *Burgh*, 251 F.3d at 470)(court denied motion to dismiss plaintiff's claims on the basis that plaintiff had sufficiently pled exhaustion by averring specific dates on which she received her EEOC right to sue letter).

After Plaintiff initiated the PHRC process, the PHRC had exclusive review of Plaintiff's claims for the first 60 days, or until January 10, 2005. *See* 42 U.S.C. § 2000e-5(c). Thereafter, the EEOC could begin its review. *See Heyliger v. State Univ. & Comm. College Sys. of Tenn.*, 126 F.3d 840, 855 n.2 (6th Cir. 1997), *cert. denied*, 118 S.Ct. 1054 (1998). If the EEOC had not dismissed the charge or instituted a civil action within 180 days, i.e. on or about June 10, 2005, Plaintiff had

a right to request a right to sue letter as of that date. *McNasby*, 888 F.2d at 274 n.3. Upon said request, the EEOC would have been required to issue the letter. *Id.* Once Plaintiff received the letter, she then had 90 days to petition the Court to file it. 42 U.S.C. § 2000e-5(f)(1).

Here, that was not the case. Rather, accepting Plaintiff's allegations as this Court must, Plaintiff did not request her right to sue letter until almost four years later, in June 2009.[34] Wilkinsburg argues that this delay has prejudiced its ability to maintain a defense and locate evidence and witnesses. (Docket No. 104 at 13-14). To this end, Wilkinsburg has represented that all of the Individual Defendants, who witnessed the incidents of which Plaintiff complains, are either retired or no longer employed by the Wilkinsburg School District. (*Id.* at 3:22-25; 7:18-21).

Bearing in mind that statutes of limitations are strictly construed "because their exclusive purpose is to expedite litigation and discourage stale claims" to prevent prejudice to a defendant, *Miller v. Philadelphia Geriatric Center*, 463 F.3d 266, 276 (3d Cir. 2006)(citation omitted), the Court finds that Plaintiff's failure to timely request and receive her letter has prejudiced Wilkinsburg's ability to defend against this action. *Miller*, 463 F.3d at 276.  In particular, the Court finds that permitting these claims to go forward, after Plaintiff's two year delay in satisfying the statutory prerequisites, would require Wilkinsburg to incur significant expense and time in locating evidence and witnesses.[35]  Over 4 years have passed since Plaintiff was employed by Wilkinsburg, and as noted, the individuals whom Plaintiff claims to be witnesses are either no longer employed by Wilkinsburg or have retired.  Plaintiff's own inaction until 2009, discussed at greater length

---

[34]     Plaintiff claims that she requested the right to sue letter issued by the EEOC on June 6, 2009, but has not provided any documentation evincing same. (Docket No. 98 at 1). Instead, she has submitted a copy of a facsimile submitted to the EEOC on August 13, 2009 requesting her right to sue letter.  (Docket No. 98-2).

[35]     The taxpayers of the Wilkinsburg School District will ultimately bear the cost of these litigation expenses.

below, precipitated this particular prejudice. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984).

Plaintiff has subsequently argued, however, that due to the fault of the EEOC she did not receive her letter until August 2009. (Docket No. 112 at 3-4). All the same, she did not notify the EEOC of its supposed misstep until June 2009, when she claims she first requested a copy of her right to sue letter. (*See* Docket No. 98). However, Plaintiff was required to raise this issue with the EEOC prior to filing suit in this Court. *See Dollinger*, *supra*. Alternatively, if she did receive the EEOC letter, she had an obligation to produce the letter within 90 days of its receipt, i.e. by October 20, 2008.[36] *Albright*, 399 F.Supp. at 585. Since she did not fulfill either requirement, Plaintiff's 2004 claims under Title VII, the ADA and the ADEA against Wilkinsburg are dismissed for her failure to timely comply with the statutory limitations period.

ii.     Equitable Tolling

To the extent that Plaintiff's assertions may be construed as an argument based on equitable tolling due to the supposed fault of the EEOC in her delayed receipt of her right to sue letter, the Court will now consider the same.

The 90 day rule is analogous to a statute of limitations, and thus, subject to equitable modifications, such as tolling. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). This requirement, however, has been established by Congress and is "not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984). The remedy of equitable tolling may only be employed in limited, extraordinary circumstances to prevent the remedy from being "readily invoked by those who have missed

---

[36] *See* note 15, *supra.*

carefully drawn deadlines." *Robinson v. Dalton*, 107 F.3d 1018, 1023 (3d Cir. 1997); *see also*

*Oshiver v. Levin*, 38 F.3d 1380, 1387 (3d Cir. 1994). In *Oshiver*, the United States Court of Appeals

for the Third Circuit held that equitable tolling is principally applied in a limited number of

circumstances:

> We have instructed that there are three principal, though not
> exclusive, situations in which equitable tolling may be appropriate:
> (1) where the defendant has actively misled the plaintiff respecting
> the plaintiff's cause of action; (2) where the plaintiff in some
> extraordinary way has been prevented from asserting his or her rights;
> or (3) where the plaintiff has timely asserted his or her rights
> mistakenly in the wrong forum.

*Id.*; *Lake v. Arnold*, 232 F.3d 360, 370 n.9 (3d Cir. 2000). To successfully establish the remedy of

equitable tolling, a plaintiff must exercise reasonable diligence in preserving a claim. *In re*

*Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004); *Robinson v. Dalton*, 107 F.3d 1018, 1023

(3d Cir. 1997). It is the plaintiff's burden to demonstrate the applicability of equitable tolling and

the exercise of reasonable diligence. *See Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000); *Byers*

*v. Follmer Trucking Co.*, 763 F.2d 599, 600-01 (3d Cir. 1985).

   To waive or toll the statutory requirement in a case where a plaintiff claims to have not

received a right to sue letter prior to suit, diligence requires that the plaintiff "show or allege that

[she] made an effort to procure the right to sue letter or that [she] raised the failure to issue a right

to sue letter with the EEOC prior to filing" in federal court. *Dollinger*, 44 F.Supp.2d at 474. Where

such an effort or allegation has not been demonstrated, the claim should be dismissed. *See Brown*,

466 U.S. at 150-52; and *Dollinger*, 44 F.Supp.2d at 474 (citations omitted)(court dismissed suit

because the *pro se* plaintiff could not demonstrate his efforts to obtain a right to sue letter in a timely

manner).

Plaintiff has not argued or claimed that Wilkinsburg, the PHRC, and/or the EEOC actively misled her, nor has there been any contention that Plaintiff's claims were timely filed in the wrong forum. Thus, the Court need only analyze whether Plaintiff, despite exercising reasonable diligence, has been prevented in some extraordinary way from timely pursuing her claims. In this Court's estimation, Plaintiff has not made such a showing.

As laid out above, Plaintiff was on notice of the need for her letter as early as March 5, 2008. After this case was remanded, Plaintiff was ordered on November 10, 2008 to file all documentary support for her claims. (Docket No. 52 at 1). Because Plaintiff was already on notice of the statutory requirements, she was required to file her right to sue letter within 90 days of that order, by February 10, 2009. Yet, she did not do so. She was again reminded of this deficiency in Wilkinsburg's brief filed on February 17, 2009 (Docket No. 70 at 2-3) addressing the Court's show cause order.  But, Plaintiff has repeatedly failed to provide a full and complete copy of her EEOC right to sue letter, despite the Court's numerous directives to do so.[37]

While Plaintiff claims that she had been requesting her right to sue letter "for years" (Docket No. 104 at 11:1-2), nowhere in her Amended Complaint or her 147 page appendix does Plaintiff aver or provide any evidence in support of this contention. As previously discussed, notwithstanding the fact that Plaintiff was instructed numerous times as to what she must do to preserve her 2004 claims, she did not attempt to comply until June 2009, almost five years after the administrative process was commenced and almost two years after she brought suit.  "One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Brown*, 466 U.S. at 151.

The Court is mindful that Plaintiff is experienced in the procedures required to maintain a

---

[37] *See* note 1, *supra* and discussion, *supra*, at pages 19-23.

discrimination case, having already filed at least three administrative complaints. *See Robinson v. Dalton*, 107 F.3d 1018, 1023 (3d Cir. 1997)(in holding that the plaintiff did not exercise due diligence in preserving his claim, the court noted that he was experienced in the procedures required to maintain a discrimination complaint, having already filed three such complaints). As discussed at great length in the Court's May 29, 2009 Memorandum Opinion, Plaintiff has an extensive history as a *pro se* litigant, having filed at least fifteen civil actions, nine of them in this Court. (Docket No. 79 at 2-12). She has averred that she has a Bachelor of Science degree from the University of Pittsburgh, and a Masters Degree in Elementary Education from Long Island State University, while she is working towards a Doctorate degree at the University of Pittsburgh. (Docket Nos. 62-6 - 62-9). She is a skilled legal brief writer and has handled some of her cases, both in this Court and state court, before a jury.  Most, if not all, of her prior fifteen lawsuits involved claims under federal and state employment discrimination laws related to injuries Plaintiff claimed were related to her discharge. Many of them were preceded by claims brought by Plaintiff before the EEOC. Even though she is proceeding *pro se*, based on her experience and familiarity with the administrative process, Plaintiff should be well-versed in the requirements of maintaining a timely discrimination claim.

Additionally, Plaintiff may not rely on the supposed fault of the EEOC for her claimed failure to receive her letter unless the "fortuitous circumstances or events [are] beyond [her] control." *St. Louis v. Alverno College*, 744 F.2d 1314, 1316 (7th Cir. 1984). For example, a litigant does not toll the statute of limitations simply by not opening her mail, whether that is because she is out of the country, has moved, or simply elects not to receive her mail.  *See Ford v. Temple Hospital*, 790 F.2d 342, 350 (3d Cir. 1986)(finding that belated receipt of a right to sue letter allegedly due to office

inadvertence would not justify equitable tolling); *Espinoza v. Missouri Pacific Railroad Co.*, 754 F.2d 1247 (5th Cir. 1985)(the mere fact that employee was out of town when the right to sue letter arrived at his home did not serve to toll the 90 day period, and thus, suit filed 92 days after delivery was untimely). Moreover, 29 C.F.R. § 1601.7(b)(1981) provides that a person who has filed a Title VII charge "has the responsibility to provide the Commission with notice of any change in address and with notice of any prolonged absence from that current address so that he or she can be located when necessary during the Commission's consideration of that charge." *Id.*; *see also St. Louis*, 744 F.2d at 1316-17 (citing other cases for the proposition the a claimant is in the best position to ensure that the Commission has current, accurate information).[38]

Here, neither the EEOC nor Wilkinsburg was aware that Plaintiff was unable to be contacted at the address the EEOC had on file when it mailed the letter on July 15, 2008. In order to avoid running afoul of the statute, Plaintiff had a duty to update the EEOC with any change in her address and remain current on the developments in her case, even if that was difficult or inconvenient. *See Churchill v. Star Enterprises*, 3 F.Supp.2d 625, 630-31 (E.D. Pa. 1998); 29 C.F.R. § 1601.7(b). With her background, education and experience as a litigant, Plaintiff knew or should have known that she should keep the involved agencies apprised of her contact information just as she must in this Court. Plaintiff is solely at fault for any failure to timely receive her right to sue letter, and is ultimately responsible for her failure to comply within the allotted time. To hold otherwise would create an anomaly where a plaintiff who ran the risk of missing the limitations deadline could avoid such a result by simply making it difficult or impossible for the EEOC to contact him or her.

---

[38] Of note, this case, like the instant case, involved a *pro se* plaintiff. The district court's decision to dismiss his claims for failure to file suit within the ninety days was affirmed by the United States Court of Appeals for the Seventh Circuit. *Id.* at 1317.

Therefore, the allegations proffered by Plaintiff concerning her inability to produce the EEOC determination are not sufficient to satisfy the standards for equitable tolling.[39]  Plaintiff has not shown that she was diligent nor that she was prevented by circumstances beyond her control from timely submitting her right to sue letter. *Robinson*, 107 F.3d at 1023. Plaintiff failed to provide the Court with her right to sue letter within 90 days of its presumed receipt, i.e. October 20, 2008.  *See Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999)(holding that when the actual date of receipt at the mailing address is unknown, "courts will presume that a plaintiff received her right-to-sue letter three days after the EEOC mailed it").  Even tolling the limitations period for the months during which this case was on appeal, Plaintiff still failed to comply because she did not request her letter until June 2009, despite being repeatedly instructed of the need for the letter. (*See* Docket Nos. 44, 52, 90, and 97).

Accordingly, the Court finds that Plaintiff has not met the statutory requirements for pursuing her claims based on her 2004 failure to promote allegations.  Plaintiff's Title VII, ADA, and ADEA claims against Wilkinsburg related to her 2004 allegations are dismissed, with prejudice.

2.      Plaintiff's 2005 Unlawful Discharge Claim

Wilkinsburg next moves to dismiss Plaintiff's claims that it wrongfully terminated her in

---

[39]

In *Brown*, *supra*, the Supreme Court listed some of the circumstances in which equitable tolling of the 90 day period might be justified: (1) where notice from the EEOC does not adequately inform plaintiff of the requirement that suit be commenced within the statutory period; (2) where a motion for appointment of counsel is pending; (3) where the court itself has led plaintiff to believe that she has satisfied all statutory prerequisites to suit; and (4) where the defendant has, through affirmative misconduct, lulled the plaintiff into inaction. *Brown*, 466 U.S. at 151. None of these circumstances have been presented in this case. This Court has previously found that equitable tolling applied to the statutory exhaustion requirements for a discrimination claim where the *pro se* plaintiff was repeatedly misinformed by the EEOC of the filing deadlines. *See Husick v. Allegheny County*, 2009 U.S. Dist. LEXIS 53502, 106 Fair Empl. Prac. Cas. 1215 (W.D. Pa. June 18, 2009). Unlike the instant case, Husick produced documentation showing that the EEOC gave him erroneous information. *Id.*

2005 on the grounds that she has not exhausted her administrative remedies as to these claims. (Docket No. 95 at 15). In support, Wilkinsburg argues Plaintiff has not submitted any EEOC documentation for her 2005 claim. (*Id.*). Rather, she submitted her 2004 PHRC intake form and the complaint prepared by the PHRC at charge number 200401907, as well as the EEOC charge at number 17FA560458, related to her 2004 claim. (*Id.*). However, these documents were created before the incident Plaintiff alleges to have occurred in 2005. (*Id.* at 16; Docket No. 104 at 18:24-25; 19: 1-11). Plaintiff also cannot show that her 2005 claims are fairly within the scope of the 2004 PHRC complaint or investigation. (*Id.*). Wilkinsburg further argues that the PHRC's findings of the investigation (Docket No. 114-4) pertain only to Plaintiff's 2004 claims and cannot reasonably be read to relate to her 2005 claims. (Docket No. 114).

Plaintiff continues to assert that she "tacked on" her 2005 claims to her 2004 administrative complaint, and that the EEOC included her 2005 claims in the charge at number 17FA560458. (Docket No. 104 at 18: 20-25; 20: 24-25). She attests that her right to sue letter is for both her 2004 and 2005 claims because the "PAHRC mentioned the same defendants." (Docket No. 112 at 4). Therefore, she believes that she has exhausted her administrative remedies for these claims. (*Id.* at 21: 18-19; Docket No. 112 at 2-3).

Before filing a suit in federal court, an employee must first file a complaint with the EEOC to attempt to resolve the dispute. *Atkinson v. Lafayette College*, 460 F.3d 447, 453 (3d Cir. 2006); and *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984). "[S]uits in the district courts are limited to matters of which the EEOC has had notice and a chance, if appropriate, to settle." *Angelino v. N.Y. Times Co.*, 200 F.3d 73, 93 (3d Cir. 1999)(citation omitted). Whether the EEOC or a state agency had notice of a claim depends on the contents of the administrative charge, if there is one. *Id.* at 94.

A complainant is precluded from raising any discrimination claim that was not the subject of an administrative charge, was outside the scope of that charge, or was outside the scope of the investigation which can reasonably be expected to grow out of the charge, including any claim based on new acts of discrimination which occurred during the pendency of administrative proceedings. *Ostapowicz v. Johnson*, 541 F.2d 394, 398-99 (3d Cir. 1976), *cert. denied*, 429 U.S. 1041 (1977); *accord*, 200 F.3d at 94.

The parameters of the civil action in federal court are defined by the scope of the EEOC investigation and its findings which grow out of the charge of discrimination. *Id.* (citations and quotations omitted). The test of whether a plaintiff is required to exhaust her administrative remedies is "whether the acts alleged in [a] subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Id.*; *see also Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996). Pertinent here, a retaliation claim will be considered to be "fairly within the scope of a prior EEOC charge" if the conduct is related and continues. *Waiters*, 729 F.2d at 237. Therefore, a court must carefully examine the prior charge and the unexhausted claim before determining that a second charge need not be filed. *Robinson*, 107 F.3d at 1024.

The Court finds that Plaintiff's argument that she exhausted her 2005 claim because she "tacked it on" to be without merit. (Docket No. 104 at 32: 23-25). The Court first notes that the letter Plaintiff identifies in support of her contention refers only to EEOC Charge No. 17FA560458[40] and PHRC Case No. 2004-01907, and not a subsequent charge number for her 2005 claims. Additionally, despite Plaintiff's voluminous exhibits, she has not provided any documentation that

---

[40]

The EEOC approved the scope of the PHRC's investigation and adopted its conclusions as to Plaintiff's 2004 administrative charge. (Docket No. 102-2 at 1).

shows she attempted to "tack on" her 2005 claim or that the EEOC "allowed [her] to amend." (Docket No. 104 at 32:25). In fact, Plaintiff represented to the Court on February 17, 2009 that while her 2004 claim was pending, "and shortly thereafter, she ha[d] right to file another charge of retaliation since the EEOC/PAHRC refused to allow her to tack it on." (Docket No. 69 at 15). Considering these conflicting statements, the Court finds that Plaintiff has not demonstrated that she amended her 2004 PHRC or EEOC charges to include her 2005 claims. The Court must then examine Plaintiff's 2004 charge and the investigation arising therefrom to determine whether a second charge need not have been filed.

In this Court's opinion, the subject matter of Plaintiff's 2005 claims - her termination for filing the 2004 charge - is distinct from her 2004 claims. *See Antol*, 82 F.3d at 1295 (finding that unexhausted claim for gender discrimination not within the scope of the exhausted disability claim); *see also Sung Tran v. Delavau*, Civ. A. No. 07-3550, 2008 U.S. Dist. LEXIS 39001, at * 2-4(E.D. Pa. May 13, 2008)(the court looked to findings of the investigation to determine that subsequent claim for retaliation related to the first administrative charge was not within the scope of the first charge). The 2005 alleged retaliatory discharge is an isolated employment decision rather than one of a series of recurring acts, such as those Plaintiff describes as the bases for her 2004 claims. Specifically, for her 2004 claims, Plaintiff has set out multiple incidents in 2003 and 2004 where she claims Wilkinsburg refused to hire her for full time positions. (Docket No. 86 at 8-9).  During that period, she also cites various alleged occurrences of discrimination by the Individual Defendants. (*Id.* at 4, 14-15, 18, 19, 20-24).  In contrast, for her 2005 claim, Plaintiff has simply pled that she was terminated sometime in the fall of 2005. (*Id.* at 9). Thus, Plaintiff's 2005 termination had a degree of permanence that not only should have triggered Plaintiff's awareness of and duty to assert her

rights, but in fact did so, evidenced by the fact that Plaintiff claims that she attempted to "tack on" her 2005 claims. (Docket No. 104 at 18: 20-25).

The PHRC's findings for Plaintiff's 2004 charge solely refer to incidents that ostensibly occurred between December 2003 and November 2004. (Docket No. 114-4 at 4-6, 10-11). The findings focus on Plaintiff's allegations that despite her qualifications, she was not hired for various permanent and available positions with Wilkinsburg between 2003 and 2004 for discriminatory reasons. (Docket No. 114-4 at 2-7). Wilkinsburg denied these allegations reporting that either Plaintiff did not have the requisite master's degree, experience, or certification recognized and awarded by the Pennsylvania Department of Education or that the positions for which she applied were either not available or not filled. (*Id.*). The specifics of Plaintiff's 2004 failure to promote allegations and the PHRC's investigation do not fairly encompass a claim for retaliatory discharge, merely because Plaintiff is claiming race, age and disability discrimination for her 2004 claims. (*See* Docket No. 114-4). Moreover, neither the EEOC nor the PHRC were put on notice of the 2005 retaliation claim, and nothing in Plaintiff's 2004 administrative charge would have reasonably led to an investigation of her 2005 claim. Therefore, Plaintiff was required to file a separate administrative charge for her 2005 claim.

Consequently, the Court finds that Plaintiff has not exhausted her administrative remedies for her 2005 unlawful discharge allegations and that there is no exception that would preserve these claims. *See Karakozova v. Univ. of Pittsburgh*, Civ. A. No. 09-458, 2009 U.S. Dist. LEXIS 100929 (W.D. Pa. Oct. 29, 2009)(court dismissed *pro se* claimant's Title VII claims for failure to exhaust administrative remedies)(citing *Joyner v. Sch. Dist. of Phila.*, 313 F.Supp.2d 495, 500 (E.D. Pa. 2004) and *Zezulewicz v. Port Auth.*, 290 F.Supp.2d 583, 591 (W.D. Pa. 2003)).  Plaintiff's Title VII,

ADA, and ADEA claims related to her 2005 discharge are dismissed, with prejudice.

>    3.    Plaintiff's Claim under Pennsylvania's Whistleblower Law

All Defendants have moved for dismissal of Plaintiff's claim for retaliation under Pennsylvania's Whistleblower Law, 43 P.S. §§ 1421, *et seq.*, on the grounds that Plaintiff has not timely brought this claim within 180 days of the alleged violation. (Docket No. 95 at 18). Defendants contend that because Plaintiff initiated this action on November 8, 2007, using that date as an endpoint, any "wrongdoing" for purposes of the Whistleblower law would have had to occur between May 8, 2007 and November 8, 2007. (*Id.*).  Because Plaintiff has not alleged any Whistleblower violations in this time frame, her claim must be dismissed. (*Id.*).  Defendants further argue for dismissal on the basis that all of Plaintiff's allegations relating to this claim relate solely to personal matters, i.e. her claim that she was fired for discriminatory and retaliatory reasons, while the Whistleblower law only covers reports regarding a matter of public concern. (Docket No. 43 at 23: 16-24).

At the August 21, 2009 hearing, Plaintiff argued that her Whistleblower claim was based on the fact that she was retaliated against by Wilkinsburg and their attorney when she was fired for complaining about drug activity in Lemington Elementary School, which she contends, is a public concern. (Docket No. 43 at 25:11-17).  Upon the Court's inquiry, Plaintiff stated that Lemington Elementary School is part of the Pittsburgh School District, not the Wilkinsburg School District. (*Id.* at 26: 7-13).  Nonetheless, Plaintiff argued that because "we are dealing with the same person who [she] blew the whistle on, i.e. Anthony Sanchez, who works for Wilkinsburg School District," she has a valid Whistleblower claim as Mr. Sanchez caused Plaintiff to be fired from her job with Wilkinsburg. (*Id.* at 26: 14-18).  With regards to the timeliness, Plaintiff contends that she did file

this claim on time as "the case was pending in the Human Relations Commission from 2004 to 2006. They gave me two years. I filed the lawsuit in a timely fashion." (*Id.* at 29: 4-7).   She further maintains that if this claim was not timely, then "why didn't the PHRC and the EEOC dismiss it as untimely." (*Id.* at 29: 12-15).

Pennsylvania's Whistleblower Law, 43 P.S. § 1423(a), provides in relevant part:

> An employee alleging a violation of this act must show by a preponderance of the evidence that, prior to the alleged reprisal, the employee or a person acting on behalf of the employee had reported or was about to report in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority.

43 P.S. § 1423(a). The plain intent of this law is "to encourage employees to report genuine instances of waste and wrongdoing by their State government employers, free from the fear of retaliation."[41] *Rodgers v. Pennsylvania Dep't. of Corr.*, 659 A.2d 63 (Pa. Cmwlth. 1995). The primary purpose of Pennsylvania's Whistleblower Law is not to punish an employer for harboring retaliatory motives, rather, it is "chiefly a remedial measure intended to 'enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing.'" *O'Rourke v. Dep't of Corr.*, 778 A.2d 1194, 1202 (Pa. 2001)(quoting *Davis v. Ector County*, 40 F.3d 777, 785 (5th Cir. 1994)); *see also Pennsylvania Game Comm'n v. State Civil Service Comm'n (Toth)*, 747 A.2d 887, 892 n.10 (Pa. 2000). In order to prevail, a plaintiff must prove a causal connection between the report of wrongdoing and the retaliatory act. *Golaschevsky v. Comm.*, 683 A.2d 1299, 1304 (Pa. Cmwlth. 1996).

An individual who states a claim for a violation of Pennsylvania's Whistleblower Law, 43

---

41

The law provides that employers include a county, city, township, regional governing body, council, school district, special district or municipal corporation. 43 P.S. § 1422. Thus, Wilkinsburg School District is an entity within the purview of this law.

P.S. § 1421, *et seq.*, "may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both, within 180 days after the occurrence of the alleged violation." 43 P.S. § 1424(a).  In other words, the action must be filed within 180 days of the alleged violation of the law. *Golaschevsky v. Dep't of Envtl. Prot.*, 720 A.2d 757, 758 n.1 (Pa. 1998); *Street v. Steel Valley Opportunities Industrialized Center*, 2006 U.S. Dist. LEXIS 52459, at *4 (W.D. Pa. July 31, 2006)(citation omitted). This time period must be strictly applied and courts do not have discretion to extend it. *O'Rourke v. Dep't of Corr.*, 730 A.2d 1039, 1042 (Pa. Cmwlth. 1999)(citing *Perry v. Tioga Cnty*, 649 A.2d 186 (Pa. Cmwlth. 1994), *appeal denied*, 655 A.2d 995 (1995)).

Here, Plaintiff initiated the instant lawsuit on November 6, 2007 after her Motion for Leave to Proceed in forma pauperis was granted. (Docket Nos. 1 and 2).  She filed her Complaint on November 8, 2007. (Docket No. 3).  As to her "Pa Whistleblower Act" claim, Plaintiff avers that she made reports alleging IDEA violations to Wilkinsburg, the EEOC, a PHRC representative, and other employees of the school district in 2004-2005.  (Docket No. 86 at 48).  She specifically states that the Whistleblower law covers the retaliation she supposedly suffered for reporting IDEA violations during a meeting held on August 25, 2005. (*Id.* at 49-50).  Shortly after this meeting, in September of 2005, Plaintiff lost her job. (*Id.* at 50).

On the record before the Court, the first time Plaintiff raised her Whistleblower claim was on November 6, 2007. (*See* Docket Nos. 1 and 3). Using this date, the "occurrence of the alleged violation" of the Whistleblower law, with respect to the statute of limitations, would have had to occurred between May 6, 2007 and November 6, 2007.  However, Plaintiff does not allege any Whistleblower violations within this time frame. (*See* Docket No. 86 at 46-54). Rather, as noted above, even accepting Plaintiff's allegations as true, the events on which she bases this claim are

all alleged to have occurred in 2004 and 2005. (*Id.*).  A liberal construction of Plaintiff's averments demonstrates that the last alleged Whistleblower violation occurred sometime in September of 2005, when she lost her position with the school district. (*Id.* at 49-50).  As a result, she was required to bring her Whistleblower claim by the end of March 2006, at the latest.  Because Plaintiff failed to do so, she has not timely filed her claim for retaliation under Pennsylvania's Whistleblower Law within the 180 day statute of limitations. *Golaschevsky*, 720 A.2d at 758 n.1.

Plaintiff has also argued that she "filed a complaint in good faith before 180 days from first intake form of PAHRC/EEOC dated 8/31/04, which is related back to about 2/04." (Docket No. 86 at 51, ¶ 228).  Plaintiff incorrectly assumes however that her claims brought pursuant to Pennsylvania's Whistleblower Law are subject to exhaustion through an administrative agency, such as the PHRC or the EEOC.  *See* 43 P.S. § 1424(a).  The Whistleblower Law is not enumerated as one of the laws enforced by the PHRC.  *See* 43 P.S. § 957, "Powers and duties of the [PHRC]." Therefore, this argument fails.

Since the Court has already determined that Plaintiff has not timely brought her Whistleblower claim, the Court need not consider whether this claim relates to a  matter of public or private concern.  Accordingly, Plaintiff's Pennsylvania Whistleblower claim is dismissed, with prejudice.

### C.    Plaintiff's Section 1981 Claim

In the Amended Complaint at Count III, Plaintiff sets forth a claim under 42 U.S.C. § 1981 against all Defendants for racial discrimination in the terms of her employment. (Docket No. 86 at 22-27). Plaintiff avers that between 2003 and 2004, Wilkinsburg's employment decisions "were deliberate, blatant, and based upon race." (Docket No. 86 at 25).  Because she was denied many

employment opportunities and eventually discharged because of her race, she requests relief under section 1981. (*Id.* at 26-27).

Defendants have not moved for dismissal of this claim.[42]  However, the United States Court of Appeals for the Third Circuit has held that when a statute of limitations defense "is obvious from" the face of the claim, a district court may *sua sponte* dismiss the claim. *Webb v. Warner Middle Sch.*, Civ. A. No. 09-3209, 2009 U.S. App. LEXIS 23049 (3d Cir. Oct. 9, 2009)(citing *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006)); *see also Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 341 (3d Cir. 1982). Accordingly, for the reasons outlined below, the Court finds that Plaintiff's section 1981 claim fails.

The cause of action for damages created by section 42 U.S.C. § 1983 constitutes the exclusive federal remedy for section 1981 civil rights violations by state governmental units. *McGovern v. City of Philadelphia*, 554 F.3d 114, 120 (3d Cir. 2009)(citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) (section 1981, on its own, contains no express cause of action, and the Supreme Court has held that the means of enforcing that right exists in section 1983)). Hence, in order to have a cause of action for damages under section 1981, Plaintiff would have had to assert her 1981 claim in conjunction with a claim under section 1983. Additionally, Pennsylvania's two year statute of limitations for section 1983 claims applies to claims brought pursuant to section 1981. *Sameric,*142 F.3d at 599.

Plaintiff raises a section 1981 claim for the first time in her Amended Complaint. (Docket No. 86 at 22-27). She does not set forth this claim in the context of section 1983. Nevertheless, as

---

[42]

Defendant Wilkinsburg did move to dismiss Plaintiff's initial 1983 claims for untimeliness, which motion was granted on March 5, 2008. (Docket No. 44).

noted, all of her section 1983 claims against Wilkinsburg raised in her initial Complaint (Docket No 3) were dismissed with prejudice on March 5, 2008 as untimely. (Docket No. 44).  And, the Court has concluded herein that her section 1983 claims against the Individual Defendants are likewise time-barred.

In support of her 1981 claim, Plaintiff contends that in 2003 and 2004 Wilkinsburg did not hire or promote her because of her race. (*Id.* at 25-26).  Also, as previously discussed, the last incident on which she claims she suffered discrimination at the hands of Wilkinsburg and its employees occurred in September 2005 when she was terminated. (*Id.* at 8-9, 49-50). As a result, Plaintiff's claims under section 1981 accrued in September 2005. *Sameric*, 142 F.3d at 599. Because Plaintiff did not raise this section 1981 claim until almost four years later on June 30, 2009, the statute of limitations bars this cause of action. Even if her 1981 claims relate back to her original Complaint filed on November 6, 2007 pursuant to Rule 15(c), which included claims related to racial discrimination under section 1983 (Docket No. 3 at 4, 5, 6, 9, and 12), the incidents in question all occurred more than two years prior to that date, which places her claim outside the statue of limitations.

In sum, to the extent that Plaintiff now seeks relief under section 1981, the Court *sua sponte* dismisses said claim as to all Defendants, with prejudice as time-barred.

### D.      Plaintiff's First, Fifth and Fourteenth Amendment Claims

At Count IX of her Amended Complaint, Plaintiff alleges that all Defendants violated her due process and equal protection rights under the First, Fifth and Fourteenth Amendments to the United States Constitution. (Docket No. 86 at 7, 55; Docket No. 86-2 at 1-13).  As previously discussed,  Plaintiff made similar claims under section 1983 against Wilkinsburg in her initial

Complaint (Docket No. 3 at 8-9); which claims were dismissed with prejudice on March 5, 2008 as time-barred. (Docket No. 44). Given Plaintiff's *pro se* status, to the extent she re-states these claims in her Amended Complaint, the Court will now consider the same.[43]

Section 1983 is not a source of substantive rights, but it provides a remedy against state and local government officials for violations of constitutional rights. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)(plurality opinion); *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Civil rights claims brought under section 1983 are governed by a two-year statute of limitations in Pennsylvania. *Garvin*, 354 F.3d at 220; *Sameric*, 142 F.3d at 599.

Plaintiff avers that Wilkinsburg violated her First Amendment "right to petition court [sic]" because it discharged her in "2004-10/2005" in retaliation for her suing and complaining of discrimination.[44] (Docket No. 86 at 55; Docket No. 86-2 at 5).  She further claims that after she spoke out against Wilkinsburg's alleged racist hiring practices to other Wilkinsburg employees, she was terminated from her position with the school district.[45] (Docket No. 86-2 at 5-7, 10). For her

---

[43]

Plaintiff's allegations in Count IX are generally focused on her prior claims against Anthony Sanchez and the law firm of Andrews & Price, specifically that Mr. Sanchez and his law firm have been violating her civil rights and submitting her to "ongoing discrimination for 15 years." (Docket No. 86-2 at 7-9).  In Count IX, Plaintiff also makes claims against the PHRC and the EEOC. (*Id.* at 8). The Court will not consider these allegations as these Defendants were previously dismissed, with prejudice. (Docket Nos. 42 and 80; *see also* note 3, *supra*).

[44]

In support of her First and Fourteenth Amendment claims, Plaintiff alleges that this Court "wrongfully" entered an order granting a motion for sanctions brought by Defendants Anthony Sanchez and Andrews & Price. (Docket No. 86-2 at 2-4). She avers that this order violated her civil rights. (*Id.*). The Court has been advised that a Rule 11 motion for sanctions was served on Plaintiff by Mr. Sanchez and Andrews & Price on January 10, 2008. However, as reflected by the docket in this matter, no such motion was filed of record and the Court did not enter an order granting the same. Additionally, Plaintiff has claimed that Defendants have violated her equal protection rights by opposing her motion to proceed in forma pauperis and her right to petition the court. (Docket No. 86-2 at 8). This Court's docket does not show that any such opposition was filed.

[45]

Plaintiff also avers that an individual named Arthur Rabare was similarly discriminated against by Wilkinsburg for filing a PHRC administrative charge "at the same time Plaintiff did in 2004." (Docket No. 86-2 at 1). However, this individual is not before the Court in this action.

43

Fourteenth Amendment claim, Plaintiff alleges that her equal protection and substantive due process rights were violated because while "discrimination proceedings" were pending, Wilkinsburg continued to discriminate against her. (*Id.* at 8).  Further, she contends that for "other whites to not have correct certifications" and still be hired over her constitutes "denials of equal protection of the law." (*Id.* at 9).

As discussed *supra*, the limitations period for Plaintiff's 1983 claims in her Amended Complaint commenced on June 30, 2007. Therefore, any claims regarding violations of Plaintiff's constitutional rights that allegedly occurred prior to that date are untimely.  Upon a liberal review of her allegations, Plaintiff has not set forth any wrongdoing within the applicable time period. The most recent date on which she bases any of the allegations in Count IX is October 2005. (Docket No. 86-2 at 5).  As a consequence, Plaintiff's constitutional claims against Wilkinsburg and the Individual Defendants in Count IX are barred by the statute of limitations. *Sameric,* 142 F.3d at 599. Even if Plaintiff's claims relate back to the filing of her original Complaint on November 6, 2007 under Rule 15(c), they would still be time-barred as she has not alleged any civil rights violation between November 6, 2005 and November 6, 2007.[46]

Additionally, while Plaintiff has included a "Fifth Amendment due process claim" in her Amended Complaint (Docket No. 86 at 7), she has not set forth any allegation in support of the same. Thus, she has not satisfied the *Iqbal* pleading standard which requires the inclusion of factual allegations to support a legal claim. *See Iqbal*, 129 S.Ct. at 1949, 1953  (the requirement that the court must accept all allegations as true does not apply to legal conclusions); *Twombly*, 550 U.S.

---

[46] *See also* discussion, *supra* at Section V(A)(2), wherein the Court held that Plaintiff's section 1981 and 1983 claims against the Individual Defendants are barred by the statute of limitations.

at 555; *Fowler*, 578 F.3d at 210.  However, as this Court finds it would be futile to permit Plaintiff to amend this claim because it is likewise beyond the statute of limitations, *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000), Plaintiff's claim under the Fifth Amendment is dismissed, with prejudice.

To the extent that Plaintiff re-alleges claims under the First, Fifth and Fourteenth Amendments in Count IX of her Amended Complaint, the Court finds that these claims have no merit and that further amendment would be futile. *Phillips*, 515 F.3d at 228 (citing *Shane*, 213 F.3d at 116). Accordingly, Plaintiff's claims in Count IX are dismissed, with prejudice.

## VI.      Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Docket No. 94) is GRANTED.  All of Plaintiff's claims against the Individual Defendants and Wilkinsburg in her Amended Complaint (Docket No. 86) are dismissed, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Consequently, Plaintiff's requests for injunctive and declaratory relief are denied.  *See Ransom v. Marrazzo*, 848 F.2d 398 (3d Cir. 1988); and *Ferrieras v. York County*, Civ. A. No. 04-1799, 2005 U.S. Dist. LEXIS 34633, at *12 (M.D. Pa. July 18, 2005)(upon the granting of defendant's motion to dismiss, plaintiff's claims for injunctive and declaratory relief were denied). An appropriate order follows.


                                                     *s/Nora Barry Fischer*
                                                     Nora Barry Fischer
                                                     United States District Judge


Dated:          December 9, 2009
cc/ecf:         Counsel of Record
                Jacqueline B. N'Jai
                P.O. Box 10133
                Pittsburgh, PA 15232